1               IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

2

3   UNITED STATES OF AMERICA,

4     vs.
                         Criminal No. 13-270

5   ATIBA WARREN,
            Defendant.

6

7

      Transcript of Oral Argument Proceedings on Tuesday, May
8  10, 2016, United States District Court, Pittsburgh,
   Pennsylvania, before Mark R. Hornak, District Judge.

9

10

   APPEARANCES:

11

     For the Government:          Katherine King, Esq.
12                       Assistant U.S. Attorney
                       400 USPO and Courthouse
13                       700 Grant Street
                       Pittsburgh, PA 15219

14

15    For the Defendant:          R. Damien Schorr, Esq.
                       1015 Irwin Drive
16                       Pittsburgh, PA  15236

17

18

19

   Court Reporter:             Juliann A. Kienzle, RMR, CRR
20                       5300 U.S. Courthouse
                       700 Grant Street
21                       Pittsburgh, PA 15219
                       (412) 261-6122

22

23

      Proceedings recorded by mechanical stenography; transcript
24  produced by computer-aided transcription.

25

1  (Proceedings held in open court; Tuesday, May 10, 2016.)

2           THE COURT:  We're here this afternoon for an

3  argument and hearing and criminal docket matter, the United

4  States of America versus Mr. Atiba Warren.

5           Counsel for the United States, please enter her

6  appearance.

7           MS. KING:  Katherine King.

8           THE COURT:  Good afternoon, Ms. King.

9           Who is with you at counsel table?

10          MR. ORTIZ:  Jonathan Ortiz.

11          THE COURT:  Good afternoon.

12          Will counsel for Mr. Warren please enter his

13  appearance.

14          MR. SCHORR:  Damien Schorr for Mr. Warren.

15          THE COURT:  Good afternoon.

16          Mr. Warren is with you at counsel table?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Good afternoon.

19          Let me just confirm a couple of things real quickly.

20          Mr. Babik, please administer an oath to Mr. Warren.

21      (Administration of the oath.)

22          THE CLERK:  Please state your name for the record.

23          THE DEFENDANT:  Atiba Chemi Warren.

24          THE COURT:  Mr. Warren, as we get started today, I

25  just want to confirm a couple of things.

1            Just to confirm for the record, you're represented

2  by a lawyer.  That lawyer is Mr. R. Damien Schorr, who is

3  seated right next to you at counsel table.

4            Is that correct, sir?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  You understand that the reason the Court

7  has set today's hearing is to hear presentations from your

8  lawyer and the lawyer for the United States on certain factors

9  that would be important to the Court in determining what your

10 sentence will be, but it's not the Court's intention to set

11 your sentence today, this is to handle some legal matters that

12 would affect how your sentence is determined.

13            Do you understand that, sir?

14            THE DEFENDANT:  Yes, Your Honor.

15            THE COURT:  Mr. Warren, have you had a chance to

16 talk about today's hearing with Mr. Schorr and have him explain

17 to you what is going to be going on today?

18            THE DEFENDANT:  Yes, I have, Your Honor.

19            THE COURT:  Mr. Warren, let me ask you this, sir.

20 Do you have any difficulty at all understanding what is going

21 on around you today?

22            THE DEFENDANT:  No, Your Honor, I understand very

23 well.

24            THE COURT:  Within the last 24 hours, sir, have you

25 taken any prescribed or non-prescribed drugs?

1          THE DEFENDANT:  No, I have not, Your Honor.

2          THE COURT:  In that same time period, sir, have you

3 had any alcohol or alcoholic beverages?

4          THE DEFENDANT:  No, no, Your Honor.

5          THE COURT:  Mr. Schorr, any doubts as to

6 Mr. Warren's competence to participate in today's hearing?

7          MR. SCHORR:  No, sir.

8          THE COURT:  Ms. King, same question of you?

9          MS. KING:  No, Your Honor.

10          THE COURT:  Based on your answers to my questions,

11 my observations in court, the representations of your lawyer,

12 Mr. Schorr, and the lawyer for the United States, Ms. King, I

13 find you are competent to participate in today's hearing.

14          Based on my reading of the status report, nobody

15 anticipates any presentation of testimony today, it's

16 essentially argument based on matters that are placed on the

17 record and legal matters that are otherwise relevant to the

18 issues involved.

19          Is my understanding correct?

20          MR. SCHORR:  Your Honor, Mr. Warren may need to

21 testify, but that's the only other witness.

22          THE COURT:  That would be your call if you determine

23 that's needed.

24          Ms. King, is that your understanding also?

25          MS. KING:  Yes, Your Honor.

1            THE COURT:  When Mr. Warren was represented by prior

2 counsel, Mr. Sindler, we got the sentencing documentation from

3 Mr. Sindler and Ms. King, and one of the issues that was raised

4 on Mr. Warren's behalf by Mr. Sindler was whether the statutory

5 provisions regarding what is known as an armed career criminal

6 status and the career offender provisions of the advisory

7 guidelines apply.

8            The presentence investigative report that was

9 prepared and filed by the United States Probation Office in

10 this case at the relevant paragraphs relating to the

11 calculation of the advisory guideline range specifically

12 determine that the offense of conviction, when considered in

13 conjunction with Mr. Warren's prior criminal record would cause

14 his designation as a statutory matter as an armed career

15 criminal, which made him subject to mandatory minimum term of

16 imprisonment, and further, that those same matters triggered

17 the career offender provisions of the United States Sentencing

18 Guidelines, which enhanced his total offense level and his

19 criminal history category, which resulted in the guidelines and

20 minimum sentence calculations contained in the PSI.

21            Mr. Sindler, on Mr. Warren's behalf, filed a

22 memoranda taking issues with those computations.

23            Ms. King on behalf of the United States has stated

24 the position of the United States that the presentence report

25 is correct in those regards, and she's filed supplemental

1  memoranda based on a recent decision from March of this year

2  from Judge Bates in the United States District Court for the

3  District of Columbia in a case called United States versus

4  Moore.

5           So, that appears to be the issue that is before the

6  Court.

7           Mr. Schorr, do you concur that that's the issue that

8  the Court is going to have to resolve before there could be a

9  sentencing hearing in this matter?

10          MR. SCHORR:  Not only that, we're contesting one of

11  the previous drug felony convictions.

12          THE COURT:  Contesting it as being a qualifying

13  conviction?

14          MR. SCHORR:  Yes, sir.

15          THE COURT:  With that amendment by Mr. Schorr,

16  Ms. King, do you agree those are the issues the Court needs to

17  resolve?

18          MS. KING:  Yes, Your Honor.

19          THE COURT:  Since it is an objection to the

20  presentence report and the calculation of the now advisory

21  guidelines in it, it's probably appropriate that we hear first

22  from you, Mr. Schorr.

23          Is that agreeable with you?

24          MR. SCHORR:  Sure.  Unless Ms. King wants to go

25  first.  She gave me a nice stack of exhibits, if she wants to

1  put them in so we can talk about them.

2            THE COURT:  Ms. King?

3            MS. KING:  I'm happy to go first, but I don't have

4  any objections to the presentence report.

5            THE COURT:  So we'll start with Ms. King.

6            You're free to present your position as you are,

7  Mr. Schorr, seated or standing at counsel table or from the

8  podium, wherever is most comfortable for you.  I just ask that

9  you tip the mics down if you're going to be at counsel table.

10           MS. KING:  Thank you, Your Honor.

11           The government would rely on our response to the

12  defendant's position with respect to sentencing factors.  It is

13  our position that Mr. Warren is an armed career criminal based

14  on three prior robbery convictions which, for purposes of

15  sentencing, would be counted as one, as it was one incident

16  involving three individual victims, and two prior felony drug

17  convictions, which occurred all in Maryland.  And in our

18  response to the defendant's position with respect to sentencing

19  factors, we laid out the reasons why we believe the defendant

20  does qualify as an armed career criminal.

21           I do have several exhibits for the Court which I

22  think would assist in the Court's determination.

23           THE COURT:  Happy to see them, Ms. King.

24           MS. KING:  I have provided them already to

25  Mr. Schorr.

1          THE COURT:  Just so we could note them for the

2    record, Government Exhibit 1 appears to be a computer printout,

3    2016 Westlaw provisions of 2002 Maryland Laws, Chapter 26

4    (H.B. No. 11) entitled Criminal Law.

5          Government Exhibit 2 appears to be from 2005,

6    Maryland Law, Chapter 567, H.B. No. 663, Crimes - Robbery By

7    Display of Written Instrument Claiming Possession of Dangerous

8    Weapon and its various subsections.

9          Government Exhibit 3 appears to be a compilation of

10   documents, the first page of which bears what appears to be the

11   certification and seal of Frank M. Conaway, who identifies

12   himself as the Clerk of the Circuit Court of Baltimore City,

13   Maryland.

14          The first page I would note bears a printout legend

15   at the top of the first page of 13:38:37 Friday, August 2,

16   2013.

17          Government Exhibit 4 appears to be a similar

18   certified document from Clerk Conaway, bearing the date of

19   Friday, August 2, 2013 in the upper left corner.

20          Government 5 appears to be a similar document from

21   Clerk Conaway, also a Friday, August 2, 2013.

22          And No. 6 appears to be a compilation exhibit of

23   various provisions of the Maryland Code, specifically at the

24   first document, Article 27 Section 486.

25          Mr. Schorr, have you been provided copies of each of

1 these exhibits?

2 　　　　　MR. SCHORR:  Yes, sir.

3 　　　　　THE COURT:  Do you have any objection to the Court

4 accepting them into the record of today's proceeding?

5 　　　　　MR. SCHORR:  No objection to your accepting them,

6 Your Honor.  We can discuss them, though, individually.

7 　　　　　THE COURT:  Absolutely.  I just want to see if we

8 all know what is in the record before we begin the discussions.

9 　　　　　MR. SCHORR:  No objection, Your Honor.

10 　　　　　THE COURT:  Without objection, Ms. King, each of the

11 exhibits that I've just made reference to is admitted into the

12 record.

13 　　　　　MS. KING:  Thank you, Your Honor.

14 　　　　　I can clarify further.  Government Exhibit 3 is a

15 copy of the certified copy of the defendant's robbery

16 convictions.  I have the actual certified copies here, but I

17 prefer to keep them for my records, if that's okay with the

18 Court.

19 　　　　　THE COURT:  Mr. Schorr, do you need to have any

20 further examination or comparison of the original certified

21 copy from Clerk Conaway?

22 　　　　　MR. SCHORR:  I have no problem with using copies,

23 Your Honor.

24 　　　　　THE COURT:  We can accept the copies as true and

25 correct copies for all purposes in these proceedings?

1          MR. SCHORR:  Yes, sir.

2          THE COURT:  Ms. King, I would just direct that you

3   maintain as custodian the original certified documents, if

4   they're needed for further purposes of this Court or any other

5   United States court that would be involved with this case.

6          MS. KING:  I will, Your Honor.  Thank you.

7          Exhibit 3, there are three components to Exhibit 3.

8   They reference the defendant's three cases relative to his

9   robbery convictions.  Again, it was all essentially the same

10  case.  I guess Maryland breaks it out by victim.  So, if the

11  Court, if the Court ever actually looks through, each one of

12  these will reference a different victim's name, but for

13  purposes of today, it's really all just one conviction.

14         THE COURT:  It was one event involving three

15  victims?

16         MS. KING:  Yes.

17         Exhibit 4 is a copy of the defendant's certified

18  conviction from his 2002 drug conviction.

19         And that is the conviction that is detailed at

20  Paragraph 30 of the presentence investigation report.  It was a

21  conviction for distribution of heroin.

22         Then Exhibit 5 is a certified copy of the

23  defendant's conviction for his 2007 conviction of possession

24  with intent to distribute cocaine, which is detailed at

25  Paragraph 33 of the presentence investigation report.

1          Normally, I'd attach these to my sentencing

2  memorandum, but I figured I would provide them to the Court

3  today because we're here.

4          Exhibits 1, 2, and 6 relate to the crime that I

5  think is the biggest contested issue, which is the defendant's

6  conviction for robbery with a dangerous and deadly weapon from

7  Maryland.  I wanted to provide these to the Court because it

8  actually took quite a bit of digging to find the original

9  statute under which the defendant was convicted and that is

10 Exhibit 6.

11          So Exhibit 6 also has several parts.  The first

12 part, as the Court can see, is Section 486, which contains the

13 definitions and down at the bottom of the first page contains

14 the definition for robbery.

15          And then Section 487, which is kind of the second

16 part of this, contains the definition for robbery with a

17 dangerous or deadly weapon.

18          That is the crime of which the defendant was

19 convicted under this statute.

20          So, a person may not commit or attempt to commit a

21 robbery under Section 486 of this subheading with a dangerous

22 or deadly weapon.

23          The next part is Section 488 of the Maryland Code,

24 Article 27, Section 488, which kind of just tells prosecutors

25 how to write out the charging documents.  But they are all

1   related so I wanted to provide those to the Court.

2          The reason those are important, Your Honor, is that

3   in looking back on my response to Mr. Sindler's position with

4   respect to sentencing factors, I misidentified the section

5   under which the defendant was originally sentenced.  I don't

6   know if the Court has my original response.

7          THE COURT:  Let me pull it up here.

8          That would be ECF 151?

9          MS. KING:  Yes, Your Honor, that's correct.

10         THE COURT:  I have it right in front of me.

11         MS. KING:  Page 2 onto Page 3 of that document, I

12  had stated that the defendant was convicted essentially under

13  this statute and then listed it out, which says a person may

14  not commit or attempt to commit robbery under Section 3-402 of

15  this subtitle with a dangerous weapon or by displaying a

16  written instrument claiming that the person has possession of

17  the dangerous weapon.

18         In fact, that statute was amended in 2005, as is

19  exhibited in Government's Exhibit 2, to add subsection (2),

20  which talks about that you can commit armed robbery by

21  displaying a note basically saying that you have a weapon.

22         So, when the defendant was convicted in 2002, that

23  subsection (2) was not a part of the statute.  So, he was

24  convicted only of committing a robbery by use of a dangerous

25  weapon.  That's actually important --

1          THE COURT:  So you're saying in 2002, the only

2   section, the only provision as to robbery was by committing it

3   with a dangerous weapon, armed robbery?

4          MS. KING:  Exactly.  Yes, Your Honor.  I don't know

5   if the Court had the opportunity to read the District of

6   Columbia --

7          THE COURT:  Judge Bate's opinion?

8          MS. KING:  Yes, Your Honor.

9          THE COURT:  Oh, yes.  He talks about poison and

10  radiation and all sorts of stuff and the fact that the

11  Maryland, the two opinions from the Maryland Court of Special

12  Appeals don't appear to ever have been applied anywhere else,

13  according to Judge Bates.

14          MS. KING:  Exactly.  That's also -- personal

15  research that I have done myself, I have not found any that

16  applied Maryland armed robbery to a crime against property.

17  But the important thing is in Judge Bates' opinion, he notes

18  that in his opinion, the Maryland robbery statute is divisible

19  and because of that, you could commit it with a dangerous

20  weapon or by using a written instrument.

21          But that would not necessarily apply to Mr. Warren

22  because at the time he committed the crime, you could only

23  commit it by using a deadly and dangerous weapon.  That's why I

24  wanted to provide Exhibits 1, 2, and 6 to the Court so you can

25  see how the statute evolved.

1             But I do think that Judge Bates' opinion is

2    particularly applicable here, even though that was in the

3    career offender context, it is still looking at the exact same

4    language, the force clause essentially, and I do think there is

5    no way to commit robbery with a dangerous and deadly weapon

6    under Maryland law that does not have as an element the use,

7    threatened use or attempted use of force.  So, I do believe

8    that it does qualify under the force clause and as a result, it

9    is a crime of violence.

10            THE COURT:  Let me ask you this, Ms. King.  And I'm

11   not saying words don't matter in what all of us do around here,

12   so what you've quoted in your brief talks about you cannot

13   commit or attempt to commit robbery with a dangerous weapon,

14   and 487 in Exhibit 6 says you cannot commit or attempt to

15   commit a robbery under Section 486 with a dangerous or deadly

16   weapon.

17            MS. KING:  Yes, Your Honor.  And if you actually

18   look to -- I can say from doing research that when Maryland

19   changed the way that they kind of categorized their laws, they

20   specifically said that a weapon that is a dangerous weapon is

21   necessarily a deadly weapon.  So, they just subsumed it right

22   into dangerous.  So any weapon that in their view would be a

23   deadly weapon is also a dangerous weapon.

24            THE COURT:  And that was the law in 2002?

25            MS. KING:  Yes.  When the defendant was convicted,

1 it was a dangerous and deadly weapon, and then when the law was

2 changed in 2002, I think they changed it to just a dangerous

3 weapon.

4          THE COURT:  So in 2002, was it dangerous and deadly

5 or dangerous or deadly?  I am not being picky for pickiness

6 sake, but the language, as you and Mr. Schorr pointed out --

7          MS. KING:  Dangerous or deadly.  But I will also say

8 that when the law was adopted -- when it was classified as a

9 criminal law as opposed to what it was before, the legislature

10 specifically said that it was changed -- it was adopting it

11 without any substantive changes.  So while the language may

12 have changed, the meaning behind the law was not changing.

13          THE COURT:  So prior to this, robbery in Maryland

14 was a common law crime?

15          MS. KING:  Yes.

16          THE COURT:  So, when Mr. Warren was convicted of the

17 offenses that are set forth at Government's Exhibit 3, it was a

18 statutory offense?

19          MS. KING:  I believe that it was still considered a

20 common law crime under the Maryland Code.  From what I

21 understand, it was a common law crime with statutory penalties.

22 But then when it was adopted into the actual Maryland Criminal

23 Code, which occurred in 2002, it became a criminal law.

24          THE COURT:  That was one of the issues Judge Bates

25 dealt with where the defense was raised that dangerous weapon

1   was merely a sentencing factor and not an element of the

2   offense, but Judge Bates said that for federal sentencing law

3   purposes, it counted.

4           MS. KING:  Exactly.  And at the time the defendant

5   was convicted, the statutory penalties were there, that if it

6   was just a regular robbery, it was one period of incarceration,

7   but if you committed robbery with a dangerous or deadly weapon,

8   it was an enhanced penalty.  So even though it was a common law

9   crime, the penalties were still there for enhancing it that

10  way, and the defendant would have to plead to it, and the court

11  would have to find those facts or you would have to be

12  convicted by a jury for that enhanced penalty.

13          THE COURT:  So, the sum and substance of the

14  position the United States is whether we look at the force

15  clause under the statute or under the guidelines.  Judge Bates

16  in the Moore opinion was dealing with a guidelines issue but

17  used the Johnson analysis?

18          MS. KING:  Yes, Your Honor.

19          THE COURT:  The position of the United States is

20  that at the time Mr. Warren was convicted of the robbery in

21  2002, that crime categorically fulfilled the force elements of

22  both the armed career criminal and the career offender

23  provisions of the guidelines?

24          MS. KING:  Your Honor, I believe that it's really

25  only the armed career criminal statute that is at issue here

because this is not a drug case.  Career offender applies to
drug cases, and so I do think that if this was a drug case,
yes, he would be, it would meet the career offender portion of
the guidelines, but in terms of the statutory language in the
armed career criminal statute, yes, that is our position.

THE COURT:  So the statutory mandatory minimum in
this case, if you're correct, is 180 months?

MS. KING:  Yes.

THE COURT:  The guidelines calculation in the case,
however, is considerably more than that.

MS. KING:  Yes.  And that is based, in the
guidelines, on the fact that he is considered an armed career
criminal.

THE COURT:  Do you want to address at this point
what Mr. Schorr has foreshadowed as being a discussion of one
of the drug offenses?

MS. KING:  Yes, Your Honor.  I did address this in
my response to Mr. Sindler's position with respect to
sentencing factors, but at the time that Mr. Warren was
convicted in 2002 of his drug trafficking crime, that crime was
punishable --

THE COURT:  On Page 9, you say it was punishable by
up to 20 years in prison.

MS. KING:  Yes, Your Honor.  I did provide exhibits
and attached them to that pleading that I believe prove that.

1    So, I don't really have anything to add to that.  I think it's

2    just a finding that the Court will have to make.

3              THE COURT:  Okay.  Thank you very much.  We'll make

4    sure we don't leave here today until you and Mr. Schorr have

5    every opportunity to tell me whatever you want to tell me, so I

6    know we'll be back to you.

7              Mr. Schorr, sir, the floor is yours.

8              MR. SCHORR:  Well, I think first, Your Honor, while

9    Exhibits 1 and 2 that the government submitted today are

10   interesting from the standpoint of a historical perspective,

11   they're not relevant because they're not the law at the time of

12   the offense.

13             Mr. Warren was arrested for that offense in December

14   of 2000 -- I'm sorry, January 2000, so we have to look at the

15   law at the time.

16             Now, Exhibit 6 --

17             December 2000.

18             Exhibit 6 is the only statute here as far as his

19   armed robbery conviction is concerned that we should be looking

20   at.

21             I'd like to call your attention to Section

22   486(b)(1).  It says:  Robbery retains its judicially determined

23   meaning, except that a robbery conviction requires proof of

24   intent to deprive another of property.

25             So we have to look at how robbery is defined by the

1 courts in Maryland.

2          So, while the Moore opinion is interesting -- I also

3 note the Moore opinion was 2016 and Judge Bates does not

4 discuss when Mr. Moore committed his robbery in Maryland, but I

5 would venture to guess that it was significantly later than

6 2000 because Judge Bates discusses the new statute, not the old

7 statute.  So, I don't think Moore is necessarily dispositive as

8 far as what this Court should rule.

9          THE COURT:  Let me ask you this, Mr. Schorr.  If we

10 look, and I have the Westlaw printout copy, I'm looking at *3,

11 doesn't Judge Bates go beyond the statutory provisions and say,

12 okay, let's put all that aside and let's look at the Douglas

13 and Giles case and what that all means.  Doesn't he say first,

14 those opinions really don't mean much, but even if they do mean

15 much, it's pretty clear that if threat to property was enough

16 to make out robbery, it still would come within the extortion

17 provisions.

18          MR. SCHORR:  Let me take another look at Moore

19 myself, Your Honor, please.

20          THE COURT:  He talks about the underlying offense in

21 Moore being robbery with a dangerous weapon.  He says, well,

22 it's still a crime of violence because if you commit it by

23 threatening somebody else's property, you've committed

24 extortion within the meaning of a crime of violence under

25 4B1.2.

1          MR. SCHORR:  4B1.2 is not an issue here.  However,

2    you can't ignore what the courts in Maryland have said.  That's

3    what the judge here is doing.  He's ignoring Maryland courts

4    and how they have handled it.  Again, this is a Maryland

5    conviction we're talking about here and so what a judge in the

6    District of Columbia has to say is not as pertinent as what the

7    Maryland courts have said.  I'm sure that anybody that looks at

8    it would say that's ridiculous, but that is what the Maryland

9    courts have said, you can't have a threat against property.

10         So, the problem here is, as Mr. Sindler argued,

11   robbery as it is defined and applied in Maryland is broader

12   than the generic definition.  If you could include threats

13   against property --

14         THE COURT:  Well, but doesn't he at Headnote 2, he

15   says where somebody is convicted in Maryland of robbery with a

16   dangerous weapon, a subsequent decision of the Court of Appeals

17   of Maryland, the top court there, says that robbery means

18   robbery with an instrument that was either designed to be used

19   in destroying, defeating, or injuring an enemy, or as an

20   instrument of offensive or defensive combat; (2) under the

21   circumstances of the case, immediately useable to inflict

22   serious or deadly harm, using as example, unloaded gun or

23   starter's pistol used as a bludgeon; or actually used in way

24   likely to inflict that sort of harm, microphone cord used as a

25   garrote.

1          He goes on to say:  This Court does not see how
2   robbery by means of any such instrument could not involve the
3   use, attempted use or threatened use of force capable of
4   causing physical pain or injury to another person.

5          So isn't he saying that the highest court of
6   Maryland in 1989, which comes almost 20 years after both
7   Douglas and Giles, has said what robbery is in Maryland.

8          MR. SCHORR:  Well, they do, but then you have to
9   look at it in the context of Johnson, which it has to be actual
10  physical violence, and there was no physical violence in this
11  case here.

12         THE COURT:  Threat or attempt or the use of a weapon
13  which could cause it.  You don't have to actually cause
14  violence, you don't have to shoot the bank teller, right?

15         MR. SCHORR:  Right, you don't have to shoot the bank
16  teller, but in terms of how a robbery is defined in Maryland,
17  what I was saying earlier is a broader definition than the
18  generic definition of robbery because you can't have more than
19  a threat to a person.

20         THE COURT:  But even if you're correct on that,
21  Mr. Schorr, if we then go to Alleyne and Descamps -- I may well
22  be butchering the names of those cases so if somebody has a
23  better pronunciation, tell me -- wouldn't we then go to the
24  actual charging documents in Mr. Warren's Maryland robbery case
25  and use the modified categorical approach and determine

1  whether, looking only at the charging documents, whether or not

2  he was necessarily charged with an offense that met the force

3  requirements of the ACCA statute, that it would be a divisible

4  statute and we then use not the categorical approach but the

5  modified categorical approach.

6          MR. SCHORR:  Yes, I believe you're right there.

7          THE COURT:  So what would happen -- I'm not saying

8  it does or doesn't apply, but if I conclude that Douglas and

9  Giles make Maryland law odd, to say the least from everything

10 we've been through in law school, make it odd, am I allowed to

11 look at the actual charging documents in Mr. Warren's case and

12 where does that lead us?  Is it a divisible statute?

13         MR. SCHORR:  I think you have to look at the

14 charging documents to determine it.  But my understanding of --

15 if the statute is overbroad, you can't apply it.  If the crime

16 is overbroad, you can't apply it.

17         THE COURT:  Right, it's not a divisible statute, the

18 Supreme Court says I can't make it divisible if it is not

19 otherwise divisible.

20         Ms. King, any thoughts on the modified categorical

21 analysis?  I'm the first to say, I find this to be very

22 complicated and very difficult.  So, I would be -- I would be

23 thrilled if counsel finds it otherwise and can help me out, but

24 it's a tough issue.

25         MS. KING:  I also find it difficult.  But I do think

1 that this is not a divisible statute because I don't believe

2 that you can commit the crime of robbery with a dangerous

3 weapon against property.  I think that even though those two

4 cases from 1970 in dicta posit that it might be possible that

5 you could commit a robbery by threatening to burn down

6 someone's house.  That's not actually what those two cases were

7 about.  Those two cases were about simple robbery, which

8 involved actual people that were there being threatened.  So,

9 no other case, no other robbery case ever in Maryland has found

10 that you can commit a robbery against property.

11          So, I just don't think that that's an option.  I

12 don't think that it's divisible.

13          If the Court, like you were saying, were to find

14 that you can commit an armed robbery or a robbery with a

15 dangerous weapon against property, then I would think it was

16 divisible, and I would think the modified categorical approach

17 would be proper.

18          But then when you go to charging documents in this

19 case, it is clear, this crime was not committed against

20 property.  There are victims' names listed in the informations

21 which were attached as exhibits to Document 151 which show that

22 this was a crime that was committed against persons.

23          So, I think it brings you right back to the

24 beginning, which this was a crime which is a crime of violence

25 under the force clause of the armed career criminal statute.

1          THE COURT:  I diverted away from Mr. Schorr.

2          Mr. Schorr, the floor remains yours.

3          MR. SCHORR:  May I have a moment?

4          THE COURT:  Absolutely.

5     (Whereupon, there was a brief pause in the proceedings.)

6          THE COURT:  Mr. Warren, one thing I will say to you,

7 and I'm confident Mr. Schorr has talked with you about this.

8 To a degree, I try in court to make everything we do here as

9 clear as a bell to both lawyers and non-lawyers, but there's no

10 way around the issues here of them having a lot of technical

11 legal jargon in it.  So I don't want you to think that the

12 Court or the lawyers are talking past you as a non-lawyer,

13 there's just no way to make it plain English.

14          THE DEFENDANT:  I understand, Your Honor.

15          THE COURT:  Mr. Schorr.

16          MR. SCHORR:  In that case, Your Honor, if we're

17 going to look at charging documents, perhaps the government

18 should explain what is the threat in the charging document.

19 The indictment, the criminal information just says:

20 Feloniously with a dangerous and deadly weapon did rob and

21 violently did steal.

22          But where is the force?  Where is the threat of

23 force?  It is just repeating statutory or legal jargon, as you

24 said earlier.

25          THE COURT:  But I guess the question is, does the

1  charging document saying "with a dangerous and deadly weapon,"

2  did rob.  And we, therefore, look at the judicial determination

3  of rob or robbery in Maryland at the time of the offense that

4  Mr. Warren was convicted of, and that carries with it

5  everything that it carries with it.

6          MR. SCHORR:  I'll be quite candid, Your Honor, I

7  don't know the answer to that as to how far we can go into

8  that.  My feeling would be we'd have to actually look at the

9  police report charging the offense.  That's the way I would

10  prefer to see it done so we know exactly what happened.

11          THE COURT:  Under the modified categorical approach,

12  I can't go to the police report.

13          MR. SCHORR:  I don't believe you can.

14          THE COURT:  But I can look at the information and I

15  can look at the law of Maryland at the time the information or

16  the indictment was issued, I would think.

17          MR. SCHORR:  Yes, I believe so.  That's my

18  understanding.

19          THE COURT:  Mr. Schorr, help me out.  You also

20  highlighted one of the other arguments made by Mr. Sindler on

21  Mr. Warren's behalf which you have adopted related to one of

22  the two drug counts.

23          MR. SCHORR:  Yes.  This is the count that is set

24  forth -- the conviction set forth in the presentence report at

25  Paragraph 30.

1          THE COURT:  I'm there.

2          MR. SCHORR:  Now, I'm going to try -- first I'm

3 going to check and see Document 151 to see if everything is in

4 there that I need.

5          I don't think it's as complete as I'd like it to be.

6          I received these from Mr. Sindler.  He advised me --

7 I'll mark these as Exhibit A for the defense.

8          I asked Mr. Sindler and he had gotten these from the

9 probation office.

10          So, I'd like to sort of work backwards on these

11 things, Your Honor.

12          If you would look, please --

13          THE COURT:  Ms. King, do you have any objection to

14 the Court receiving into the record as Defense Exhibit A the

15 compilation document which Mr. Schorr has tendered?  If you

16 can't answer now, you can say that.

17          MS. KING:  Well, I can say that my only objection is

18 that this contains documents that I provided to the probation

19 office that don't have anything to do with this argument that

20 are incorrect.  So, I can point that out to the Court.

21          THE COURT:  We'll let Mr. Schorr state his position

22 and then we'll hear from you.

23          We'll conditionally receive it into the record,

24 Mr. Schorr, so you can talk about it as much as you want.

25          MR. SCHORR:  All right.

 1                 If you would please, Your Honor, go to the second to

 2  last page in this Exhibit A.  It's labeled Charge Summary.

 3                 Do you see that?

 4                 THE COURT:  Yes, it has the heading District Court

 5  of Maryland for Baltimore city.

 6                 MR. SCHORR:  Yes.

 7                 THE COURT:  Got it.

 8                 MR. SCHORR:  Bottom left corner dated January 3,

 9  2002?

10                 THE COURT:  Correct.

11                 MR. SCHORR:  If you please look under Charge

12  Summary, it says -- it lists three counts.  I have a little

13  arrow pointed toward the first one.  It says:  CHG/CIT 20696.

14  Statute 27 286(A)(1).  Penalty 20 years or $25,000.

15                 THE COURT:  Right.

16                 MR. SCHORR:  Now, if you then would turn, go forward

17  a number of pages, you'll come to the indictment.

18                 THE COURT:  I have it.  It says date of offense

19  2 January 2002.

20                 MR. SCHORR:  Yes.  The page just before that is

21  the -- it's Indictment No. 102017025, State of Maryland versus

22  Chemi Warren.  That's dated January 17, 2002.

23                 Then if you go to the indictment itself, Count One,

24  again, it has parenthesis (2 3350).

25                 Do you see that?

1          THE COURT:  I do.

2          MR. SCHORR:  Again, I got these all from Mr. Sindler

3 who advised me he got them from the probation office, and I

4 guess they got them from Ms. King.

5          If you move forward several more pages, you'll come

6 to a page that looks like this, it's labeled --

7          THE COURT:  It has 125 in the top right corner?

8          MR. SCHORR:  Yes.  If you look at two coding things,

9 the second one, it says:

10          CR 5-602.

11          Felony.

12          $15,000 - five years.

13          Look at the bar code to the left 2 3550.

14          Now, there is an inconsistency between the first

15 document I showed you, which was this Charge Summary where they

16 showed a coding number of 2 0696 and a 20-year penalty.

17          Then you go to the indictment dated after that

18 Charge Summary and you have a 2 3550.

19          And then we see apparently that that code, that 3550

20 is called a CJIS code, Criminal Justice Information System.  It

21 looks like between the date, January 3 of 2002 and January 17

22 of 2002, the charge against, the lead charge against Mr. Warren

23 changed from an offense carrying a 20-year sentence to an

24 offense carrying a five-year sentence maximum.

25          THE COURT:  What about the charge at the top of the

1 page that has the 125 on it, the 0233 charge.

2          MR. SCHORR:  I do not see that anywhere.  That's the

3 second count in the indictment, but he did not plead to that.

4 He only pled to Count One.

5          THE COURT:  Okay.

6          MR. SCHORR:  If you look at the sentence in this

7 case, he got sentenced to five years with four years suspended,

8 correct, and then some probation.

9          So, there's that.

10          We're presented with a mountain of documents as far

11 as his criminal history is concerned, but the facts contained

12 in those documents belie what the government is saying.  It

13 appears that his first felony drug conviction does not meet the

14 requirements, just from the papers themselves for the armed

15 career criminal.

16          THE COURT:  So let me just recap for a second.  You

17 can tell me if I'm understanding your argument.

18          The indictment related to that charge charged

19 Mr. Warren with three offenses.

20          MR. SCHORR:  Yes.

21          THE COURT:  Two of those offenses were under Section

22 3550?

23          MR. SCHORR:  Yes.

24          THE COURT:  One of which was under Section 0233.

25          MR. SCHORR:  Yes.

1          THE COURT:  Which is Count Two?

2          MR. SCHORR:  Yes.

3          THE COURT:  You're saying the offense of conviction

4  in Baltimore City Circuit District Court was by a plea of

5  guilty to Count One?

6          MR. SCHORR:  Yes.

7          If you look at -- if you start with the indictment

8  and you turn back two pages, you'll see a sheet of paper

9  labeled Docket Entries at the top.  And it has a lot of stamps

10 on it and handwriting filling in the blanks.

11         The top entry 5-6-02, No. 025, which are the last

12 digits of this offense number, Count One, plea - guilty.

13         Then underneath that CJOC - remaining counts, which

14 I imagine means they were dismissed or something.  But he only

15 pled to that first count.

16         So, I think the mistake has been made --

17         THE COURT:  You're saying on May 6, 2002, Mr. Warren

18 was convicted of a crime against the laws of Maryland.  The

19 crime was the crime set forth at Count One of the indictment.

20         MR. SCHORR:  Yes, which appears to have carried a

21 five-year maximum sentence.

22         His sentence is fairly consistent with that.

23         Now, what alerted us to this problem or this issue

24 was Mr. Warren had a pre-plea criminal history report prepared.

25 I don't know if the Court gets to see that or not.

1          THE COURT:  I do when the defendant consents to it,

2   and Mr. Warren must have because I have it.

3          MR. SCHORR:  If you would turn then in that document

4   to I believe -- I don't have a docket entry on this one.

5          THE COURT:  ECF 41 filed June 30, 2014.

6          MR. SCHORR:  That was in Paragraph -- look at

7   Paragraph 26.

8          THE COURT:  Okay.

9          MR. SCHORR:  Underneath the -- in the paragraph

10  there it says:  Details of the offense being sought.  Available

11  records certify the conviction and the presence of counsel when

12  sentenced, as detailed above.

13         Midway through it says:  The "closed" charges

14  include possession with intent to

15  manufacture/distribute/dispense and unlawful possession.  Count

16  One was amended from the original charge, which was

17  manufacture/distribute narcotic.

18         So, something happened between January 3rd of 2002

19  and January 17, 2002 where the charge, what Mr. Warren was

20  charged with changed.  It appears that he was charged with a

21  lesser crime than what he was initially charged with --

22  indicted for a lesser crime, which appears to carry, based on

23  what we looked at in this Exhibit A, appears to carry only a

24  five-year maximum sentence.  That is not a predicate offense.

25         THE COURT:  So at some point, Mr. Warren was charged

1 with offenses, including by the indictment, charged with

2 offenses that had a maximum penalty under Maryland law of 20

3 years in prison?

4          MR. SCHORR:  Yes.

5          THE COURT:  But you're saying the offense to which

6 he pled guilty, that is, the offense of conviction was a crime

7 that had a maximum sentence under Maryland law of five years in

8 prison?

9          MR. SCHORR:  I'm suggesting he was indicted and pled

10 guilty to the lesser offense.

11          THE COURT:  He was earlier charged, but at the

12 indictment, the grand jury document, two charges were

13 punishable by 20 years in prison, one by five years in prison,

14 and it was that one you're saying he pled guilty to and,

15 therefore, that is the one he was convicted of.

16          MR. SCHORR:  I believe so.  Let me look at one thing

17 for clarification.

18          THE COURT:  Sure.

19          We'll make sure we hear from Ms. King.

20          MR. SCHORR:  If we go back, I know Exhibit A to the

21 very first document we looked at, he was initially charged, the

22 charge summary, Count Two -- Count One and Two both carried a

23 20 year sentence.  Count Three carried a four years sentence

24 maximum.

25          What I'm saying is the Count One changed.  Count Two

1 was dropped because he pled guilty to the new Count One.  Count

2 Three was dropped.

3          Am I making myself clear?

4          THE COURT:  I think.  Let me ask you this,

5 Mr. Schorr.  If we go to the very back document, it's dated

6 1-29-02, it has the indictment listing three counts.  I'm just

7 curious on the Charge Summary, if you know the answer to this,

8 it says:  CHG/CIT.  It goes, 2, 3, 4, which leads to the

9 question, was there a one?  Or doesn't that matter?

10          MR. SCHORR:  I don't know what that means, Your

11 Honor, to be quite honest with you.

12          THE COURT:  I don't either.  And it may not matter.

13          MR. SCHORR:  It may not matter.

14          MS. KING:  Your Honor, if I could maybe be of some

15 assistance.

16          THE COURT:  Ms. King, happy to hear from you.

17          Mr. Schorr, we will be sure to come back to you.

18          MS. KING:  I think on the Charge Summary, the

19 charged count, the 02 090696, if you look to the actual

20 indictment or the 4 3550, I don't think those are Counts One,

21 Two, Three, Four, I think those relate to whatever those

22 numbers are that are in the parenthesis.  That's my take on it.

23          THE COURT:  They have something to do with Maryland

24 law.

25          MR. SCHORR:  Yes.  In fact, Your Honor, when

1   Mr. Warren and I were discussing this yesterday, we actually

2   Googled CJIS 3550 and a Maryland website pops up and it tells

3   you put in 3550.  Then there's a 2 3550; 3 3550, so I'm not

4   sure what all that means.  But the point is, looking at this

5   document that starts with 125 at the top, it looks like with

6   the bar code attached for the second entry there, he was only

7   charged with an offense that carried a five-year sentence.

8            THE COURT:  He was only convicted of an offense.

9            MR. SCHORR:  He was convicted of that, yes.

10           THE COURT:  Let me ask you this, Mr. Schorr.  If

11  you're correct, then other than the fact that it's legally

12  challenging, the issue of the Maryland robbery law isn't --

13  Mr. Warren would not be an armed career criminal no matter what

14  I conclude as to the Maryland robbery law?

15           MR. SCHORR:  Right.

16           THE COURT:  And then if I conclude you're correct, I

17  would do what, send it back to the probation office and direct

18  them to, as they're obligated under Rule 32 and 3553 and 3552

19  to prepare an addendum to the presentence report recalculating

20  the now advisory sentencing guidelines?

21           MR. SCHORR:  I think so.

22           THE COURT:  You have every reason to believe if

23  Mr. Warren is not defined as a statutory armed career criminal,

24  there would be a material difference in the advisory guideline

25  calculation, and would the mandatory minimum sentence drop out

1  of the case if you're correct?

2           MR. SCHORR:  Yes, I believe so.

3           THE COURT:  We'll come back to you, Mr. Schorr.

4           Ms. King, the floor is yours.

5           MS. KING:  Thank you, Your Honor.

6           These are documents, some of which I had myself

7  pulled from the Internet, including this document, which --

8           THE COURT:  That's in Defendant's Exhibit A?

9           MS. KING:  Yes, Your Honor.  I don't know exactly

10 what page it is on, but I can say this has nothing to do with

11 this.  I had included it because it didn't occur during

12 research that I was doing, but what I came to discover is that

13 the defendant, in fact, pleaded guilty to Count One, and if the

14 Court looks at the fourth page from the end, which has some

15 handwriting and it is a court document --

16          THE COURT:  Looks like it's out of a journal that

17 some bailiff or docket clerk keeps?

18          MS. KING:  Yes, Your Honor.  Actually, the first

19 page says Docket Entry, so I think it's a handwritten docket

20 entry, Your Honor.  You may be familiar with that from here in

21 Allegheny County.

22          But it says that on May 6, 2002, the defendant

23 pleaded guilty to Count One, the charge of distribution of

24 heroin.  That's what he pled guilty to.  The indictment itself

25 alleges that at Count One, that he, the defendant, distributed

1  heroin, which is a narcotic drug.

2        I had attached to my response to Mr. Sindler as

3  Document 151, Exhibit 3.

4        THE COURT:  Let me flip to that, Ms. King.

5        Okay, I'm there.

6        MS. KING:  This is the Maryland Code that was in

7  effect at the time the defendant was convicted.  This is the

8  statute under which he was convicted.  So, Section (b) lists

9  out the penalties.  That's a little bit more than halfway down

10 the page.

11       THE COURT:  I see it.

12       MS. KING:  It says:  Any person who violates any of

13 the provisions of subsection (a) of this section, and then

14 subsection (a) of this section criminalizes distribution of

15 controlled substances.

16       With respect to (b)(1), a substance classified in

17 Schedules I or II, which is a narcotic drug, is guilty of a

18 felony and subject to imprisonment for not more than 20 years.

19       So that was the maximum penalty for the crime to

20 which the defendant pleaded guilty.

21       Going down to (b)(3), if it had been a Schedule I,

22 II, III, IV or V dangerous substance, it would have been not

23 more than five years.  However, heroin is a Schedule I

24 controlled substance and as a result, as is indicated in the

25 indictment, it specifically says he pled guilty to heroin and

1  in the Charge Summary, which lists out that the penalty is 20

2  years or more, that is the crime to which the defendant pleaded

3  guilty and was sentenced.  He received five years, but the

4  maximum penalty was 20 years.

5         THE COURT:  So (b)(1) says if it's a Schedule I

6  narcotic drug, it's 20 years; (b)(3) says if it's a Schedule I

7  dangerous substance, other than a narcotic drug, that it's five

8  years.

9         MS. KING:  Yes.

10         THE COURT:  So what --

11         MS. KING:  On the last page it says:  Distribution

12  NARC, N-A-R-C, which I'm assuming means narcotic drug.

13         THE COURT:  So Count One of the indictment says that

14  the defendant unlawfully did distribute a certain controlled

15  substance of Schedule No. 1, to wit:  Heroin, which is a

16  narcotic drug, to a certain -- and it lists the name of a

17  person.  It references Article 27, Section 286.

18         MR. SCHORR:  You'll note, Your Honor, it doesn't say

19  any subsection here.  That was the same complaint made by --

20  not complaint, the observation made in the pre-guilty

21  presentence report.  We don't know what subsection of Section

22  36 he's charged under.

23         THE COURT:  Count One charges a Schedule I narcotic

24  drug.

25         MS. KING:  And it charges distribution.  So while it

1 does not list (a)(1), it is clear that he was charged and

2 pleaded guilty to distributing a Schedule I narcotic drug,

3 heroin.

4            THE COURT:  Let me ask you this, Ms. King.

5            And, Mr. Schorr, we'll hear from you not only on the

6 question I'm about to ask but whatever else you were about to

7 tell me.

8            Does it matter if --

9            I take it back.  Mr. Schorr, looking at the charge

10 summary, the 3550 has a maximum penalty of four years?

11            MR. SCHORR:  Yes.

12            THE COURT:  So we know or we could infer that a

13 five-year sentence is inconsistent with 3550.

14            MR. SCHORR:  Well, not necessarily, Your Honor.  I

15 don't know enough about how those work.

16            THE COURT:  I apologize, Mr. Schorr, I interrupted

17 you.  You were about to tell me something.

18            MR. SCHORR:  Totally flowed out of my head.

19            THE COURT:  I apologize.

20            Ms. King says if we look at the indictment, it

21 charged a violation of Section 286.  It specifically charged

22 distribution of a dangerous substance that was Schedule I,

23 which was a narcotic drug.

24            She says if we go to 286, which Mr. Warren was

25 charged by indictment with violating, 286 says if it's a

1 dangerous substance that is also a narcotic drug on Schedule I,

2 then the maximum term is 20 years.

3          MR. SCHORR:  Yes.  What I'm saying, Your Honor, is

4 we don't know -- something happened, I don't know, we know that

5 he got sentenced to basically a year in jail, four years

6 suspended sentence.

7          THE COURT:  Right.

8          MR. SCHORR:  He's prepared to explain.  We're all

9 kind of grasping at straws.  This is something that happened in

10 2002, 14 years ago.  Only one person knows what happened,

11 that's Mr. Warren.  He's more than willing explain to the

12 Court.

13          THE COURT:  If you want to have him explain it, I'm

14 happy to hear from him.  We will swear him in.

15          MR. SCHORR:  He has been sworn in already.

16          THE COURT:  Do you want to have him take the witness

17 stand?

18          MR. SCHORR:  If you prefer, or he can sit here.

19          THE COURT:  I just think it's easier if Ms. King may

20 want to ask him any questions.

21          Marshals, any problem with Mr. Warren taking the

22 witness stand?

23          THE MARSHAL:  No, sir.

24          THE COURT:  Mr. Warren, you may take the witness

25 stand.

1              Sir, you're under oath.

2        ATIBA WARREN, a witness having been duly sworn, testified

3  as follows:

4              THE COURT:  Mr. Warren, sir, you are under oath.

5              Mr. Schorr, you may examine, sir.

6                    DIRECT EXAMINATION

7  BY MR. SCHORR:

8  Q.  Please state your name.

9  A.  Atiba Chemi Warren.

10  Q.  Spell the first and middle name for the court reporter.

11  A.  A-T-I-B-A, middle, C-H-E-M-I.

12  Q.  You have heard us talking about this issue.  Can you tell

13  us what happened as far as your conviction in 2002 for the drug

14  charge that we're discussing today?

15  A.  Yes, I sure can.  It was actually a drug charge in front

16  of Judge Roger Brown, which is retired.  The basic -- I didn't

17  have a record at the time.  He said, I'm willing to do this for

18  you.  The charge carries five years.  I'm going to suspend four

19  years of the five.  You have five months in of the time.

20  Another month you'll be home and you have three years

21  probation.

22  Q.  Did he tell you what you were pleading to?

23  A.  Yes.  The five years was the maximum penalty and/or a fine

24  of 15,000.

25  Q.  Did you have a signed plea agreement to that?

A.  No, it was a verbal plea agreement because the charge was

amended from the original charge at the preliminary hearing

when the indictment came up.

Q.  Did you have a lawyer there?

A.  Yes, I did.

Q.  Who was the lawyer?

A.  I believe his name was Christian -- Creston.

Q.  Was there any kind of a colloquy with a question and

answer session between you and the judge?

A.  Yes.

Q.  Did he explain the charges that you were pleading to?

A.  He explained them clearly.

Q.  Do you recall what he explained in that regard?

A.  He basically explained that I was pleading under the

subsection 286 -- 270 -- 286, I can't remember like the actual,

you know, subsections, but he basically said the maximum

penalty that he could have gave me that day was five years

and/or 15,000.  He said, I'm going to suspend four years of the

five, give you one year jail time and in another month because

on a drug charge in Maryland, you only do six months, you will

be home and take this probation as -- how did he put it, as a

new lease on life.  If I see you in my courtroom again, I'm

going to give you the remainder of the suspended sentence.

          MR. SCHORR:  I have nothing further, Your Honor.

          THE COURT:  Thank you, Mr. Schorr.

1              Ms. King or Mr. Ortiz?

2              MS. KING:  I don't have any questions, Your Honor.

3              THE COURT:  I have a few.  Then we'll see if counsel

4    have any other.

5              THE DEFENDANT:  Do you want me to look this way?

6              THE COURT:  You're fine talking into the mic.

7              Your lawyer when you were before Judge Brown, is

8    that a lawyer you or your family hired or was it someone

9    appointed for you?

10             THE DEFENDANT:  I want to say it was somebody we

11   hired.  I'm pretty sure.

12             THE COURT:  The name you gave, was that that

13   lawyer's first name or last name?

14             THE DEFENDANT:  I believe it was his last name.

15             THE COURT:  Did you after this sentencing and plea

16   hearing with Judge Brown, did you ever have any further

17   dealings with that lawyer, sir?

18             THE DEFENDANT:  No.  No, not after that, no, sir.

19             THE COURT:  Do you have any idea of that lawyer's

20   whereabouts, sir?

21             THE DEFENDANT:  I sure don't, Your Honor.  It was so

22   long ago.  I'm not actually sure.  I left Baltimore.

23             THE COURT:  Thank you, Mr. Warren.

24             Mr. Schorr, any follow-up to the Court's questions?

25             MR. SCHORR:  No, sir.

1          THE COURT:  Ms. King, do you or Mr. Ortiz have any

2  follow-up to the Court's questions?

3          MS. KING:  No, Your Honor.

4          THE COURT:  Thank you.

5          Mr. Warren, you can step down, sir.

6          THE DEFENDANT:  Thank you.

7          MR. SCHORR:  Your Honor, the government has to prove

8  by a preponderance that an enhancement applies.  The issue here

9  deals with whether this drug felony qualifies as a predicate

10 offense.  I don't think there's been enough evidence here.  You

11 have a witness who tells you that he was sentenced to something

12 that carried a five year maximum.

13         THE COURT:  Or at least he was told that.

14         MR. SCHORR:  He was told that.  We have some

15 documents received that contradict a 20-year sentence.

16         Now, as I said, I got these documents from

17 Mr. Sindler.  He told me he got them from probation, and I

18 guess Ms. King gave them to probation.

19         Now she's telling us the one thing we looked at was

20 No. 125 at the top is something she pulled off the Internet.  I

21 don't know what that means.  However, as I said earlier, it is

22 consistent with the kind of sentence Mr. Warren got, as a

23 first-time offender, to get a five-year sentence with the time

24 suspended.

25         And consistent with his testimony, he said the Judge

1 told him he was a first-time offender.  He had no record.  If

2 you look at his presentence report, his convictions all

3 occurred, with the exception of possession of an open

4 container, they're all dated after May of '02.  Regardless of

5 when they happened, when he was arrested, but that conviction

6 was the first one he had.  So --

7             THE COURT:  The date of conviction, the date of the

8 court event?

9             MR. SCHORR:  Yes, the date of the conviction is May

10 6, '02.  If you look at paragraphs -- I'm looking at Paragraphs

11 25 through 31 -- I'm sorry, 33, all of these convictions with

12 the exception of Paragraph 26 are after that date.  So the

13 Court is going to have to draw some inferences here that a

14 judge in Baltimore 14 years ago saw a first-time offender

15 before him and said, I don't want to saddle you with a 20-year

16 possible sentence or a conviction that carries that.  This is

17 the lesser included offense we're going to go with.

18             THE COURT:  Or for whatever reason, told Mr. Warren

19 and his lawyer that the maximum penalty to a charge for which

20 he's pleading guilty was five years in prison.

21             MR. SCHORR:  Yes.

22             THE COURT:  In fairness to counsel, I would note

23 only because I've had interactions from time to time with state

24 court judges in Baltimore, none of whom are in Baltimore

25 County, I do know that in sentencing in the State of Maryland,

1  judges have a broad discretion to suspend portions of

2  sentences, and that they use that as sort of their own judicial

3  supervised release, that they will suspend a portion of a

4  sentence with the idea that if there's a violation, then the

5  defendant comes back for resentencing.

6         I don't know that that has any relevance to this,

7  but since I know it, I thought I would tell each of you.

8         It doesn't strike the Court as odd to look at a

9  docket entry and to see 80 percent of a sentence suspended by a

10 trial judge in Maryland, apparently they do that.

11         Mr. Schorr, anything further in these regards?

12         MR. SCHORR:  Your Honor, I believe we presented you

13 everything we have.  You're going to have to make a decision as

14 to the armed robbery conviction.  I believe that the drug

15 conviction does not qualify as a predicate offense.

16         THE COURT:  Because the maximum penalty wasn't ten

17 years or more?

18         MR. SCHORR:  Exactly.  And so I'm asking the Court

19 when you make that ruling, take that under advisement.

20         THE COURT:  Appreciate that, Mr. Schorr.

21         Ms. King and Mr. Ortiz, I don't mean to leave you

22 out.

23         MS. KING:  Your Honor, again, I would point to the

24 fact that the documents I attached to Document 151 are

25 documents provided from the court, which show that the

defendant pleaded guilty to distribution of heroin, a narcotic

drug, and the statute itself has the maximum penalty of 20

years for that crime.

So, while the defendant was sentenced to five years,

it's not unusual that you would not receive the maximum penalty

of 20 years for a crime like that.  So, I don't think his

actual sentence has anything to do with what the possible

sentence could be, which I believe is 20 years, and I believe

the documents bear that out.

THE COURT:  Let me ask you this, Ms. King --

And Mr. Schorr, we'll hear from you also, if you

want to be heard on this.

Does it matter if I conclude that Mr. Warren's

testimony was accurate in the sense of he accurately reported

what happened in Judge Brown's courtroom when he entered his

plea of guilty?

More specifically, if it is true that Judge Brown at

the time of Mr. Warren's plea told him that the maximum penalty

for the offense to which he's pleading guilty is five years in

prison, does that matter?

Each counsel is free to say, Judge, I want to think

about that, I will tell you later on.  If you know now, I'm

happy to hear your answer.

MS. KING:  Your Honor, I would like the opportunity

to look into this.  I'd also like the opportunity to try to

find some type of transcript about this because that's a
surprisingly accurate memory of something that happened so long
ago, so I would like to look into that.  I do think, again, the
fact remains that the documents show what they show.  I'd like
to be able to look into that.

THE COURT:  Understood.  That's fine.

Mr. Schorr, do you want to respond to the Court's
question now or after you think about it?

MR. SCHORR:  I'm not one to shoot from the lip, Your
Honor, but my initial reaction would be that if a judge tells a
defendant you're going to be pleading to something that carries
a maximum sentence of five years, and that's not actually the
case, that goes to the validity of that guilty plea because
it's not a knowing, voluntary and intelligent and informed
guilty plea.  That opens up a whole new can of worms.

I would like to see a transcript, too.  If we can't
get one from 14 years ago, then I think all you have is
Mr. Warren's word at this point.

MS. KING:  That's not all you have, Your Honor.

THE COURT:  On that question, on the question of
what happened in Judge Brown's courtroom on that day in terms
of the oral statements of Judge Brown and Mr. Warren,
Mr. Schorr is saying at the moment all we have is what
Mr. Warren reported.

MS. KING:  Yes, Your Honor.

 1            THE COURT:  So, Ms. King, procedurally, what do you

 2 think we should do?

 3            MS. KING:  I think we should set the sentencing

 4 hearing, Your Honor.

 5            THE COURT:  What do you want to do before the

 6 sentencing hearing occurs?

 7            MS. KING:  I definitely would like to file my

 8 sentencing memorandum, which I usually do two weeks prior to

 9 sentencing.  Then I'd also like to look into this question and

10 have the opportunity to provide the Court with some information

11 that I'm able to find relative to this question.

12            THE COURT:  So, setting those other two dates will

13 turn on giving you a reasonable period of time and Mr. Schorr a

14 reasonable period of time to do the digging that you've each

15 indicated would be appropriate.

16            So, how much time -- why don't you tell me when you

17 would like to file your sentencing memorandum?  You can give me

18 a ballpark if you want.

19            MS. KING:  Would you like all this information in

20 the sentencing memorandum?  I could include it all together.

21            THE COURT:  Is that what you would like to do?

22            MS. KING:  That's fine with me, Your Honor, yes.

23            THE COURT:  When would you like to file it?

24            MS. KING:  30 days would be good.

25            THE COURT:  That's great.

1            Mr. Schorr --

2            Let me ask you this, Ms. King.  Would you intend

3   that if you get transcripts, attorney notes, where Attorney

4   Christian is, or Judge Brown is, I don't know, Judge Brown

5   probably had more cases and less files than Attorney Christian,

6   if I'm pronouncing his name correctly.

7            It seems to me, Mr. Schorr, you each may want to

8   react to each other's sentencing memo.

9            MR. SCHORR:  I think so, Your Honor.

10           THE COURT:  Mr. Schorr may say some things that you

11  want to weigh in on, Ms. King, and it sounds to me you likely

12  will say some things that Mr. Schorr wants to weigh in on.

13           What if we said sentencing memos from each of you,

14  we'll set a date about 30 days out, and then each of you will

15  have 14 days to file something, if you want, as a follow-up to

16  the opposing sentencing memo.  And then I'll look at dates that

17  bear out once we string that out and set what I'll call a

18  targeted sentencing date.  It will be the sentencing date,

19  unless it has to get moved because of intervening events.

20           If we do that process, Ms. King, can the United

21  States live with that?

22           MS. KING:  Yes, thank you.

23           THE COURT:  Mr. Schorr, can you live with that?

24           MR. SCHORR:  I don't have to file anything until

25  sometime after June 6th, correct?

1          THE COURT:  Correct.

2          MR. SCHORR:  Good.

3          THE COURT:  Actually, sometime after June 10th.

4          MR. SCHORR:  Perfect.

5          THE COURT:  So we'll get some dates out, we'll get

6  an order up either this afternoon or tomorrow morning.  When

7  counsel looks at them, if there's a problem, we'll adjust it.

8          If counsel in their efforts to gather information,

9  since ultimately I'm going to have to make a decision here,

10 believe that there's some process of the Court that is needed

11 directed to some judicial office or whatever in the State of

12 Maryland, file a motion and if I think I'm -- if you think this

13 may be one of those cases where the All Writs Act actually does

14 reach to the ability of the Court to issue a writ to somebody

15 else to get us what we need.  So, I'll probably bake a little

16 time in, Ms. King, for me to review your sentencing memos, and

17 to issue tentative findings that rule on these two questions.

18         In fairness to the parties, I will rule on both

19 questions because if this is not the last judicial stop in this

20 case, I think anybody else will want me to have ruled on both

21 questions because I can be right on both, I can be incorrect on

22 both, but I could right on one and incorrect on the other and

23 then someone will want to know what those rulings are.  I will

24 rule on both questions, unless your sentencing memos indicate

25 that they're not -- either or the other is no longer live as an

1  issue before the Court.

2          So, Mr. Warren, what this all means is because this

3  is such a central issue to determining what your sentence is

4  and whether you'll be subject to a mandatory minimum sentence

5  of 15 years in federal prison, we're going to give your lawyer,

6  Mr. Schorr, and the lawyers for the United States an

7  opportunity to address the Court in writing on the matters that

8  were raised today, perhaps identify additional information,

9  transcripts, or other things, get that to the Court, respond to

10 each other, give me time to read it and rule on where this all

11 fits in on your sentence.

12          So, unfortunately, sir, first I find that the

13 request of your lawyer, Mr. Schorr, and the lawyer for the

14 United States to do that is completely reasonable, given the

15 important circumstances in this case, both for the United

16 States and for Mr. Warren.  So, it does mean, Mr. Warren,

17 there's going to be a bit of a delay in your sentencing date

18 occurring, but this, to use a common term, it does seem to the

19 Court that this issue, these two issues are, in essence, game

20 changers in determining what the sentence would be and what the

21 range the Court is obligated to consider or permitted to

22 consider in this case.

23          So, we'll get an order out that schedules those

24 dates, and if counsel has a difficulty with them or if there's

25 an intervening event, just let the Court know and we'll make

1 the adjustments we need to make.

2          Mr. Schorr, is there anything else you think we

3 should take up today?

4          MR. SCHORR:  No.  My client said he wanted to put

5 something on the record.

6          THE COURT:  Do you want to have him tell it to you

7 first?

8          MR. SCHORR:  Yes, please.

9      (Whereupon, there was a brief pause in the proceedings.)

10          MR. SCHORR:  Your Honor, going back to that Exhibit

11 A, if you look at the first page.

12          THE COURT:  Very top page?

13          MR. SCHORR:  Very top page.

14          THE COURT:  I have it in front of me.

15          MR. SCHORR:  If you look at the left margin, you'll

16 see where it says 001 00 C USER.

17          THE COURT:  I do.

18          MR. SCHORR:  Says Code 2 3550.

19          THE COURT:  I do.

20          MR. SCHORR:  If you go back to the indictment, the

21 third count has a 3550 number, four-year sentence.

22          That is, it has a four in front of it, 4 3550.  Not

23 quite clear exactly, but Mr. Warren wanted me to bring that to

24 your attention, that that looks like that's the count --

25 there's some confusion there, but maybe I'm not saying it

1 right.

2              THE DEFENDANT:  Can I explain it, Your Honor?

3              THE COURT:  Is that okay with you, Mr. Schorr?

4              MR. SCHORR:  That's fine, Your Honor.

5              THE COURT:  Mr. Warren, sir.

6              THE DEFENDANT:  I believe this is a discrepancy on

7 the actual charging documents and actual certified conviction.

8 On the certified conviction, this is what we have right here

9 that Ms. King has the originals to.

10              THE COURT:  I have it in front of me, sir.

11              THE DEFENDANT:  It says:  Code 2 3550, CDS unlawful

12 manufacture.

13              THE COURT:  I see that.

14              THE DEFENDANT:  That's what the actual certified

15 conviction says.  That 2 3550 has great significance.

16              And I'll draw your attention to the indictment.  It

17 says 2862-3550.

18              THE COURT:  I see that, sir.

19              THE DEFENDANT:  If I draw you back to the actual,

20 the penalty - 20 years, the charge summary, it says:  2 0696,

21 27 286(a)(1), specific subsection (a)(1).

22              If I draw your attention back to the page with the

23 bar code on it --

24              THE COURT:  I have that, sir.

25              THE DEFENDANT:  It's the page that has 125 at the

1 top.

2          THE COURT:  Yes, sir.

3          THE DEFENDANT:  These are certified by the State of

4 Maryland.  This says where the bar code is 2 3550, CDS

5 distribution.  It says maximum penalty - five years; 15,000;

6 still a felony, only carries five years.

7          I would like the Court to examine that 2 3550

8 because that's what I pled to, that's what is on the certified

9 conviction, irregardless if it says distribution of heroin

10 that's handling and receiving.  This is computerized from the

11 Clerk of Courts down in Baltimore City.

12          THE COURT:  Okay.  Thank you, Mr. Warren.

13          Ms. King, is there anything you'd like to ask

14 Mr. Warren about what he just told me?

15          MS. KING:  No.

16          I'd like, it says:  Note, do not use for narcotics,

17 which heroin is a narcotic and it was charged as a narcotic on

18 the bar code page we were just looking at.

19          THE COURT:  The bar code page being the one that

20 says 125 at the top?

21          MS. KING:  Yes, Your Honor.

22          THE COURT:  Understood.

23          Ms. King, here's what I'm going to do.  I'm going to

24 receive Exhibit A into the record.  You and Mr. Schorr can tell

25 me what to make of it.  If there are any pages or parts of it

1 that you believe don't have relevance to the issues before the

2 Court, you're free to point that out in your sentencing memos.

3 We'll receive it into the record since we've spent time

4 examining it and walking through it.

5          Mr. Schorr, anything else we should take care of or

6 put on the record today?

7          MR. SCHORR:  No, sir.

8          THE COURT:  Ms. King?  Mr. Ortiz?

9          MS. KING:  Nothing, Your Honor.  Thank you.

10          MR. ORTIZ:  No, thank you, Your Honor.

11          THE COURT:  Mr. Greer, anything we wanted to talk

12 with counsel or Mr. Warren about that has been unexplored so

13 far?

14          MR. GREER:  No, Judge.

15          THE COURT:  Counsel, we will post later today as a

16 notice to counsel on the ECF docket a link to a Maryland

17 website regarding guidelines and offense table.  I'm not

18 stating that that has necessarily any relevance to any of this,

19 but it does appear to be a source of information about these

20 CIS or CJIS codes.  And if I intend to in any way rely on that

21 in any decision I make, I will give notice to counsel so you'd

22 have an opportunity to tell me what to make or not make of it,

23 but I just wanted to advise you we did find that link online.

24          MR. SCHORR:  Is that as of 2001 or 2002 or it is

25 current?

1          THE COURT:  Appears to be current.  That's why I

2  said it may or may not have any bearing on any of this.

3          Anything else we should talk about with counsel,

4  Mr. Greer?

5          MR. GREER:  No, Judge.

6          THE COURT:  Mr. Babik?

7          MR. BABIK:  No, Judge.

8          THE COURT:  In a moment we'll adjourn this hearing,

9  I'd ask those present in the courtroom to remain seated and at

10 ease while the marshals assist Mr. Warren.

11     (Court adjourned.)

12                         -----

13

14                      CERTIFICATE

15

16          I, Juliann A. Kienzle, certify that the foregoing is
   a correct transcript from the record of proceedings in the
17 above-titled matter.

18
   s/Juliann A. Kienzle, RMR, CRR
19 _____
   Juliann A. Kienzle, RMR, CRR
20

21

22

23

24

25