IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA,

      Plaintiff,

        vs.

ATIBA WARREN,

      Defendant.
_____

Criminal Action

No. 13-270


    Transcript of SENTENCING HEARING proceedings recorded on September 12, 2016, in the United States District Court, 700 Grant Street, Pittsburgh, Pennsylvania, before The Hon. Mark R. Hornak, United States District Judge


APPEARANCES:

| | |
|---|---|
| For the Government: | Katherine A. King, Esq.<br>United States Attorney's Office<br>700 Grant Street, Ste. 4000<br>Pittsburgh, PA  15219 |
| For the Defendant: | R. Damien Schorr, Esq.<br>1015 Irwin Drive<br>Pittsburgh, PA  15236 |
| Court Reporter: | Deborah Rowe, RMR, CRR<br>700 Grant Street, Ste. 5300<br>Pittsburgh, PA  15219<br>(412) 471-2510 |


Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

1                    P R O C E E D I N G S

2                           - - -

3           (9:34 a.m.; in open court, Defendant present:)

4           THE COURT:  We're here this morning in the case of

5    the United States of America versus Mr. Atiba Warren pending

6    on the docket at 13-cr-270.  Will counsel for the United

7    States please enter her appearance?

8           MS. KING:  Good morning, Your Honor.  Katherine

9    King for the United States.

10          THE COURT:  Good morning, Miss King.  Will counsel

11   for Mr. Warren please enter his appearance?

12          MR. SCHORR:  Damien Schorr for Mr. Warren.

13          THE COURT:  Good to see you also, Mr. Schorr.  Ms.

14   King, Mr. Schorr, is it all right if we handle today's

15   proceeding with everyone keeping their seats at counsel

16   table?  Does that work for you, Miss King?

17          MS. KING:  Yes, Your Honor.

18          THE COURT:  Thank you, Miss King.  Does that work

19   for you, Mr. Schorr?

20          MR. SCHORR:  Sure.

21          THE COURT:  Mr. Warren, if you could slide your

22   microphone in that way, we can be sure we hear you.  Mr.

23   Babik, would you please administer an oath to Mr. Warren?

24   You may keep your seat, sir.

25          (The Defendant was duly sworn.)

1          MR. BABIK:  Please state your name for the record.

2          THE DEFENDANT:  Atiba Warren.

3          THE COURT:  Good morning, Mr. Warren.

4          THE DEFENDANT:  Good morning, Your Honor.

5          THE COURT:  Mr. Warren, as we get started here

6    today, there are a few preliminary matters I would like to go

7    over with you, sir.  First, just to confirm for the record,

8    you are represented by a lawyer.  That lawyer is Mr. Damien

9    Schorr, and he is seated right next to you at that table,

10   sir; correct?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Okay.  And Mr. Warren, you understand

13   that we're here in Federal court today so that the Court

14   could set the sentence in your case?

15         THE DEFENDANT:  I understand.

16         THE COURT:  And Mr. Warren, have you had enough

17   time and opportunity to talk about today's hearing in your

18   case with your lawyer, Mr. Schorr?

19         THE DEFENDANT:  I have.

20         THE COURT:  And Mr. Warren, are you satisfied with

21   the job that Mr. Schorr has done for you as your lawyer?

22         THE DEFENDANT:  Yes.  He's done an excellent job,

23   sir.

24         THE COURT:  Thank you, Mr. Warren.  Mr. Warren, let

25   me ask you this, sir.  In the last 24 hours have you taken or

1  used any prescribed or nonprescribed medicine or drugs?

2          THE DEFENDANT:  No.  Not that's going to affect me,

3  no.

4          THE COURT:  Have you taken anything at all, sir?

5          THE DEFENDANT:  Anti-inflammatories.

6          THE COURT:  That's because the doctors prescribed

7  that for you?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And it works for you?

10          THE DEFENDANT:  Yes.  My hips, my hip problem.

11          THE COURT:  And let me ask you this, Mr. Warren.

12  In the time that you've been taking that anti-inflammatory,

13  have you ever noticed that it gets in the way of you

14  understanding what's going on around you?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  You're good to go today, sir?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And other than your hip situation that

19  you've talked about, have you recently been under the care of

20  any type of doctor or health care person for anything else?

21          THE DEFENDANT:  No, Your Honor.

22          THE COURT:  Okay.  Thank you, Mr. Warren.

23          THE DEFENDANT:  You're welcome, Your Honor.

24          THE COURT:  Mr. Schorr, based on all the

25  information available to you, do you have any doubt as to

1     Mr. Warren's competence to participate in today's hearing?

2               MR. SCHORR:  No, sir.

3               THE COURT:  And Miss King, based on all the

4     information available to you, do you have any doubts as to

5     Mr. Warren's competence to participate in today's hearing?

6               MS. KING:  No, Your Honor.

7               THE COURT:  Mr. Warren, based on your answers to my

8     questions, my observations here in open court, the

9     representations of your lawyer, Mr. Schorr, and Miss King's,

10    the lawyer for the United States, I find that you are

11    competent to participate in today's hearing.

12              Counsel, I'm confident based on the filings that

13    have been made in this case that all counsel are familiar

14    with each and every one of the relevant matters that are on

15    the docket in this case.  I would highlight a number of them,

16    however, for the record.

17              Back on October 30, 2015, a jury returned a

18    unanimous verdict after a trial in open court in which

19    Mr. Warren was represented by counsel, finding him guilty of

20    Count 1 of the indictment in this proceeding charging

21    possession of a firearm by a convicted felon.

22              Thereafter, the probation office prepared in the

23    normal course a presentence report and made it available to

24    the Court and counsel on January 29, 2016.  I would note that

25    present in the courtroom seated in the jury box is United

1    States Probation Officer Andrew Waszyn.

2         Thereafter, the probation office made available and

3    circulated in a similar fashion the addendum to the

4    presentence report on February 16, 2016.

5         Thereafter, the Defendant has filed a number of

6    position statements, memoranda and other materials relevant

7    to sentencing on February 5, May 11, July 22, July 26,

8    July 27, August 22, August 23, August 26 and August 29, 2016.

9         The United States filed similar materials on

10    February 4, February 12, May 2, July 22, August 14, August 23

11    and August 26 of 2016.

12         Thereafter, the Court filed tentative findings on

13    August 24, 2016, and thereafter, based on matters raised at

14    the initial sentencing hearing in this court and the

15    supplemental memoranda filed by counsel, vacated those

16    tentative findings and issued amended tentative findings on

17    September 1, 2016.

18         Miss King, have you reviewed each of the documents

19    to which I've referred?

20         MS. KING:  Yes, Your Honor.

21         THE COURT:  And Mr. Schorr, have you done likewise

22    and also reviewed them with your client, Mr. Warren?

23         MR. SCHORR:  Yes, sir.

24         THE COURT:  Mr. Warren, have you reviewed each of

25    the documents to which I've just referred and, in particular,

1    the presentence report, the addendum to the presentence

2    report and each of the Court's tentative findings?

3                    THE DEFENDANT:  I have, Your Honor, yes.

4                    THE COURT:  Thank you, Mr. Warren.

5                    THE DEFENDANT:  You're welcome.

6                    THE COURT:  I would confirm for the record that the

7    sentencing guidelines have by decisions of our United States

8    Supreme Court been declared to be advisory to the Court.

9    That means, among other things, that the sentencing

10   guidelines themselves are no longer mandatory, and a

11   sentencing Court may not presume or take for granted that an

12   advisory guideline range or a particular guideline sentence

13   is reasonable in a specific case.  Therefore, the guidelines

14   are not only not mandatory; they're not presumed to be

15   reasonable in a given case.

16           Miss King, are there any identifiable victims in

17   this case for whom notice of today's hearing was required to

18   be given; and, if so, has such notice been given?

19                    MS. KING:  There are no victims, Your Honor.

20                    THE COURT:  Thank you, Miss King.

21           I would confirm for the record that the Court's

22   reviewed the complete file in this case that includes the

23   presentence report, the addendum to the presentence report,

24   each and every position statement submitted by counsel for

25   the parties in the case, all of the letters regarding

1    sentencing that have been submitted to the Court, along with

2    the recommendation of the probation office.

3         I would confirm for the record that pursuant to

4    Federal Rule of Criminal Procedure, 32(e)(3), that

5    recommendation is not disclosed to counsel for the United

6    States, counsel for the Defendant or the Defendant.  But I

7    would also confirm that in determining the sentence in this

8    case, the Court will not consider and has not considered any

9    factual or legal matter that has not been disclosed to the

10   Defendant and to all counsel.

11        Miss King, is the United States seeking or moving

12   for a formal departure, as that term is used under the

13   sentencing guidelines?

14        MS. KING:  No, Your Honor.

15        THE COURT:  And Mr. Schorr, is the Defendant moving

16   for or seeking a formal departure, as that term is used under

17   the sentencing guidelines?

18        MR. SCHORR:  No, Your Honor.

19        THE COURT:  Thank you, Miss King, and thank you,

20   Mr. Schorr.

21        Miss King, based on the Court's review of the

22   record, it appears based on the findings contained in the

23   presentence report and set forth in the Court's tentative

24   findings, by statute there is a mandatory minimum sentence of

25   imprisonment applicable in this case of 180 months or 15

1   years pursuant to Title 18 of the United States Code, Section

2   924(e).  Is that your understanding?

3          MS. KING:  Yes, Your Honor.

4          THE COURT:  Mr. Schorr, do you have any different

5   understanding?

6          MR. SCHORR:  No, Your Honor.  But I do want to note

7   that in preparing for today I noted that a case before you,

8   Al-Akili I believe his name was, who was a career offender,

9   armed career criminal with a case similar to Mr. Warren's,

10  who got less than 15 years.  I'm not quite sure how that

11  happened, but somehow it did.

12          I looked at the docket.  A lot of the proceedings

13  are sealed.  I couldn't get to them, but I do want to note

14  that from what I could view, the Third Circuit didn't mention

15  anything about the sentence being under the statutory

16  mandatory minimum at all on appeal.

17          THE COURT:  Right.  Mr. Al-Akili, as I recall,

18  appealed that sentence, and it was affirmed on appeal.

19          MR. SCHORR:  Correct, but he got less than 180

20  months on the sentence, if I recall correctly.

21          THE COURT:  I think your recollection is correct.

22          MR. SCHORR:  So for whatever -- somehow you were

23  able to get him under 180 months.  I don't know how it

24  happened.  I just couldn't find that out.

25          But if you're inclined to go under 180 months for

1    Mr. Warren for the same reasons, for whatever reasons you

2    could find, I'm asking you to do so.

3            THE COURT:  Understood, Mr. Schorr, and we'll make

4    sure you and Miss King and Mr. Warren have an opportunity to

5    tell the Court anything, anything at all that you think the

6    Court should be aware of prior to imposing sentence.

7            Miss King, does the United States have any

8    objections to any of the matters set forth in the presentence

9    report, the addendum or the Court's amended tentative

10   findings in this case?

11           MS. KING:  No, Your Honor.

12           THE COURT:  Thank you, Miss King.  Mr. Schorr,

13   other than the matters that have been set forth and preserved

14   in the filings you made on Mr. Warren's behalf, does

15   Mr. Warren have any other objections to any of the matters

16   reported in the presentence report, the addendum or the

17   Court's amended tentative findings?

18           MR. SCHORR:  I do want to place one objection on

19   the record, Your Honor.  It really starts it looks to me on

20   page 8 of your amended tentative findings.

21           THE COURT:  Let me flip to that, sir, so I have it

22   in front of me.  Mr. Schorr, I'm good to go.

23           MR. SCHORR:  In here you use the Wadlow case,

24   spelled W-a-d-l-o-w, from the Maryland courts.  And I don't

25   believe Wadlow treats armed robbery and simple robbery as

11

1   separate offenses.  I don't recall them saying that in that

2   decision.  It's still robbery with the enhancement of a

3   dangerous or deadly weapon.

4          And the problem with that is that leaves you then

5   as you move on in your tentative findings to use the modified

6   categorical approach in analyzing Mr. Warren's conviction

7   there, and I object on that grounds also because it should

8   just be a -- it should just be categorical -- it's not a

9   divisible statute.  It wasn't at the time of the offense.

10         It's not the same statute -- and I called this to

11  your attention at the last hearing we had -- that's in effect

12  now.  Maryland has since amended that statute.

13         So I wanted to put that objection on the record for

14  purposes of appeal, that I disagree with how the Court's

15  reached its conclusion.  I don't think it's a divisible

16  statute.  I don't think armed robbery has ever been held to

17  be a separate offense by Maryland courts.

18         And while I respect what the Supreme Court has said

19  in the Mathis case, they did not address in there what they

20  also said in Johnson, that they are bound by State court

21  interpretations of what are the elements of the State crime.

22         And so Mathis doesn't give us any guidance in that

23  regard.  And I want to preserve those objections for purposes

24  of appeal.

25         THE COURT:  Mr. Schorr, as far as I'm concerned,

1    and I'm not -- I don't think it's this Court that has the

2    final say on that, but as far as I'm concerned, you've

3    preserved them with me.

4              MR. SCHORR:  I understand that.  My real concern is

5    I've seen in the past where the Government, when I file an

6    appeal brief, I've done it on fifty appeals, they say, well,

7    he didn't object enough.  So I want to make sure I'm

8    objecting all the way to the bitter end.

9              THE COURT:  And Mr. Schorr, you're not -- as far as

10   the Court's concerned, you're not duplicatively objecting.

11   And I think there's case law -- although I think the Molina

12   case from this past June identifies how the Supreme Court

13   views the obligation of the District Courts to correctly

14   calculate the advisory guidelines and the broad sweep of

15   review of that calculation.  But there's no problem with the

16   Court with you placing that objection on the record again

17   this morning.

18             Miss King, if you'd like to say anything, you're

19   welcome to.  You're not obligated to, but I'm happy to hear

20   from you regarding what Mr. Schorr's just said.

21             MS. KING:  I don't have anything, Your Honor.

22             THE COURT:  Mr. Schorr, I understand your

23   objection.  It is one that has been made by you on

24   Mr. Warren's behalf in a number of fashions, in writing and

25   orally up until now.

1          I do believe Justice Kagan's decision in Mathis is

2     the latest word on what the Supreme Court considers and what

3     it directs the District Courts consider to be an element,

4     sometimes parallel to the affirmative use of those words by

5     the Courts of the state; but I think Justice Kagan, writing

6     for a majority of the Supreme Court in Mathis, was very

7     clear, and I tried to note that in the one footnote in the

8     tentative findings.

9          She did not liken it to an element.  She didn't say

10    it was akin to an element.  She didn't say it was like an

11    element.  She said it's an element.

12         MR. SCHORR:  I understand that.  The other concern

13    would be that now the District Courts step into the State

14    court realm, and they're saying, no, we're going to define

15    what is an element of a Maryland crime, and that is --

16    Johnson says you can't do that.  So I just want to make sure

17    I have that preserved.

18         THE COURT:  You have, as far as I'm concerned,

19    preserved it, Mr. Schorr.  For the reasons set forth in the

20    Court's amended tentative findings, I'll overrule the

21    objection.  But I understand it, and I attempted to address

22    it in the Court's amended tentative findings.  Anything else

23    along those lines, Mr. Schorr?

24         MR. SCHORR:  No, Your Honor.

25         THE COURT:  The Court will adopt the findings of

14

1    fact and other conclusions set forth in the presentence

2    report, the addendum, and in its amended tentative findings

3    that relate at all to sentencing in this case subject to any

4    necessity to amend or modify them based on matters that are

5    raised during the proceeding today.

6         At this point, Mr. Schorr, we'll hear from you on

7    behalf of Mr. Warren regarding any matters relative to

8    sentencing.  When you tell me you're done, I'll then address

9    Mr. Warren personally and directly.

10        When I do that, Mr. Warren, that will be your

11   opportunity to tell the Court anything, literally anything at

12   all you would like me to know, including about your case,

13   your situation, you.  But really, without limit, anything you

14   want me to be aware of or to know, that will be an

15   opportunity for you to tell me that.

16        When you're done, we'll turn the floor over to

17   Miss King, and we'll hear from Miss King on behalf of the

18   United States.  And when that's done, we'll make sure that

19   both Miss King and Mr. Schorr have the final opportunity to

20   advise the Court of anything that they believe the Court

21   should know.

22        So with that, Mr. Schorr, the floor is yours.

23        MR. SCHORR:  Thank you, Your Honor.  Well, as it

24   stands here now, you have a choice of either sentencing

25   Mr. Warren to the mandatory minimum of 15 years or 180 months

1    or going into the guidelines sentence, which I believe starts

2    at 260 months --

3              THE COURT:  Based on what I found in the amended

4    tentative findings, I believe it's 210 months for purposes of

5    this case.

6              MR. SCHORR:  Well, under the parsimony provision of

7    the sentencing statute, 180 months is sufficient and no

8    greater than necessary.  That's the bottom line that Congress

9    has said as far as this kind of crime is concerned.

10             And as far as Mr. Warren is concerned, when you

11   look at him, you've got a now 36-year-old man with bad health

12   problems with his hips, he's got diabetes, possibly some

13   mental health issues.  And so he's not your run-of-the-mill

14   young gang banger who may come out and be young enough to get

15   in trouble again.

16             He's not going to be the same man when he comes out

17   of prison after 15 years than he is today going in.  He's

18   going to be substantially older, more infirmed.  We don't

19   know what kind of issues he's going to face with his health

20   moving forward.

21             He is diabetic.  That complicates every other

22   health issue that somebody encounters.  He needs more work

23   done on his hips.  He's already had one replaced, and I

24   believe the other one is going bad also.

25             So when you consider all those factors, I think

1    that 180 months is appropriate.  And not only that, the

2    nature of the offense here, he was not out on the street

3    brandishing a gun or engaging in illegal drug transactions.

4         To my knowledge, no contraband was found in his

5    house when the police searched it.  They came into his house

6    pursuant to their investigating an incident that happened

7    outside, and my understanding is they saw Mr. Warren with a

8    gun at that time.

9         I can understand they go in for their own safety,

10   but it's not as if he was acting in a dangerous manner in

11   terms of endangering anybody else.

12        So this is not a man who was a threat to anybody at

13   the time of his arrest.  And so to that end, 180 months,

14   which you must sentence him to at least, should -- there's no

15   reason to go above it.  He has support from family and

16   friends.  You saw several letters from his family and

17   friends.

18        And he has had a hard life growing up.  If you

19   recall, he didn't have the best home life growing up.  He's

20   had -- been in and out of -- on the streets as a young man,

21   but he's been trying to turn his life around.

22        So when you sit here and look at this man, I'm

23   asking you to sentence him to no more than 180 months because

24   I think that's sufficient but no greater than necessary,

25   given the nature of this case.  And I'm done.

1          THE COURT:  Thank you, Mr. Schorr.

2          Mr. Warren, I'll now go beyond you personally and

3     directly.  This is your opportunity to tell me anything,

4     literally anything at all that you would like me to know or

5     be aware of, sir.

6          THE DEFENDANT:  Okay.  Can I confer with my counsel

7     real quick?

8          THE COURT:  Absolutely.

9          (Brief pause.)

10         THE COURT:  Mr. Warren?

11         THE DEFENDANT:  Your Honor, I want to first of all

12    say to the Court it's been a rough couple years, you know.  I

13    feel like I'm here for, you know, nothing, not for like --

14    this is probably overzealous police work.

15         I feel like they illegally searched the house.

16    That's why I took it to trial.

17         All my cases in the State, I did plead on the armed

18    robbery, and that was on the advice of counsel with the plea

19    condition that the armed robbery would be off my record.  I

20    wasn't aware these robberies were in the record until I

21    caught the Federal piece.

22         All that's in the record for the Court to see that

23    this was a condition of my plea with the armed robbery.  I

24    would have never pled out to the armed robberies if it had

25    not explicitly stated that they would be removed from my

1    record once the probation was completed.

2           I completed the probation.  Somehow there was a

3    clerical error on behalf of Baltimore City, and I'm getting

4    punished for that right now.

5           I've been punished for my crimes that I paid my

6    debt to society for.  I left Baltimore, which is a

7    substantially more violent and faster moving city than

8    Pittsburgh.  I didn't leave Baltimore City to come to

9    Pittsburgh and pick up guns when I didn't pick up guns in

10   Baltimore.

11          I'm not a violent person.  I have three kids that

12   depend on me, that need me, that I've been missing their

13   life, and I'm supportive of financially and emotionally when

14   I was home.

15          I told nobody to come to court because I don't -- I

16   have had family members pass away, and I don't want to bring

17   no more stress to the people through this time because they

18   know I didn't do anything wrong, and I feel like -- you know,

19   it's not justice being served.

20          But, you know, I feel like everything happens for a

21   reason.  So I try to use this time and find a silver lining

22   in every cloud.  And that's what I'm doing right now, trying

23   to better myself with programs, you know, reading books,

24   self-help books, business books.  I was hurting when I had to

25   retire from plumbing because that's something I love.

1            You know, I made mistakes in my younger age.  I'm

2     36 now, and 36 in Baltimore years makes me feel like I'm mid-

3     age because I have a lot of friends that died right next to

4     me with their brains on my shoulder.  I watched my mother OD

5     when I was seven.

6            I'm not asking for pity.  I'm asking for mercy from

7     Your Honor.  Fifteen years is -- I got two bad hips.  I might

8     not be alive in 15 years.  I might not be alive in the next

9     three or four years.  Who knows?  That I can't say.

10            But I feel like this is for a gun, and you got

11     people that go to stores and buy guns and shoot people.  I

12     didn't have -- I didn't touch a gun.  It wasn't -- there was

13     no fingerprint.  One word off of one officer out of twelve

14     officers that was at the scene.

15            I felt it was shabby police work at best.  I feel

16     there was a crime committed five blocks away from where I was

17     standing.  I was woke from my sleep, just had total hip

18     replacement.

19            I had surgery in August of 2012.  I got out of the

20     hospital in September to the nursing home.  I was walking

21     with a cane, crutches, and/or walker.  This is impossible for

22     me to walk around with a gun.  And I have enough brains --

23     last time I caught it, I was at a 143 IQ -- to have a gun

24     while you got twelve police officers outside, and I confessed

25     in the police car with audio and video?  Where's the

1    confession at?

2          I mean I feel like I just got railroaded from the

3    jump, and you've been a fair and impartial -- you know, a

4    good Judge in my view from my first experience with Federal

5    court.

6          And I ask Your Honor, if there's any way that you

7    could sentence me under, and I'm the one that brought the

8    case to Mr. Schorr, because that's all I do.  I work on my

9    case.  I look over the computer.  I see your rulings, and I

10   sense that you are a fair Judge.

11         I'm asking you if there's anything possible that

12   you could do to get me back to my family.  I missed most of

13   my daughter's life.  My son was just born.  He's three years

14   old.  I missed his whole life.  I never had a chance to meet

15   him.  I ask all this to -- I ask the mercy of the Court, Your

16   Honor.

17         I mean I'm at a loss of words because this is what

18   I'm stuck with.  I'm curious why would the police be here

19   watching me get sentenced?  This is like vindictive

20   prosecution.

21         I feel like I'm getting labeled because of the city

22   I was born in that I left.  I made a conscious decision to

23   leave to come to Pittsburgh where my mother was originally

24   born and raised, to start fresh because I don't want to have

25   the same issues that I had in Baltimore, you know, the same

1    death threats, the same situations, guilty by association.

2              I'm being, you know, judged by my past.  I can't

3    even start fresh.  And I feel like I was doing good.  I

4    was -- you know, I had a little apartment.  I was collecting

5    my disability.  I was just living the normal life.

6              For once in my life out of all the time I've been

7    living, I actually could look over my shoulder and don't have

8    to worry about somebody putting a gun to my head and

9    threatening to kill me.

10             I have to say I'm at a loss of words because this

11   don't seem real.  Fifteen years?  I mean 15 years is the

12   reason -- it would be a blessing for Your Honor because I

13   knew the guidelines, the 210 to 262.  But enough is enough.

14   I mean I lost everything.  I don't have nothing to go home

15   to.

16             So when I go home, if my family is still alive, my

17   children are there, I don't have anything to go home to

18   because the little bit that I did accumulate I spent going

19   through this process here.  I mean I don't call that like

20   rehabilitation.

21             I've been rehabilitated to myself through books and

22   programs and everything that's offered to me at Allegheny

23   County, CCA.

24             I haven't had any kind of pain management or

25   anything.  I've been just dealing with the pain.  At times I

1    can't get up.  I got sickle cell.  Sometimes I can't move my

2    body, but they don't give me any kind of medical treatment.

3           So I ask Your Honor, that if worse come to worse,

4    that no more than 15 years.  And hopefully sometime within

5    that time Congress will change, some kind of laws be passed

6    that will be beneficial to my cause and my case.

7           And I ask that you send me to a medical facility

8    where I can get medical treatment for my needs because I

9    haven't –– I didn't get it in Allegheny County.  I haven't

10   got it at Northeast Ohio.

11          I just ask that you send me to a facility that can

12   cater to my needs, because the doctors put off the surgery

13   because they thought I might have a chance of going home.  So

14   they don't want to go and work on one hip where they need to

15   go back and work on the other one.  So they're not trying to

16   touch the right hip until they get the left hip squared away,

17   and it's clear in the medical records.

18          I know the PSI guy, he twisted and contorted the

19   words, but it's clear as day.  Like Mercy Hospital, the

20   hospital I been seeing at Youngstown, they don't want to do

21   nothing.  I'm still having problems with the left hip, and I

22   don't have a good leg to stand on.

23          And I know it might be a common occurrence to the

24   BOP, but not that I know of because, if that was the case,

25   they would have done the surgery.  I need the surgery done on

23

1    my right hip since I been locked up.  They wanted to do it

2    right away; but the doctor said, no, you got to give it a

3    chance to heal.

4           The left hip never healed properly due to my

5    arrest, not the proper rehab.  And I just ask that you

6    sentence me -- if you have to sentence me -- which you have

7    to obviously because we here today -- to the mandatory

8    minimum, and send me to a medical facility where I can get

9    the treatment that I deserve and I need, that the Eighth

10   Amendment allows me to, and think about my family, my kids

11   when you making this decision.

12          Think of all the news and all the things that's

13   going on in the world.  I'm not a bad person.  I don't have a

14   violent past.  I feel like my criminal history overrepresents

15   me.  But where I come up, where I came up, I feel like I did

16   good, you know, because I'm still alive.  And I made it

17   through the trap that was set, and I made a few mistakes, and

18   I owned up to those.

19          And I never took a case to jury trial ever in my

20   life.  And I was terrified.  But I never touched this gun.  I

21   never had it.  It was never in my possession.  And I contend

22   that.  I never had a gun in Baltimore City.  I never had a

23   gun here.

24          And that's what I ask Your Honor to consider.  I

25   don't know what else -- I think I pretty much addressed

24

 1   everything.  And I just ask you for mercy.  I'm a God-fearing

 2   person.

 3          I mean I'm still mad for this whole situation.

 4   It's like it's not real.  Because I felt like I could have

 5   stayed in Baltimore City and got the same result.  I feel

 6   like I'm the same right now because I left Baltimore to come

 7   to Pittsburgh, and I still got the same results.

 8          And I tried to change those things, and here I am

 9   in front of Your Honor with a gun case.  And I don't have

10   that kind of past.

11          Thank you, Your Honor.

12          THE COURT:  Thank you, Mr. Warren.  Mr. Schorr,

13   anything else you'd like to say at this time?

14          MR. SCHORR:  Well, I'd like to ask Your Honor to

15   recommend, number one, that Mr. Warren be placed as close to

16   Baltimore as possible and to a Federal Medical Center.  I

17   believe the closest one might be the one at Butner, North

18   Carolina.

19          And I'd asked you at our previous hearing, and I

20   remind you, he was in State custody for some time -- I'm not

21   quite sure how long -- before the Federal charges came up.

22   Several months, and you held the Bureau of Prisons -- that

23   case was dropped.  So that time, I'm asking you to tell the

24   Bureau of Prisons or recommend that they credit that toward

25   his Federal sentence.

1          Beyond that, I have nothing else to say, Your

2    Honor.

3          THE COURT:  Thank you, Mr. Schorr.  At this time

4    we'll turn the floor over to Miss King to hear from her on

5    behalf of the United States.

6          MS. KING:  Thank you, Your Honor.  The Court here

7    had an opportunity that it does not often have in Federal

8    cases where there was a trial, and the Court had the

9    opportunity to hear from the Government's witnesses, the

10   police officers that were there on the night Mr. Warren was

11   arrested, and had the opportunity to assess their testimony

12   and their believability.

13          As the Court will recall, the officers were at

14   Mr. Warren's residence that night for a completely unrelated

15   incident.  There was a person stabbed who basically was dying

16   on the front porch, and they were there assisting that

17   person.

18          And Officer Sywyj, who is here today, was

19   interviewing a witness to that stabbing and looked up and saw

20   Mr. Warren walking toward the front door with an enormous gun

21   in his hand, and that's what he saw.  And that's what

22   happened.

23          And so I think it's disingenuous for the Defendant

24   to argue at a sentencing motion and again today that the

25   conduct that was involved that night was some type of

1    innocent conduct where no one was at risk of being harmed.

2              Mr. Warren made statements to Officer Hoyson that

3    he heard his cousin had been stabbed, and he went and got his

4    gun, and, notably, a gun that he bought illegally on the

5    street that had the serial numbers filed off when he bought

6    it.

7              You have to ask yourself what was he going to do

8    with that gun?  What were the plans and his intentions with a

9    gun that night?  I don't think it was probably to stay inside

10   of his house; and thankfully, the officers were there to stop

11   him from doing whatever he planned to do with that gun.

12             I think that the Court needs to take into

13   consideration those actions that occurred that night, the

14   situation that was presented to the officers and Mr. Warren's

15   decisions that night to go and grab his gun when he heard

16   that a crime of violence had been committed against a person

17   that he described as his cousin.

18             And so while there is a mandatory minimum in this

19   case, it's the Government's position that a guideline

20   sentence is more appropriate in this case --

21             THE COURT:  Let me ask you about that, Miss King.

22   One of the -- in the Court's experience, that I recognize is

23   even at this point relatively limited, one of the things I

24   think I've observed is that whether we're talking about the

25   career offender provisions of the advisory guidelines or the

1    armed career criminal provisions of the Federal statute, that

2    the intention in the case of the statute, Congress's

3    intention or, in the case of the guidelines, which are

4    applicable here, the Sentencing Commission's, is that in

5    certain cases where there is a qualifying criminal history,

6    that what would otherwise be the recommended sentence get

7    amplified to recognize that acute criminal history, where

8    it's significant and it's persistent and it's of a limited

9    number of very serious crimes.

10          So both the sentencing guidelines and the statutes

11   say to the Judges sentences should be amplified when there is

12   this certain type of criminal record, which the Court has

13   found, with lots of advice from counsel on both sides, is

14   applicable in Mr. Warren's case.

15          So then the question is how much of an

16   amplification?  Because if this were not an armed career

17   criminal case, as I understand it, the maximum sentence would

18   be 120 months.

19          So the amplification occurs.  We already have a 50

20   percent amplification because it is an armed career criminal

21   case.  And if it were not an armed career criminal case and

22   we were looking just at the guidelines, I think -- and it's

23   obviously not a binding part of the case -- the advisory

24   guideline sentence would have been 130 to 162 months of

25   imprisonment, which then gets adjusted down to 120 months

1    because of what would then be the statutory maximum.

2         What's the perspective of the United States of how

3    much the sentence should be amplified in this case?  Because

4    there is no question, what would otherwise be the sentence

5    will be amplified because of Mr. Warren's criminal record and

6    the nature of the offense of conviction here.  What are your

7    thoughts in those regards?

8         MS. KING:  It's my position that a sentence within

9    the guidelines -- at the low end of the guidelines, 210

10   months would be appropriate in this case, but I think you do

11   have to take into consideration --

12        THE COURT:  So that's a 75 percent increase.

13        MS. KING:  Okay.  I think you have to take into

14   consideration again all of the factors, including all of the

15   sentencing factors.  This was a person who had an obliterated

16   serial number, a gun with an obliterated serial number, a

17   person who is prohibited from having a gun from multiple,

18   multiple offenses, including a prior event involving a gun

19   where three people were held up by gunpoint by this

20   Defendants and robbed.

21        THE COURT:  So the second of those is an element of

22   the offense of conviction.  I understand the point on the

23   obliterated serial number.

24        MS. KING:  I think in totality you have to look at

25   all of the factors regardless of whether it's an element or

1    not, Your Honor.  You're looking at this individual person

2    and the conduct that's involved here and throughout his

3    criminal history.

4         And so I do think that if the Sentencing Commission

5    had intended for every armed career criminal to receive a

6    15-year sentence and that's it, then that's what they would

7    have done.  But they don't.

8         They make other considerations for amplifying the

9    sentences based upon -- I mean the sentence here is

10   particularly driven by his criminal history.  Because the

11   minimum criminal history category for an armed career

12   criminal could be a four, and he's not a four.  He's a five,

13   and it's my position that he should be a six, in fact, based

14   upon arguments that we have previously had here.

15        And so if he was a six, his guideline range would

16   be even higher.  So I think that it is the obligation of the

17   Court to look at all the sentencing factors, and obviously

18   the Court can sentence the Defendant to whatever sentence the

19   Court finds to be appropriate.

20        But it's the Government's position that, taking

21   into consideration the guidelines range, which is determined

22   by the Sentencing Commission, for this particular Defendant

23   in conjunction with all of his factors, that there's no

24   reason to vary from the guideline range here.  That's why we

25   think a guideline sentence would be appropriate.

1          THE COURT:  And help me understand, Miss King, from

2    the position of the United States, and Mr. Schorr, I'll be

3    asking you a similar question, but it's a bit of a mirror

4    image, why in this case would a sentence of 180 months be

5    insufficient to fulfill the purposes of sentencing?

6          MS. KING:  I think in this case looking at the

7    factors of the conduct of this particular Defendant in

8    general, it is significant conduct.  I think it's required to

9    be punished by a significant sentence.  And I don't believe

10   that there's a reason to vary from the guideline range in

11   this case.

12         THE COURT:  And is it the position of the United

13   States that 180 months would not be a significant sentence?

14   Because that's --

15         MS. KING:  No.  That is clearly a significant

16   sentence, and I would never say that it is not.  It is

17   clearly a significant sentence.  But I do believe that the

18   appropriate sentence is within the guideline range in this

19   case.

20         THE COURT:  Okay.  I appreciate that, Miss King.

21         Mr. Schorr, to follow-up on the colloquy that I've

22   had with Miss King, the calculated advisory guideline range,

23   and I recognize, and I do my best to follow the direction of

24   the United States Supreme Court, that for a sentencing Court,

25   a District Court as opposed to a Court of Appeals, there is

1   no presumption of reasonableness of an advisory guideline

2   sentence.

3          So I want to be very clear in asking you this

4   question.  I am not starting from a presumption of

5   reasonableness.

6          But as recently as the Molina decision in June of

7   this year, the Supreme Court indicated -- I don't know that

8   they used the phrase starting point, but they indicated that

9   the beginning -- one of the reasons that the accurate

10  calculation numerically of the guideline range is so

11  important is that it is an initial starting point for factors

12  that the Court considers, and it is one of the enumerated

13  factors under 3553(a).

14         The United States has argued both in its papers --

15  it's not something Miss King's just arguing today, but she's

16  added to it in the argument today -- that a sentence that is

17  not within the advisory guidelines would not be sufficient to

18  fulfill the purposes of sentencing.

19         Why do you believe that a sentence above 180 months

20  on behalf of Mr. Warren would be a sentence that's greater

21  than necessary to fulfill the purposes of sentencing for any

22  reason, but, in particular, the matters Miss King's

23  highlighted here in Court today?

24         MR. SCHORR:  Well, one of the factors Mr. King --

25  Miss King highlighted was that Mr. Warren used a gun in his

1  previous conviction for armed robbery.  He did not.  He used

2  a BB gun.  And that was in the papers the Government

3  submitted to the Court.  Many times -- when we looked at his

4  2002 conviction, he had multiple counts in that indictment,

5  one of which said he had a BB gun.

6          So the Government is mischaracterizing to some

7  extent how severe his actions were at that point.  Yes, he

8  had a robbery, and they called it robbery with a dangerous or

9  deadly weapon; but it was a BB gun.

10          So I have not heard of anybody being shot to death

11  with a BB gun.  It might happen in some stray, freak

12  situation, but it's not what I would consider to be deadly.

13          THE COURT:  In a literal sense.

14          MR. SCHORR:  In a literal sense.  You get hurt, get

15  stung, you could get shot in the eye.  We all know the movie

16  Christmas Story, "You'll shoot your eye out," or whatever the

17  line is, but when you look at Mr. King --

18          THE COURT:  Mr. Warren.

19          MR. SCHORR:  I don't know why I keep saying that --

20          THE COURT:  Because I keep referring to Miss King.

21          MR. SCHORR:  Yes.  When you look at Mr. Warren, so

22  his other two offenses were for drugs.  Now, he would be

23  facing the same guidelines sentence today if he had in the

24  past taken an AK-47 and shoved it into somebody's face and

25  said give me your clothes.  I think that was the proceeds of

1    the crime for armed robbery.  He took somebody's jacket or

2    jackets or something -- wallets possibly, where he would have

3    had a weapon that was meant to kill people.

4          Or if he had pulled a knife to stab them, you would

5    have the same criminal history here.  You would have the same

6    guidelines calculation.

7          And then you would look at him and say, Mr. Warren,

8    you're redeemable.  But this guy used a BB gun.  So I think

9    you have to factor that into your consideration.

10         Now, the guidelines are advisory only for you.  So

11   you can look at the factors of the person's past and

12   determine, well, is this guy really that bad a guy?

13         I mean for the Government to argue that he should

14   get 210 months for a crime -- and he's being punished for his

15   past offenses because he hasn't learned obviously, but

16   because he keeps getting in trouble; but he would be facing

17   the same sentence if he was a serious -- he had a serious

18   deadly weapon, I mean a real deadly weapon in his possession

19   at the time.

20         THE COURT:  Would he be facing the same calculation

21   of the advisory guidelines?  Whether the United States would

22   make a different argument if he had an AK-47 or a KA-BAR

23   knife or those things is a different thing, but you're

24   correct.  The mathematical calculation would be the same.

25   But it's quite possible the United States would be arguing

1   for a sentence somewhere far different within the advisory

2   guidelines.

3            MR. SCHORR:  It's possible.  They could argue for

4   262 months.  But they're telling you they want you to go in

5   that range, of that guideline range.

6            And what I'm saying here is you've got a guy —— he

7   won't get out of prison until he's 46 years old with bad

8   hips —— I mean with a 180-month sentence, he's got about

9   three years in.

10            THE DEFENDANT:  Three and a half.

11            MR. SCHORR:  Three and a half years in now.  He's

12   going to be 46 years old with bad hips, diabetes, mental

13   health problems, sickle cell.  So all these factors together

14   I think point more toward a 180-month sentence rather than a

15   210 to 262-month sentence.  That's all part of the 3553(a)

16   factors that you have to consider.

17            So to that end, the Government I don't think

18   carries the burden of saying that he should get more than 180

19   months.  I mean it's supposed to be sufficient but no greater

20   than necessary.

21            You're basically by putting —— today Mr. Warren is

22   going to lose the rest of his youth when he goes to prison

23   today because he's going to lose 15 more years of his life.

24   The time he's already been in prison, as I said, he'll be in

25   his mid to late forties when he gets out; and as he pointed

1   out, he may not be alive.  We don't know.

2           That's a horrifically long sentence, 180 months,

3   and that is sufficient but no greater than necessary to

4   punish a man for the crime here.

5           Now, going to what Miss King told you, obviously I

6   didn't do the trial.  Mr. Sindler did.  I haven't reviewed

7   the trial transcripts because they're not pertinent to what I

8   had to do.

9           I don't know if Mr. Warren knew at the time of his

10  arrest whether the police were there on the front porch.  Who

11  knows?  But he knew something violent had happened to a

12  family member.  Maybe he was going to defend them.

13          I mean the Government kind of implies that maybe he

14  was going to shoot a police officer.  That's not necessarily

15  the case.  Maybe he thought my cousin's badly hurt.  I got to

16  go see what I can do.  We don't know that.  And it invites

17  speculation to punish him based on what we don't know.  I

18  mean that's wrong on its face.

19          So 180 months is sufficient, Your Honor.  That's

20  all you need to do to this man.

21          THE COURT:  Thank you, Mr. Schorr.  Miss King?

22  I'll give you the final word.

23          MS. KING:  Thank you, Your Honor.

24          THE COURT:  If you have anything else to say.

25          MS. KING:  I do.  I want to make it clear that the

1    Government is never suggesting that the Defendant was on his

2    way to shoot a police officer.

3              THE COURT:  And I did not draw that inference.

4              MS. KING:  Thank you.  I would also point out that

5    the reason that the Defendant's guideline range is at 210 to

6    262 months is because he does not get the benefit of three

7    points off for acceptance of responsibility.

8              He's apparently continuing to assert his innocence,

9    which is his right, but those three -- if he had accepted

10   responsibility and had pled guilty and had not gone to trial,

11   his guideline range would be 180 months essentially.

12             And so -- and I think that's something else that

13   the Court should take into consideration, is Mr. Warren has

14   now testified twice under oath on the stand relative to prior

15   convictions saying things that are extremely beneficial to

16   himself.

17             Today he's continued to disavow his responsibility

18   in this case, which we did hear testimony at trial from two

19   officers really separately, one who observed him with a gun

20   and one who interviewed him about it, and both of their

21   stories show that he had a gun that day and was holding a gun

22   that day, which he continues to deny --

23             THE COURT:  I think the jury found that beyond a

24   reasonable doubt.

25             MS. KING:  Yes, Your Honor.  And so it seems though

1    as though —— you know, he's saying he never would have

2    accepted his plea deal for his armed robbery case if this had

3    not happened, and I have to say from personal conversations

4    I've had with people in the State's office in Baltimore, that

5    is not essentially a true statement.

6            Those types of things happened in many criminal

7    cases in Baltimore where, if a person successfully finishes

8    out their probation, then it is possible that they can

9    receive some type of verdict without judgment or their

10   probation —— or their verdict can be vacated after the fact.

11           But in fact, this Defendant violated his probation

12   and continued to commit crimes while he was on probation.  So

13   there's no way they told me that that would have ever

14   happened, that his case would have ever been vacated because

15   he continued to violate.

16           So instead of accepting his responsibility for his

17   actions, his past actions and his present actions, he

18   continues to make excuses for them, and I find that to be

19   very concerning.  And I think that the Court should consider

20   that in determining what an appropriate sentence is; and

21   that's another reason why we do think that a guideline

22   sentence is appropriate in this case.

23           THE COURT:  Thank you, Miss King.

24           I would note that it's 10:25.  I would like to take

25   a brief recess.  We'll resume approximately 10:35, 10:40,

1  somewhere in that range.

2          So, Deputies, however you want to handle that,

3  that's all up to you.  Is Mr. Warren going to stay in the

4  courtroom, or are you going to assist him somewhere else?

5  It's up to you.

6          THE MARSHAL:  Your Honor, we'll probably take him

7  back to use the restroom.

8          THE COURT:  So Mr. Babik, why don't you recess the

9  court at this point, and then the Marshals can assist

10  Mr. Warren.

11          (A recess was taken at 10:26 a.m.)

12          (10:47 a.m.; in open court, Defendant present:)

13          THE COURT:  Miss Rowe, we'll note we're back on the

14  record.  The Defendant, Mr. Warren, is present represented by

15  his lawyer, Mr. Schorr.  Miss King is present on behalf of

16  the United States.  The Probation Officer Waszyn is present

17  also.

18          Mr. Schorr, are there any other matters to come to

19  the Court's attention prior to sentencing?

20          MR. SCHORR:  Well, Your Honor, Mr. Warren told me

21  he would like to speak to clarify a couple points on the

22  record.  I told him I would ask if we could do so, but I told

23  him to be brief --

24          THE COURT:  He absolutely can do so.  And

25  Mr. Warren, and then, Mr. Schorr, when Mr. Warren's done,

1    we'll make sure that both Miss King and you have the

2    opportunity to tell the Court anything else you'd like to

3    tell the Court, if there is anything else.

4              Mr. Warren, sir, I'm happy to hear from you again.

5              THE DEFENDANT:  I don't mean to be bothersome --

6              THE COURT:  You're not bothersome, Mr. Warren.

7              THE DEFENDANT:  Those three points that Miss King

8    -- well, the two points Miss King made and the one point my

9    lawyer made.  I was in the process of going to trial with the

10   armed robberies.  The Judge stopped me in the middle of the

11   trial --

12             THE COURT:  Down in Baltimore City?

13             THE DEFENDANT:  Yes.  In Baltimore City for the

14   armed robberies that led to this situation right now.  The

15   Judge made an offer of ten years, seven years suspended,

16   three years jail time, four years probation.  He wanted to

17   let me go home that day, but the prosecutor said they wanted

18   jail time.

19             The plea arrangement that was worked out was once I

20   complete my probation, which I successfully completed without

21   committing any more crimes like Miss King stipulated to --

22             THE COURT:  What I heard Miss King say is that you

23   violated your probation.

24             THE DEFENDANT:  I never violated.  That's why --

25   because if it was a violation, you would see it on my

1    criminal history, just like all the other violations of the

2    probation I did -- there's nowhere in the copy that she

3    provided, Your Honor.  That's the first point.

4             The armed robberies were never supposed to be on my

5    record.  That's the second point.  And the third point is

6    that -- well, there's two more points.

7             Mr. Duwane Hayes is no relative to me at all.  He's

8    the son of the lady I was renting from, the stabbing

9    victim --

10            THE COURT:  The gentleman on the front porch?

11            THE DEFENDANT:  On the front porch.  He's not

12   related to me at all.  I never said that at all, and I

13   advised my lawyer -- because he's not my trial lawyer -- I

14   never possessed a gun.  I wasn't going to seek revenge on

15   anything of that nature.

16            And I wanted to clear that up because, as I said,

17   he wasn't my trial lawyer, and I wanted to put that on the

18   record.  I never touched the gun.  I stand by that, good or

19   bad.  Thank you.

20            THE COURT:  Okay, Mr. Warren.  Thank you, sir.  Mr.

21   Schorr, is there anything you'd like to say as a consequence

22   of what Mr. Warren has now told the Court or additionally

23   told the Court or any other reasons?

24            MR. SCHORR:  No, Your Honor.  I think I'm done for

25   the day.

1          THE COURT:  Thank you, Mr. Schorr.  Miss King, same

2    opportunity, if there's anything else you'd like to add to

3    the record?

4          MS. KING:  No, thank you, Your Honor.

5          THE COURT:  Thank you, Miss King.  Thank you, Mr.

6    Schorr.

7          The Court has set forth the calculation of the

8    advisory guidelines as the Court has calculated them based on

9    the rulings that it's made regarding the various matters set

10   forth in the presentence report, the positions of the United

11   States and the defense in those regards.

12         The base offense level is 24 under Section

13   2K2.1(a)(2).  There's an upward adjustment of four levels

14   under 2K2.1(b)(4)(B).  Pursuant to Section 4B1.4(b)(3)(B),

15   the total offense level goes to 33.

16         The Court has calculated the criminal history

17   category at 5, which places the matter in Zone 2 of the

18   sentencing table.  The advisory guidelines recommend a term

19   of imprisonment of 210 to 262 months.  Probation is not

20   authorized by statute.

21         There's a mandatory minimum term of imprisonment of

22   180 months.  The Court must impose a term of supervised

23   release not exceeding five years.  The advisory guidelines

24   recommend a fine ranging from $17,500 to $175,000.

25         Restitution is not applicable in the case.

1   Forfeiture is of one Taurus Judge .45LC/.410 pistol with a

2   serial number having the last four digits of 4363.  There is

3   a special assessment of $100 applicable to any sentence.

4        Mr. Warren, under the Sentencing Reform Act, there

5   are a broad array of materials that I'm allowed to consider.

6   There's certain factors I'm obligated to consider.  These

7   include the nature and circumstances of the offense as set

8   forth in the record in this case, the presentence report and

9   the addendum.

10        I'm also to consider your history and

11   characteristics, as set forth at length in the presentence

12   report and the addendum.  This includes, among other things,

13   your family and personal data, physical condition, mental and

14   emotional health, educational and vocational skills and your

15   employment record.

16        I can confirm for the record that I've considered

17   all of the information I'm legally permitted to consider.

18   This includes all of the matters I've set forth earlier in

19   the hearing today, the arguments made by your lawyer and by

20   the lawyer for the United States and your statements to the

21   Court.

22        It's my obligation as the Judge, Mr. Warren, to set

23   a sentence that is sufficient but not greater than necessary

24   to comply with the purposes of sentencing.  I'll now briefly

25   review them and state how each of them applies in this case.

1          The first is to reflect the seriousness of the

2     offense.  The fact that Congress by law has set a mandatory

3     minimum sentence in this case of 180 months is in the Court's

4     estimation a reflection of the degree to which society

5     considers the offense to be serious.

6          People that have been previously convicted of

7     felonies and have had multiple prior felony convictions

8     simply are not to possess firearms in our society.  That is

9     an important and vital law in keeping communities,

10    neighborhoods, households safe.  So it is a very, very

11    serious offense, and it is a serious offense that is, as I've

12    used the phrase, amplified by the fact of your prior criminal

13    record.

14          You possessed a firearm.  You knew it was one that

15    you could not possess at all.  By the fact of the

16    obliteration of the serial numbers, it should have in essence

17    doubled down the degree to which you would have known and

18    should have known you cannot possess that firearm.

19          I recognize in your statements to the Court,

20    Mr. Warren, your position that you did not possess that

21    firearm.  I understand your statements here in court today.

22          A jury found beyond a reasonable doubt that you

23    possessed the firearm.  And in the Court's estimation there

24    was more than sufficient evidence for them to reach that

25    conclusion.  That's the conclusion that's binding on the

1    Court.  That's the conclusion that's binding here at

2    sentencing.

3            So by any measure, this is a very serious offense.

4            The second factor the Court's to consider is the

5    necessity of the sentence to promote respect for the law.  A

6    review of the presentence report notes that, in addition to

7    the qualifying convictions, that is, the convictions that led

8    to the categorization of this crime, it's the possession of a

9    firearm by an armed career criminal, you had other serious

10   convictions, including one for assault and a different and

11   separate and distinct drug conviction.

12           To your credit, it appears that you left, and the

13   presentence report does reflect that you left Baltimore in

14   order to get a fresh start, to be in a different place, to

15   be, as you've used the phrase, accurately in the Court's

16   estimation, around different people, places and things.

17           But by the same token, it is not simply the

18   qualifying convictions that are present in your criminal

19   record.  You had a significant criminal record.

20           The fact of you possessing a firearm, for however

21   long you possessed it, was a separate and distinct criminal

22   offense.  But by the same token, you did come to Pittsburgh.

23   You were not charged with, arrested for, other criminal

24   activity.

25           By phrasing it that way, I'm not minimizing your

1    possession of a firearm, but you were not engaged in other

2    criminal activity when you moved here to get away from the

3    situation in Baltimore.  So in many ways, Mr. Warren, that

4    sentencing factor has elements to it that cut both ways.

5              The third sentencing factor is to provide just and

6    sound punishment for the offense with which you're convicted.

7    By law I'm required to sentence you to a term of imprisonment

8    of at least 180 months.  By any measure, that is a

9    significant punishment by any society on another human being.

10   So the sentence that's imposed here will reflect a just and

11   sound punishment for the offense you have been convicted of.

12             I'm to afford adequate deterrence to further

13   criminal conduct by you and by others in society.

14             I'm not certain what your future is going to carry,

15   Mr. Warren, other than, as Mr. Schorr has accurately pointed

16   out, you're going to be in Federal prison for a long time.

17             As to others in society, as I've noted earlier,

18   Congress, that is, the elected representatives of the people

19   of the United States, along with the President that signed

20   the law, have concluded with reason that convicted felons

21   with long records of serious other felony convictions have to

22   know they cannot possess a firearm.  They just can't.

23             And society has set a punishment, has set a

24   sentence that is by any measure significant in order to deter

25   other people from doing what you're convicted of doing here.

1              So I do believe the sentence is intended to reflect

2     a mechanism to both deter you and other people in society

3     from this type of conduct.

4              I'm to consider the application of the now advisory

5     sentencing guidelines, any applicable policy statements and

6     sentencing factors.

7              In this case, the principal reason that the

8     sentencing guidelines were amplified to the degree they are

9     is your status as an armed career criminal.  That presents a

10    mandatory minimum sentence of 180 months.  The advisory

11    guidelines reflect a term of what is in essence 17 1/2 to

12    more than 20 years, 210 to 262 months.

13             In some significant measure in the Court's mind,

14    there is a meaningful and real overlap between the mandatory

15    minimum sentence and the intention of that mandatory minimum

16    sentence as set forth in the statute that created it and the

17    acceleration, if you will, of the advisory guidelines in your

18    case.  It's not a complete overlap, but in the Court's

19    estimation, it is a considerable overlap.

20             I've noted on the record and in the amended

21    tentative findings what your sentence would be but for the

22    application of the armed career criminal enhancements.

23    Whether or not this mandatory -- or the maximum sentence had

24    been 120 months or not, it would have been notably less than

25    the 180 months or anything in that range and certainly

1    notably less than 210 to 262 months.

2          Miss King as the lawyer for the Government is

3    correct that, had you entered a plea of guilty, you would

4    have received a credit of three offense levels, three points,

5    if you will, for acceptance of responsibility.

6          I'm not stating a general rule or rule that I would

7    apply in all cases because I'm not yet certain, but I also am

8    not confident that the guidelines carry the same weight in

9    making that judgment because somebody elects to go to trial.

10         This was a case that was based on eyewitness

11   testimony.  The testimony of the police officers was

12   unequivocal.  It was not rebutted by other physical evidence

13   at the scene.  But it was a trial that turned on credibility,

14   and the jury made a credibility determination.  They believed

15   the police officers.

16         And in the Court's estimation, the jury had more

17   than a reasonable basis to believe the police officers.  But

18   if there are cases that go to trial, the Court is not

19   surprised that it was this case and this kind of case that

20   went to trial because of the nature of the evidence that was

21   involved here.

22         So while I recognize and don't minimize the

23   accuracy of Miss King's statement in those regards, that's

24   really not a factor that weighs into the Court's assessment

25   of how to consider the advisory guidelines in this case.

1          I'm to consider the types and kinds of sentences

2     that are available.  As I've noted, I'm required to sentence

3     you to a term of imprisonment, Mr. Warren.  Even if that

4     mandatory minimum sentence was not present here, the Court

5     would conclude that the crime of which you've been convicted

6     does require a long, meaningful term of imprisonment in the

7     custody of the Bureau of Prisons.

8          I would also note apart from -- and I'm not

9     minimizing the appropriateness of the submission from the

10    United States regarding the abilities and capabilities of the

11    Bureau of Prisons, the Court is confident that the Bureau of

12    Prisons in a variety of settings can accommodate your

13    specific needs, medical, emotional, psychological, surgical

14    that would present themselves in a number of settings

15    available to the Bureau of Prisons.  So I have considered the

16    types and kinds of sentences that are available.

17         The next factor is to protect the public from the

18    commission of further crimes by you, Mr. Warren.  I'm not

19    certain how that would have played out.  I did not draw the

20    inference, and I recognize Miss King's confirmation of not

21    intending that I draw the inference.  I didn't draw the

22    conclusion that you came down the stairs with the Taurus

23    firearm in order to wound, kill, shoot or do anything to

24    police officers.

25         But where I think the United States is correct in

1    those regards, is when you came down the stairs with that gun

2    into a situation that was already chaotic, where there was

3    already a person gravely injured, it ramps up in any number

4    of ways the risk of a series of bad things happening next.

5           I don't know what your motive was in bringing the

6    gun down, whether it was to protect yourself, to protect your

7    relatives that you lived with, to protect what was going on

8    at the scene or if it was something far more negative than

9    that.  But either way, a decision to bring down a gun that

10   you had no legal authority to have, in fact, it was

11   prohibited by law from you having, injected a risk of danger

12   and harm into the situation.

13          That demonstrates to me, Mr. Warren, that

14   notwithstanding the fact that since you've come to Pittsburgh

15   you haven't been involved in other criminal activity other

16   than the possession of this firearm, that risk of danger and

17   the risk of harm is still something that is part of you.  So

18   that is a factor that I've considered in the sentencing.

19          I'm to provide any needed educational or vocational

20   training, medical care or other correctional treatment in the

21   most effective manner.  I make the recommendations requested

22   by your lawyer, Mr. Schorr, that you be placed as close as

23   possible to Baltimore, Maryland, that you be placed at a

24   suitable federal medical facility.

25          I will make a specific recommendation that it be

1   FMC Butner.  It is a wide-ranging, full-service, all-level

2   medical facility of the Bureau of Prisons.  It is I suspect

3   of all the Federal Medical Centers reasonably close to

4   Baltimore.  I'm not imposing the sentence, but I am imposing

5   an order to get you the medical care, but within the context

6   of the sentence that is being imposed.

7          We'll make those recommendations to the Bureau of

8   Prisons.  As I suspect Mr. Schorr has told you, Mr. Warren, I

9   can't order the Bureau of Prisons to do that.  But I will

10  make that formal recommendation in writing because it

11  certainly fits the facts of your case.

12         I'm to avoid any undue or unjust disparities in

13  sentencing.  I believe the sentence as imposed will do that,

14  particularly in light of the mandatory minimum sentence that

15  is in play in your case.

16         Finally, I do believe I have ruled upon all of the

17  sentencing arguments that have been made by your lawyer on

18  your behalf and made by Miss King on behalf of the United

19  States.

20         It's my fundamental obligation, Mr. Warren, to

21  provide for a sentence that is sufficient but not greater

22  than necessary, which means that I will set a sentence that

23  in the Court's judgment fulfills the purposes of sentencing

24  but then goes no further.

25         Any sentence imposed must and will relate

1    specifically to you, your conduct and situation.

2              As I've noted, there are factors in your life that

3    cut in each direction, Mr. Warren.  You had a relatively long

4    period of time back in Pittsburgh.  You made the decision to

5    leave Baltimore, which was an environment in which you were

6    committing other crimes.

7              I am not considering as an infirmative factor the

8    choice that you made to go to trial for the reasons I've

9    stated.  I have noted you had a gun that you should have

10   known was illegal, both to possess at all and to possess with

11   the obliterated serial number, which reflects the illegality

12   of its possession.  You did have a prior record of serious

13   crimes beyond those that were considered for qualifying

14   offenses.

15             By the same token, I know, as Mr. Schorr has stated

16   on the record on your behalf and as reported and detailed in

17   the presentence report, at least the principal -- what I

18   consider the principal qualifying offense, the armed robbery,

19   occurred quite some time ago.  It doesn't mean it was not

20   serious.  But it also was not with a weapon that was actually

21   capable of killing somebody.  But the law for good reason

22   treats it that way in terms of the crime.  And your personal

23   history and permanent record is one that presented a lot of

24   challenges to you.

25             By the same token, you've made a lot of bad

1   choices.  All told, Mr. Warren, the record that you come to

2   court with in the context of your conviction is one that has

3   matters in it that cut, as I've noted, in each direction.

4          I do specifically find that a sentence within the

5   advisory guideline range would be a sentence that in the

6   specific facts of your case would be a sentence that's

7   greater than necessary to fulfill the purposes of sentencing.

8          I understand the arguments of the United States.

9   I'm not diminishing them.  I'm not saying they're not well

10  taken.  But to fulfill the purposes of sentencing, sentencing

11  you to federal prison for 17 1/2 to 22 years is not necessary

12  in the Court's estimation to fulfill the purposes of

13  sentencing that I've stated.

14         I do find that a sentence that is amplified above

15  what your sentence would have been without the armed career

16  criminal designation is appropriate, because I think that

17  Congress in passing that statute and making those

18  designations has reflected important societal interest, that

19  society cannot have people with your record possessing guns.

20  They just can't.  It poses too great a risk to too many

21  people.

22         Based on all the factors and for the reasons I've

23  stated on the record, Mr. Warren, the sentence of the Court

24  is as follows:

25         You're sentenced to a term of imprisonment in the

53

1    custody of the United States Bureau of Prisons of 192 months.

2    I will recommend, as I've noted, that you serve that at a

3    Federal Medical Facility for as much of your sentence as that

4    care is necessary and that you be as close to Baltimore,

5    Maryland, as the BOP can place you consistent with your

6    correctional treatment needs.  I find you cannot pay a fine,

7    so no fine will be imposed.

8            Restitution is not applicable.  The sentencing

9    judgment will include forfeiture of one Taurus Judge

10   .45LC/.410 caliber pistol with serial number ending in the

11   last four digits 4363.  There will be a mandatory special

12   assessment of $100.

13           You will be placed on a term of supervised release

14   of five years applicable upon your release from Federal

15   prison.  In a moment, Mr. Warren, I'm going to go over the

16   rules and conditions that apply to that.

17           I will advise you that, should you violate any of

18   the rules or conditions of supervised release, I could be

19   asked to revoke your supervised release.  If that happened,

20   Mr. Warren, you could be sent back to Federal prison, and you

21   would not receive credit for time that you had already served

22   on supervised release.

23           You're going to have to report to the probation

24   office in the district to which you're released within 72

25   hours of being released from the custody of the Bureau of

1   Prisons.

2           While on supervised release, Mr. Warren, you cannot

3   commit, shall not commit any Federal, State or local crime.

4   You have to abide by all of the standard conditions of

5   supervision recommended by the Sentencing Commission and

6   adopted by the Court.

7           I'll highlight the following, Mr. Warren:

8           You cannot illegally possess a controlled

9   substance.

10          You shall not possess a firearm, ammunition,

11  destructive device or any other dangerous weapon.

12          You're going to have to participate in any mental

13  health assessment or treatment programs directed by the

14  probation office until released from them by the Court.

15          You may be required to contribute to the costs of

16  services provided in an amount not exceeding the actual cost.

17  And the probation office will be authorized to release your

18  presentence report to any treatment provider, if requested.

19          Given the specific nature of the offense of

20  conviction in your case, Mr. Warren, you have to submit your

21  person, property, house, residence, vehicle, papers, business

22  or place of employment to a search conducted by the probation

23  office at any reasonable time and in any reasonable manner

24  based on a reasonable suspicion of the presence of contraband

25  or evidence of a violation of a condition of supervision.

55

1   Your failure to submit to such a search could be grounds in
2   and of itself for revocation.
3          You have to tell anybody else that is present at
4   those premises that those locations could be subject to a
5   search.
6          You will be required to participate in an alcohol
7   aftercare program as directed by the probation office, which
8   may include alcohol testing.  You cannot consume alcohol
9   while you're on supervised release, given your record as
10  reported in the presentence report.  You may be required to
11  contribute to the cost of those services in an amount not
12  exceeding the actual cost.
13         You will be required to participate in a program of
14  testing, evaluation and, if necessary, treatment for
15  substance abuse, as may be directed by the probation office
16  until you would be released from such a program by the Court.
17  You may be required to contribute to the costs of services in
18  an amount not exceeding the actual cost.
19         This will include random drug testing with at least
20  one test within 15 days of going on supervision and at least
21  two tests thereafter.  You cannot intentionally purchase,
22  possess or use any substance or device designed to affect or
23  alter in any way that testing protocol.
24         You have to cooperate in the collection of DNA as
25  directed by the probation office.

1          As I've noted, Mr. Warren, no fine will be imposed

2   because you cannot pay a fine.  And there is a special

3   assessment of $100.

4          I find that the sentence as imposed fulfills each

5   of the purposes of sentencing, as I've stated them on the

6   record for each of the reasons I've stated.

7          Mr. Waszyn, is there anything about the Court's

8   oral pronouncement of sentence that you as the probation

9   officer believe needs to be amended, corrected or modified in

10  to any way?

11          MR. WASZYN:  No, Your Honor.

12          THE COURT:  Thank you, Mr. Waszyn.  Miss King, does

13  the United States have any objection to the reasonableness of

14  the sentence as imposed?

15          MS. KING:  No, Your Honor.

16          THE COURT:  Mr. Schorr, same question of you?

17          MR. SCHORR:  Well, I think 180 months would have

18  been more than sufficient, Your Honor.  So I'm not quite sure

19  how you got the 192, but that's within your discretion.

20          THE COURT:  Okay.

21          MR. SCHORR:  I mean I don't think it's reasonable,

22  but I mean I said before --

23          THE COURT:  Well, more precisely, it's a procedural

24  reasonableness, and I believe you've preserved all your

25  objections to the calculation of the now advisory guideline

1  range and the application of the armed career criminal

2  enhancement at all in this case.  So those are preserved.

3        Is there anything else that I should hear now based

4  on our Third Circuit's decisions and the Supreme Court's

5  decisions?

6        MR. SCHORR:  No, Your Honor.

7        THE COURT:  Okay.  Thank you, Mr. Schorr.  Are

8  there any other recommendations that you want to make that

9  you're asking me to make to the Bureau of Prisons on

10 Mr. Warren's behalf other than the ones you've stated?

11       As to the calculation of time in custody and credit

12 towards his sentence, my understanding is that that's not

13 something I can even influence by recommendation to the

14 Bureau of Prisons.

15       It's always my belief, and I'll be happy to state

16 it in the sentencing judgment, that Mr. Warren should receive

17 credit for any time served to the fullest extent of the law.

18 But that's a calculation that the Bureau of Prisons makes.

19       MR. SCHORR:  I understand that.  Perhaps to that

20 end, if you put in the judgment of conviction that he had

21 originally been arrested by the City police and held in State

22 custody, and that case was dismissed after he was charged

23 Federally.  So that they are aware that there is a period of

24 time when he was in custody, I believe it was five months.  I

25 understand they make the determination, but they want to be

1    satisfied from what I understand in previous cases that

2    nobody else has used that time.

3           THE COURT:  Right.

4           MR. SCHORR:  And that's the key.  I want --

5    whatever you can put in the record that that time has not

6    been used.

7           THE COURT:  Is that in the presentence report,

8    Mr. Waszyn?

9           MR. WASZYN:  It is, Your Honor.  It's clearly

10   stated.

11          THE COURT:  Okay.  I will note that in the

12   sentencing judgment.  I'll highlight that, that the Bureau of

13   Prisons should consider that as reported in the presentence

14   report.  And then they'll take a look at that.

15          MR. SCHORR:  And in the presentence report, there's

16   mention made of Mr. Warren's mental health issues, possible

17   mental health issues.  I've spoken with the Bureau of

18   Prisons, and they told me that the sentence or two that was

19   involved there was sufficient; but can you recommend that

20   they take a look at his psychological needs?  I would

21   appreciate that.

22          THE COURT:  I would add that as part of the

23   recommendation, as to the recommendation at FMC Butner.

24          In light of that, I will add a condition to the

25   supervised release that, when Mr. Warren is released, the

1  probation office determines whether -- it actually is in

2  their condition number three, the mental health assessment.

3  So I will add that, Mr. Schorr, to the recommendations to the

4  Bureau of Prisons.

5          Miss King, does the United States have any

6  objection to any of the recommendations to the Bureau of

7  Prisons as articulated by Mr. Schorr?

8          MS. KING:  No, Your Honor.

9          THE COURT:  All right.  They'll be made in the

10  sentencing judgment, Mr. Schorr.

11         MR. SCHORR:  Thank you.

12         THE COURT:  I will confirm for the record that I

13  believe the 192-month sentence I believe did a number of

14  things to reflected the totality of Mr. Warren's life as

15  reported in the presentence report, his prior criminal

16  record, the nature and circumstances of those offenses.

17         It gave due and fair consideration to the

18  calculated advisory guideline range and measured each of

19  those factors against the benchmark of a sentence that is

20  sufficient but not greater than necessary to fulfill the

21  purposes of sentencing.

22         Mr. Warren, I advise you of your appeal rights as

23  follows, sir.  You have the right to appeal from each and

24  every one of the Orders of the Court, the judgment of guilt,

25  and the sentence that's been imposed by the Court.

1          So you do have those rights, Mr. Warren.  You have

2   the right to be represented by a lawyer in any appeal.  If

3   you cannot afford a lawyer, one will be appointed for you at

4   no cost to you.  Do you understand that, sir?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Mr. Warren, if you cannot afford

7   certified copies of any necessary court records, they will be

8   provided to you at the expense of the Federal Government.  Do

9   you understand that, sir?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Mr. Warren, I advise you that should

12   you not be able to afford the filing fee for an appeal, the

13   Court would enter an Order that waives your obligation to pay

14   an appellate filing fee.  Do you understand that, sir?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Mr. Warren, I advise you that if you do

17   want to appeal, you must do so, that is, appeal within 14

18   days of today.  If you do not appeal within 14 days of today,

19   you would lose your rights to an appeal.  Do you understand

20   that, sir?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Mr. Warren, I advise you that if you

23   would request, that the Clerk of our Court here in Pittsburgh

24   would prepare and file a notice of appeal on your behalf.  Do

25   you understand that, sir?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Mr. Schorr, are there any other matters

3    that you believe we should take up today or that you'd like

4    to bring to the Court's attention on Mr. Warren's behalf?

5          MR. SCHORR:  No, Your Honor.

6          THE COURT:  Thank you, Mr. Schorr.

7          Miss King, are there any other matters the United

8    States believes we should take up today or that you would

9    like the Court to pay attention to at this time?

10         MS. KING:  No, thank you, Your Honor.

11         THE COURT:  Thank you, Miss King.

12         Mr. Waszyn, sir, are there any other matters that

13   the probation office believes the Court needs to address

14   during this sentencing hearing?

15         MR. WASZYN:  No, Your Honor.

16         THE COURT:  Thank you, Mr. Waszyn.  In a moment

17   we'll adjourn court.  I'd ask those present in the courtroom

18   to remain seated and at ease while the deputies assist

19   Mr. Warren.

20         (Proceedings were concluded at 11:19 a.m.)

21                             - - -

22              C E R T I F I C A T E

23         I, Deborah Rowe, certify that the foregoing is
     a correct transcript from the record of proceedings in the
24   above-titled matter.

25   S/Deborah Rowe  _____
     Certified Realtime Reporter