```
                 IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF PENNSYLVANIA


   UNITED STATES OF AMERICA,

      vs.
                                        Criminal No. 13-270
   ATIBA WARREN,
                Defendant.


       Transcript of Status Conference Proceedings on Wednesday,
   March 30, 2016 United States District Court, Pittsburgh,
   Pennsylvania, before Mark R. Hornak, District Judge.


   APPEARANCES:

      For the Government:           Katherine A. King, Esq.
                                    Assistant U.S. Attorney
                                    400 US Courthouse
                                    700 Grant Street
                                    Pittsburgh, PA 15219


      For the Defendant:            R. Damien Schorr, Esq.
                                    1015 Irwin Street
                                    Pittsburgh, PA  15236




   Court Reporter:                  Juliann A. Kienzle, RMR, CRR
                                    5300 U.S. Courthouse
                                    700 Grant Street
                                    Pittsburgh, PA 15219
                                    (412) 261-6122



       Proceedings recorded by mechanical stenography; transcript
   produced by computer-aided transcription.
```

```
 1  (Proceedings held in open court; Wednesday, March 30, 2016.)
 2              THE COURT:  We're here for a status and scheduling
 3  conference in criminal docket matter 13-270, the United States
 4  of America versus Atiba Warren.
 5              For the United States we have Ms. King.
 6              And for Mr. Warren, we have Mr. Schorr.
 7              Mr. Schorr is relatively recently appointed to
 8  represent Mr. Warren's interests.
 9              At the time that happened, when Mr. Sindler was
10  relieved of his responsibilities and Mr. Schorr was appointed,
11  what was pending was the sentencing hearing for Mr. Warren.
12              We had very comprehensive sentencing materials
13  submitted both by Ms. King on behalf of the United States and
14  by Mr. Sindler.  They addressed a number of matters, but there
15  was an important legal issue that those materials from both
16  sides of the case addressed and that is the classification of
17  Mr. Warren as an armed career criminal, as a statutory matter,
18  let alone as a career offender under the sentencing guidelines.
19  So that issue is fairly raised and is going to have to be
20  resolved.  And prior to Mr. Schorr coming on board, after I
21  read the materials from Mr. Sindler and Ms. King, my instinct
22  was it was likely that rather than proceeding directly to a
23  hearing at which time sentence would be pronounced, it was
24  likely I was going to set an initial hearing to hear from
25  counsel on those issues so that I could make findings in
```

1 anticipation of a sentencing hearing.
2          That's not anything I put on the docket or had
3 shared with counsel because the change of defense counsel had
4 intervened.  But my instinct was, given the magnitude of the
5 issue to the sentencing calculus, the fact that it looked like
6 we were going to either be dealing with, as the Supreme Court
7 calls it, the categorical approach or perhaps as a backup, the
8 modified categorical approach and the intricacies of the common
9 law and statutory law of the crime of robbery, armed robbery in
10 the State of Maryland, that in fairness, we probably would want
11 to give counsel an opportunity to make a presentation to the
12 Court and then the Court make a ruling on that prior to the
13 actual hearing when sentence would be imposed.
14          I'm not locked into that, but in fairness to you
15 Ms. King and you, Mr. Schorr, I thought I would share with you
16 what my thoughts were.
17          Now that Mr. Schorr is on board, I don't know
18 whether you've reviewed all the materials that Ms. King and
19 Mr. Sindler have filed relative to sentencing and what time you
20 need, but it seemed to me that at least one of the things we'd
21 want to figure out today is setting a timeline for those other
22 events and any other events that you, Ms. King or you,
23 Mr. Schorr, think we need to build into the process.
24          So, Mr. Schorr, since you're the newest to the case,
25 where do things stand in terms of your engagement and

1 preparation and what do you think we need to do?

2             I would note for the record, Mr. Warren is not
3 present physically or on the phone, and I will do the best to
4 conform my conduct to the strictures of Criminal Rule 43 in
5 terms of what we can talk about, but I'll rely principally on
6 you, Mr. Schorr, and you, Ms. King, to make sure the Court
7 stays within the yellow lines in that regard.

8             MR. SCHORR:  I have gotten some material from
9 Mr. Sindler.  He has told me he'll be more than happy to work
10 with me to get anything I need.  He was good enough to give me
11 the presentence investigation report.

12             I've met with Mr. Warren once.  I know the bone of
13 contention that led to Mr. Sindler withdrawing was the whole
14 armed career criminal issue.  I have to look at that,
15 obviously, to determine, and, I have never worked with Maryland
16 laws, but I will start digging into that.

17             To that end, I'd probably need a month or so to look
18 at everything, to find the research.

19             My experience, because I've had cases like this in
20 the past where sometimes an older conviction, at the time of
21 the conviction was not a qualifying conviction under the Armed
22 Career Criminal Act.  Later on, the statute changes, so I want
23 to look at the legislative history of these cases that he's
24 had.

25             Also, it's my understanding from conversations with

1  Mr. Sindler, there might be an issue out there on one of his
2  prior convictions which might vacate it down in state court,
3  which I have to track that down and find out what is going on
4  there.
5             Then I'll pull off of Pacer what Mr. Sindler and
6  Ms. King filed already.  I can do that this afternoon, but I
7  think I'm going to need a month just to get my hands around
8  that aspect of things.
9             I did want to note, have you read the PSR yet,
10 Judge?
11            THE COURT:  I have, but I can tell you I don't have
12 a current recollection of it because I concluded I didn't need
13 to remember it at the moment, but I did read it when it came
14 in.
15            MR. SCHORR:  One thing that was raised to me when I
16 met with Mr. Warren was on Paragraphs 59, 60, and 61, it
17 discusses his mental and emotional health.  It talks about a
18 history of depression, and then at Paragraph 60, Mr. Warren
19 advised the probation office that he was diagnosed at Cove
20 Forge, which is sort of a rehab facility, from my
21 understanding, as being borderline schizophrenic and having an
22 anti-social personality disorder.  The PSR recommends his
23 mental health issues require further evaluation and possible
24 treatment.
25            I don't know, Your Honor, if that's something you

1  need to order before he goes to the BOP or if that's enough for
2  them to take the initiative and make the investigation
3  themselves.
4            I made a call this morning to the Chief of the
5  Mental Health Services at the BOP, Ms. Alison Lukefeldt,
6  L-U-K-E-F-E-L-D-T.  That's the best I could tell from the
7  voicemail.  I had to leave her a voicemail asking her, do you
8  need more?  Because if that's the case, I think we have to
9  figure out what to do at this end.  Maybe we can't do anything
10 at this point, or maybe he needs to be evaluated based on what
11 the Bureau of Prisons tells me because I don't want him put in
12 a situation where he needs treatment and there's not enough in
13 the presentence report for the Bureau of Prisons to say, we're
14 going to look into this.  So, I just want to put that on the
15 record early.
16           THE COURT:  Certainly, you can continue to speak
17 with the BOP and as appropriate the probation officer if
18 there's additional material that needs to go into an addendum
19 to the PSR beyond anything a court would order.  I've seen that
20 happen in other situations where probation amplifies things in
21 their addendum which goes with the PSR to the Bureau of Prisons
22 when someone goes.  We'll count on you in the first instance to
23 work through that with those folks.
24           MR. SCHORR:  I'll do that.
25           Beyond that, I think I need about a month to get my

1  hands around things.  Then we can start working on scheduling
2  things starting from a month out I would imagine.  I think a
3  sentencing memorandum was already filed.
4              THE COURT:  From both sides.
5              MS. KING:  Your Honor, we did not file a sentencing
6  memorandum and neither did Mr. Sindler.  What the parties filed
7  was their position with respect to sentencing factors.  I do
8  anticipate filing a sentencing memorandum.
9              THE COURT:  Would you think, Ms. King, that it would
10 be helpful --
11             And Mr. Schorr, we'll give you a chance to weigh in
12 on this also.
13             -- before either side has to file their sentencing
14 memorandum, we get a resolution from me on the armed career
15 criminal question so that you folks have that when you put
16 together your sentencing memoranda.
17             What do you think?
18             MS. KING:  I think that would be useful.
19             MR. SCHORR:  That definitely would be useful.
20             THE COURT:  So maybe we'll do this as a two-step
21 thing, that we'll set a hearing/oral argument.  When I set it
22 that way, it basically means I'll hear whatever counsel wants
23 to tell me, whether it's to introduce evidence or documents
24 into the record or to make an argument.
25             We'll set that for about five to six weeks out,

1  Mr. Schorr.
2          MR. SCHORR:  Okay.
3          THE COURT:  We'll put in the order that we'll ask
4  counsel to confer with one another at least ten days before
5  that and file a short status report with the Court as to
6  whether you anticipate there would be any testimony or evidence
7  at that first-step hearing, or whether it would just be
8  argument.  And then we'll get that taken care of.  And then
9  I'll rule on whatever issues need to be ruled on at that time.
10 And then we'll give you folks time after that date to file your
11 sentencing memoranda and we'll set a sentencing date.
12         If we follow that timeline, Ms. King, can you live
13 with that on behalf of the United States?
14         MS. KING:  Yes, Your Honor.  Thank you.
15         THE COURT:  Does that work for you, Mr. Schorr?
16         MR. SCHORR:  Yes, sir.
17         THE COURT:  We'll do it that way.  These are central
18 issues of great consequence to the United States and to
19 Mr. Warren's interests.
20         That will give you some more time to dig into the
21 matters that are on the table in these regards, to talk to
22 probation on these other things if there needs to be an
23 addendum to the presentence report.
24         Then you, Ms. King, and you, Mr. Schorr, can speak
25 prior to that first hearing, and then we'll have Mr. Warren in,

1  and we'll do what needs to be done at that hearing, get you a
2  resolution of these issues, and then you're in a position to do
3  your sentencing memos.
4          MR. SCHORR:  Very good.
5          MS. KING:  Thank you.
6          THE COURT:  Ms. King, anything else we should talk
7  about today or build into the process we're going to be using?
8          MS. KING:  No, I don't believe so.
9          THE COURT:  How about from your end, Mr. Schorr?
10         MR. SCHORR:  Nothing, Your Honor.
11         THE COURT:  Mr. Babik, Mr. Greer, anything else we
12 need to talk about with counsel?
13         MR. GREER:  Nothing else, Judge.
14         MR. BABIK:  Nothing else.
15         THE COURT:  We'll have a plan that will get this
16 addressed in both an orderly and timely fashion and make sure
17 everyone has an opportunity to advocate the interests of their
18 client.
19      (Court adjourned.)
20                           -----
21                         CERTIFICATE
22      I, Juliann A. Kienzle, certify that the foregoing is
   a correct transcript from the record of proceedings in the
23 above-titled matter.
24 s/Juliann A. Kienzle, RMR, CRR
   _____
25 Juliann A. Kienzle, RMR, CRR