1                    IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF PENNSYLVANIA
2


3      UNITED STATES OF AMERICA,

4         vs.
                                         Criminal No. 13-270
5      ATIBA WARREN,
                    Defendant.
6


7

          Transcript of Sentencing Proceedings on Thursday, August
8    25, 2016, United States District Court, Pittsburgh,
     Pennsylvania, before Mark R. Hornak, District Judge.
9


10
     APPEARANCES:
11
        For the Government:              Katherine A. King, Esq.
12                                       Assistant U.S. Attorney
                                         400 US Courthouse
13                                       700 Grant Street
                                         Pittsburgh, PA 15219
14


15      For the Defendant:              R. Damien Schorr, Esq.
                                        Irwin Drive
16                                      Pittsburgh, PA  15236

17

18

19
     Court Reporter:                    Juliann A. Kienzle, RMR, CRR
20                                      5300 U.S. Courthouse
                                        700 Grant Street
21                                      Pittsburgh, PA 15219
                                        (412) 261-6122
22


23

          Proceedings recorded by mechanical stenography; transcript
24   produced by computer-aided transcription.

25

1  (Proceedings held in open court; Thursday, August 25, 2016.)

2         THE COURT:  We're here this morning in the case of

3  the United States of America versus Mr. Atiba Warren, pending

4  on the docket of the Court at 13-CR- 270.

5         Will counsel for the United States please enter her

6  appearance.

7         MS. KING:  Good morning, Your Honor, Katherine King

8  for the United States.

9         THE COURT:  Good morning, Ms. King.

10        If the counsel for the defendant please enter his

11  appearance.

12        MR. SCHORR:  Damien Schorr on behalf of Mr. Warren.

13        THE COURT:  Who is seated with you at counsel table

14  today?

15        MR. SCHORR:  Mr. Warren.

16        THE COURT:  He's your client and he's the defendant

17  in this case.

18        MR. SCHORR:  Yes, Your Honor.

19        THE COURT:  Mr. Schorr, Ms. King, do either of you

20  have an objection if we handle today's hearing with everyone

21  keeping their seated at their seat at counsel table.

22        Ms. King, does that work for you?

23        MS. KING:  Yes, Your Honor.

24        THE COURT:  Mr. Schorr.

25        MR. SCHORR:  Yes, Your Honor.

1            THE COURT:  Mr. Warren, as we get started today,

2  there are a few questions I'm going to go over with you.

3  Before I do that, I'm going to ask my deputy to administer an

4  oath.

5       (Administration of the oath.)

6            THE COURT:  Mr. Warren, as we get started today

7  there are a few things I'd like to go over and confirm for the

8  record, sir.

9            First is, you understand that we're here in federal

10  court today because this is the hearing at which time the Court

11  will set the sentence in your case?

12            THE DEFENDANT:  Yes, sir.

13            THE COURT:  Mr. Warren, just to confirm for the

14  record, you are represented by a lawyer, that lawyer is

15  Mr. Schorr and he is seated right next to you at that table.

16            Is that correct, sir?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  Have you had enough time and opportunity

19  to talk about today's case and hearing with Mr. Schorr?

20            MR. WARREN:  Yes, Your Honor.

21            THE COURT:  Are you satisfied with the job

22  Mr. Schorr has done for you as your lawyer?

23            THE DEFENDANT:  Very much so.

24            THE COURT:  Let me ask you this, Mr. Warren.  In the

25  last several weeks, have you treated with or received any type

1  of medical care from a doctor or any other type of health

2  person?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Can you briefly describe what that was

5  for, sir.

6          THE DEFENDANT:  Pain management because they don't

7  want to do the surgery.  They have to go back in and then I

8  don't have a good leg to stand on, they were trying to wait to

9  see the outcome of the situation.  Whatever I get done, I'll do

10 because the rehabilitation is going to be extensive.

11         THE COURT:  Let me ask you this.  SO this is for

12 your hip, sir?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Mr. Warren, let me ask you this.  Are

15 you currently taking any type of prescribed or non-prescribed

16 medicine?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Can you tell us what that is.

19         THE DEFENDANT:  I'm not sure how to pronounce it.

20 The highest they could give me where I'm at, it begins with an

21 M.  I'm not absolutely sure.  I know it's an anti-inflammatory.

22 They're not allowed to prescribe pain narcotics or anything

23 like that, so they give me that, and basically that's it.

24         THE COURT:  Let me ask you this, Mr. Warren, since

25 you have been taking this anti-inflammatory, have you ever

1  noticed that it got in the way of you understanding what is

2  going on around you?

3          THE DEFENDANT:  No.  It basically -- it just -- I

4  guess it helps some, but I don't -- it doesn't cloud my

5  judgment or anything.

6          THE COURT:  You're not having any cloudy judgment or

7  difficulty this morning?

8          THE DEFENDANT:  No.

9          THE COURT:  Mr. Warren, lastly, in the last 24 hours

10  or so, have you had any alcohol or alcoholic beverages?

11          THE DEFENDANT:  No, sir.

12          THE COURT:  Appreciate that, Mr. Warren.

13          THE DEFENDANT:  You're welcome.

14          THE COURT:  Mr. Schorr, based on the information

15  available to you, sir, do you have any doubts as to Mr.

16  Warren's competence to participate in today's hearing?

17          MR. SCHORR:  No, sir.

18          THE COURT:  Ms. King, same question of you?

19          MS. KING:  No, Your Honor.

20          THE COURT:  Mr. Warren, based on your answers to my

21  questions, my observations here in court, the representations

22  of your lawyer and the lawyer for the United States, I find you

23  are competent to participate in today's hearing.

24          Mr. Schorr, and Ms. King, I'm confident you have

25  carefully reviewed, as has the Court, all the matters that are

1 on the docket that are relevant to today's proceeding.

2          I would like to highlight several of them for the

3 record.

4          On October 30, 2015, at the conclusion of a trial, a

5 jury delivered a unanimous verdict of guilty as to Count One of

6 the indictment in this case, charging a violation of Title 18

7 of the United States Code, Section 922(g)(1), possession of a

8 firearm by a convicted felon.

9          Thereafter, the probation department prepared and

10 made available in the usual course a presentence report on

11 January 29, 2016.  I would note that the United States

12 Probation Officer Andrew Waszyn is present in the courtroom

13 today.

14          Thereafter, in a like fashion, the probation

15 department prepared and made available an addendum to that

16 presentence report on February 16, 2016.

17          The defendant, through his counsel, initially

18 Mr. Sindler and predominantly Mr. Schorr have filed a number of

19 memoranda position statements and other papers relative to

20 sentencing issues in this case on February 5th, May 11th, July

21 22nd, July 26th, July 27th, August 22ndm and August 23rd of

22 2016.

23          Counsel for the government filed similar documents

24 on February 4th, February 12th, May 2nd, July 22nd, August

25 14th, and August 23rd, 2016.

1                The Court issued its tentative findings regarding

2    sentencing matters yesterday, August 24, 2016.

3                Ms. King, have you reviewed each of the documents

4    and materials to which I have made reference?

5                MS. KING:  Yes, Your Honor.

6                THE COURT:  Mr. Schorr, have you done likewise and

7    have you also reviewed them with your client, Mr. Warren?

8                MR. SCHORR:  Yes, sir.

9                THE COURT:  Mr. Warren, just to confirm for the

10   record, has your lawyer, Mr. Schorr, reviewed all of those

11   papers with you and in particular, the presentence report and

12   the addendum to it?

13               THE DEFENDANT:  Yes.

14               THE COURT:  Mr. Warren, let me step back from that

15   question.

16               Ms. King, as I understand it, and Mr. Schorr, I'll

17   be asking you the same question in a moment, the offense of

18   conviction in this case, in the circumstances which the Court

19   has tentatively ruled in its findings and conclusions carries

20   with it a mandatory minimum sentence of imprisonment of 180

21   months.

22               Is that correct, Ms. King?

23               MS. KING:  Yes, Your Honor.

24               THE COURT:  Do you agree with that, Mr. Schorr?

25               MR. SCHORR:  Yes, if he qualifies as an armed career

1 criminal.

2          THE COURT:  I understand.

3          Mr. Warren, and we're going to go over this in a

4 little more detail in a few minutes.  By statute, that is, by

5 law passed by Congress and signed into law by the President

6 some time ago, there's a mandatory minimum term of imprisonment

7 in your case, the Court has ruled, and we'll hear from counsel

8 to the extent they want to raise further issues today, but I've

9 initially ruled that there is a mandatory minimum term of

10 imprisonment in your case of 15 years, or 180 months.

11          Even though that is in the Court's estimation the

12 case, I'm still obligated to calculate and consider the

13 advisory sentencing guidelines that are published by the United

14 States Sentencing Commission.  We're going to talk about that

15 in a little more in a moment.

16          I would confirm for the record that as to the

17 sentencing guidelines, the guidelines themselves have been

18 declared by decisions of the U.S. Supreme Court to be advisory

19 on the Court.  The guidelines themselves are no longer

20 mandatory and a sentencing court may not presume or take for

21 granted that an advisory guideline range or a particular

22 guideline sentence is reasonable or applicable in a given case,

23 subject to the application of any mandatory statutory

24 requirement.  Therefore, the advisory guidelines themselves are

25 not only no longer mandatory, they're not presumed to be

1 reasonable in a given case.

2          Ms. King, is there an identifiable victim in this

3 case for whom notice of today's hearing was required to be

4 given and if so, has such notice been given?

5          MS. KING:  There was no victim, Your Honor.

6          THE COURT:  Thank you, Ms. King.

7          I would confirm to counsel and to you, Mr. Warren,

8 that I've reviewed the complete file and the docket in this

9 case, that includes but is not limited to the presentence

10 report, the addendum, each and every paper regarding any

11 sentencing matter that has been filed by your lawyer,

12 Mr. Warren, or by Ms. King on behalf of the United States, the

13 letters that were submitted regarding sentencing matters by

14 your lawyer, Mr. Schorr, along with the recommendation of the

15 U.S. Probation Office.

16          I would confirm and order that under Federal Rule of

17 Criminal Procedure, 32(e)(3), that recommendation is not

18 disclosed to counsel for the United States, to the defendant,

19 or to the defendant's lawyer, but I would also confirm for the

20 record that in determining the sentence in this case, I have

21 not considered and will not consider any factual or legal

22 matter that has not been disclosed to all of the lawyers and to

23 you, Mr. Warren.

24          Mr. Schorr, I note in your sentencing memorandum,

25 and I've addressed this in the tentative findings that were

1   issued by the Court, you've requested the application and I

2   have tentatively ruled on the application of two departure

3   provisions under the now advisory guidelines, specifically, the

4   provisions contained at Section 5H1.4 and Section 5H1.2 of the

5   advisory guidelines.

6            Am I correct, Mr. Schorr?

7            MR. SCHORR:  Yes, sir.

8            THE COURT:  Do you have any other motions for

9   departure under the sentencing guidelines that the Court should

10  rule on at today's hearing?

11           MR. SCHORR:  No.

12           THE COURT:  Ms. King, does the United States have

13  any motions for a formal departure, as that term is used under

14  the now advisory sentencing guidelines?

15           MS. KING:  No, Your Honor.

16           THE COURT:  Ms. King, as we discussed, pursuant to

17  federal law based on the Court's tentative rulings and the

18  matters set forth in the presentence report and addendum, the

19  Court has tentatively ruled that by statute, there's a

20  mandatory minimum sentence in this case of 15 years.

21           Is that correct?

22           MS. KING:  Yes.

23           THE COURT:  There are on the record and I've recited

24  the dates of each of the entries on the docket of the position

25  statements regarding sentencing matters in this case which

principally address the application of the statutory Armed
Career Criminal Act sentencing provisions to Mr. Warren and to
his case.  The objection that Mr. Warren, through counsel, had
made to the assessment of criminal history points is set forth
at Paragraph 25 of the presentence report, which the Court has
ruled that those points would not be assessed, along with the
two departures that I have noted and were addressed in the
Court's tentative findings, and what appeared to be an
objection in a sentencing memoranda filed by Mr. Warren's prior
counsel, Mr. Sindler, regarding the recitation of certain
matters in the presentence report regarding Mr. Warren's mental
and emotional health, and I ruled on each of those.

          At this time, Mr. Schorr, I'll hear from you on any
other matters regarding the calculation of the now advisory
guidelines and the sentencing factors.

          We'll hear from Ms. King, and neither counsel should
be concerned that the Court is going to call them to task, if
you will, if you address a certain matter more than once.
We'll handle any legal rulings, guideline rulings at this
point.  I understand some of those matters may also relate to
issues that would come up in discussion of the general
sentencing factors under 3553(a), no one need be concerned that
if you said -- you can only say it in one place or another.  I
recognize there is some overlap and I don't intend to impair
any presentation that either counsel wants to make on the case.

1          So, I thought procedurally, what we would do is hear
2  from Mr. Schorr and Ms. King on any of the legal matters, if
3  you will.  When that portion of today's proceedings is
4  concluded, we'll then hear from Mr. Schorr on the 3553(a) and
5  any other factors he believes the Court should consider
6  relative to sentencing.

7          When Mr. Schorr tells me he's done with that, I'll
8  then address Mr. Warren personally and directly and give him an
9  opportunity to tell the Court anything, literally anything at
10  all he wants me to know about him, his case, or anything else
11  that he wants me to be aware of.

12          And then, Ms. King, the floor will be yours, again,
13  for anything relative to sentencing or sentencing matters the
14  United States wants to bring to the Court's attention.

15          And then, of course, we'll make sure that both
16  Ms. King and Mr. Schorr have a final opportunity to tell the
17  Court anything they think has not yet been addressed.

18          With that, Mr. Schorr, the floor is yours.

19          MR. SCHORR:  Before, Your Honor, I start discussing
20  sentencing factors, I want to ask for one thing so I don't
21  forget it at the end.  This case started out as a state court
22  case.  Mr. Warren was detained by local law enforcement in
23  Allegheny County for several months before the federal
24  government picked this case up.

25          Subsequently, it's my understanding that the state

1 court case was dropped, and I'm asking you to put in your

2 judgment that the time he spent in state custody be applied to

3 his federal sentence.  The Bureau of Prisons has to calculate

4 that, but they have to know that that state court case was

5 dropped.  Otherwise, they will not credit that time.

6         THE COURT:  And was adopted here.  You're saying

7 there is no distinction between the prosecution that started as

8 a state prosecution, it was fully adopted, which led to our

9 proceeding here, and then the state charges were dismissed.

10         MR. SCHORR:  Right, but he did spend time in state

11 custody, which has to be applied to his federal sentence.  I

12 want to make sure that is taken care of.

13         THE COURT:  Ms. King, does the United States have

14 any position in those regards?

15         MS. KING:  I believe that's up to the Bureau of

16 Prisons to make that determination, Your Honor.  He was not in

17 consistent custody as well.  He made his bond or whatever in

18 state court and was picked up here federally, so I don't know

19 how they do that.  I have no objection to alerting them to that

20 fact.

21         THE COURT:  Mr. Schorr, at minimum, you want to make

22 sure that the sentencing judgment alerts the marshal service

23 and the BOP of those facts so they can fully explore them and

24 make sure they're considered?

25         MR. SCHORR:  Yes.  I had asked his previous counsel

1   for information concerning how much time he spent in custody

2   and he didn't have a chance to get it to me.  I didn't get a

3   chance to go into the state system to find out.

4           THE COURT:  Understood.

5           I will put that in the sentencing judgment

6   affirmatively and directly so that the Bureau of Prisons is

7   alerted to it.

8           MR. SCHORR:  Thank you.

9           Now, as far as the sentencing factors are concerned,

10  you're also talking about your tentative findings and

11  conclusions, I can discuss those now.

12          THE COURT:  Absolutely.

13          MR. SCHORR:  First, I want to object.  Concerning

14  the Maryland robbery conviction, you're applying the wrong

15  statute.  That Maryland statute was not in effect at the time

16  of his conviction and it's not the same statute.  So, I object

17  on that ground.  This analysis is based on the wrong statute.

18          I know you relied on the Moore case from the

19  District of Columbia, but that's a different case.  That

20  defendant was not convicted in 2002, as I recall.  So, my first

21  objection is the analysis is wrong because it's using the wrong

22  statute.

23          THE COURT:  So which statute do you believe I should

24  have used?

25          MR. SCHORR:  Article 27, Section 486 or 488.

1          THE COURT:  Are you sure that's not referencing the

2  heroin conviction?

3          MR. SCHORR:  No, it's from 2002 -- I know Ms. King

4  gave it to us multiple times.  It might be the Maryland

5  conviction, but it is one of the -- the statute did change.

6          THE COURT:  It was codified at the sections that are

7  recited both in my tentative findings and as reflected in the

8  Moore case.

9          MR. SCHORR:  I understand that.  But 486 defines

10  robbery, and 488, I think, was the enhancement.  And I think

11  the language is different, Your Honor.

12          THE COURT:  Ms. King?

13          MS. KING:  Yes, Your Honor.

14          I did notice this as well.  I don't think that the

15  Court's findings are inconsistent with the statute, but this is

16  what I know.

17          The defendant was charged in 2000 under Article 27,

18  Section 486, 87 and 88, I believe.  It was robbery, and then

19  487 is armed robbery, and 488 I believe tells the prosecution

20  how to write up the charges.

21          THE COURT:  Repeat that again, Article 27, Sections

22  486 --

23          MS. KING:  I think 487 is the one that is the armed

24  robbery conviction.  I have one copy here.  I have provided it

25  at some filing, but I can hand it up to the Court if you like.

1              I'll show Mr. Schorr first.

2              Your Honor, on October 1, 2002, the State of

3    Maryland repealed all of their -- the majority of their

4    criminal laws and instituted a new set of criminal laws, which

5    is the one that the Court cited in its tentative findings,

6    Maryland Criminal Law Section 3-403.  That was in effect as of

7    October 1, 2002.

8              The defendant pled guilty and was sentenced on

9    October 7, 2002.  I don't know what that does in terms of the

10   fact that he was originally charged under the old statute, then

11   pled and sentenced under the new statute, but at the time the

12   new statute was adopted, it was basically verbatim of what you

13   have there, Your Honor.  The statute that Your Honor cited in

14   the tentative findings and rulings is the version of the

15   statute that was amended in 2005.  That version --

16             THE COURT:  Which, among other things, added

17   subsection (b) regarding the use of a written instrument

18   alleging the presence of a dangerous weapon.

19             MS. KING:  Yes.  So what is cited in Your Honor's

20   tentative findings, I believe, reads exactly the same as the

21   statute under which the defendant was convicted, except for the

22   addition of that ability to commit the crime via presenting a

23   written instrument.

24             But Your Honor did note in a footnote that

25   regardless of the addition or not of that section, the crime of

committing -- the crime of robbery with a deadly, dangerous

weapon is categorically a crime of violence, which is the

government's position.  I believe that that is the correct

analysis.  So, the Maryland courts have said in many decisions,

some of which I believe I've cited in some of my sentencing

papers, that when the law was changed in 2002, it was adopted

without change.

I did print out, and I can give to Mr. Schorr the

Maryland 2002 session law which did revise and recodify first

repealed Article 27 and then put into place the new law.  So, I

have the original article -- I'm sorry, Maryland Criminal Law

Section 3-403, which would have been in place on the day that

he was sentenced, but, again, it's -- as the Court can see,

it's the same language as the Court cited in its tentative

findings, except it did not have the addition of the written

instrument.  So I can hand this up if that's at all useful.

But I do believe the Court's recognition that categorically

this is a crime of violence is the correct analysis.

MR. SCHORR:  I appreciate the government had to go

to extensive efforts to try to find the statute in question.

However, you cannot arrest a man in 2000 and convict him of a

crime that was passed in 2002.  You have to look at the offense

as it is worded at the time of the arrest.

THE COURT:  That means we may not finish the

sentencing hearing today.  I understand, Mr. Schorr.

1          MR. SCHORR:  Now, I'm objecting from that

2   standpoint, that we're using the wrong statute.

3          THE COURT:  So the statute that was in effect at the

4   time Mr. Warren was charged by criminal information with three

5   counts of robbery with a dangerous or deadly weapon was Article

6   27, Section 487 of the Annotated Code of Maryland, that was in

7   force at that time, which as Subsection 8 proscribes and

8   states:  A person may not commit or attempt to commit a robbery

9   under Section 486 of this subheading with a dangerous or deadly

10  weapon and provides at subsection (b), a person who violates

11  this section is guilty of a felony and on conviction is subject

12  to imprisonment not exceeding 20 years.

13          That was the statute in place on the day the actions

14  that are the basis of the criminal information charging

15  Mr. Warren in three separate charges was in place.

16          MR. SCHORR:  I believe so.

17          MS. KING:  Your Honor, if I may, back at the May

18  hearing, I had introduced those exhibits, so the Court should

19  have them as exhibits.  I'm looking 1, 2, and 6, and I laid out

20  kind of what Mr. Schorr and I were just discussing relative to

21  where he was convicted.  I think the Court should still have

22  those probably.

23          THE COURT:  Okay.  Appreciate that.

24          Mr. Schorr.

25          MR. SCHORR:  Now, to that end, you had asked me

1  to -- the Moore case, and in front of the District of Columbia,

2  which is United States versus Moore, 149 F.Supp.3d 177 (2016),

3  which I believe was decided in May of this year, the issue

4  here -- I looked at your tentative findings, I don't really see

5  where you addressed it, I could be totally wrong.  Moore

6  creates a crime that does not exist.  Moore took an enhancement

7  and made it an element, and nowhere in Apprendi or the Alleyne

8  case, A-L-L-E-Y-N-E, did I find any authority for a federal

9  court to have the ability to go in and alter state laws solely

10  for sentencing purposes.  That is what happens here.  You're

11  saying the Moore court said that the use of a dangerous or

12  deadly weapon is an element and it is not in Maryland law.

13         Now, I cited the Eldridge case in my pleading that I

14  filed, I think at Document 197 --

15         THE COURT:  Wasn't Judge Bates' point that in order

16  to be convicted, the government, the State of Maryland would

17  have to prove beyond a reasonable doubt that the actor used a

18  dangerous or deadly weapon to commit the robbery.  There could

19  be no conviction under the section I cited in my tentative

20  findings or under 487 unless the state proved beyond a

21  reasonable doubt that, first, there was either the commission

22  or attempted commission of a robbery, and that it was with a

23  dangerous or deadly weapon.

24         MR. SCHORR:  That does not make it an element.  In

25  Maryland, the courts have said it's an enhancement.  You have

1  to respect Maryland law.  The federal courts cannot come in and

2  say, Maryland courts got this wrong.  That is what Judge Bates

3  did, essentially, what he has done.  It is not an element.

4  When you're looking at whether this is a crime of violence, you

5  have to look at what are the elements of the crime.  And the

6  elements of the crime of robbery do not have dangerous or

7  deadly weapon included in them in Maryland and Maryland courts

8  have not ever treated it that way.  It is a sentencing

9  enhancement.

10          The cynical side of me says that Judge Bates wanted

11  to reach a certain conclusion and he made sure he got there,

12  but it is an enhancement, not an element.  That is what you

13  have to look at when deciding whether this is a predicate

14  offense for the Armed Career Criminal Act.

15          THE COURT:  What do you do with the reality that

16  under 27-487 it is listed as a crime, robbery with a dangerous

17  or deadly weapon.

18          MR. SCHORR:  What does it say?

19          THE COURT:  It says a person -- it is entitled

20  Robbery With Dangerous or Deadly Weapon.  A person may not

21  commit or attempt to commit a robbery under Section 486 of this

22  subheading with a dangerous or deadly weapon.

23          MR. SCHORR:  What does 486 define robbery as?

24          THE COURT:  I don't have that in front of me.

25          MR. SCHORR:  I don't have it verbatim off the top of

1 my head, but it says it's judicially --

2          THE COURT:  Right, it's the common law meaning.

3          MR. SCHORR:  You have to look at Maryland courts to

4 see what they say robbery is.  Their definition of robbery is

5 far broader than the generic definition.

6          THE COURT:  This crime, 487, is committing that

7 robbery with a dangerous or deadly weapon.  If you're charged

8 under 487, you can't be convicted unless there's proof beyond a

9 reasonable doubt of a dangerous or deadly weapon, correct?

10          MR. SCHORR:  My position is 487 is not a crime.  487

11 is an enhancement.  The crime is robbery.  The crime is robbery

12 under Section 486 where the defendant happens to have used a

13 dangerous or deadly weapon.  487 is not a separate crime and

14 Maryland courts have said that.  You cannot deny that.

15          THE COURT:  I'm not admitting or denying anything,

16 Mr. Schorr.

17          MR. SCHORR:  I don't mean to be insolent.

18          THE COURT:  You're not being insolent, you are being

19 interrogating, but that's a different thing.

20          MR. SCHORR:  Maryland courts have clearly said it is

21 not a separate offense.  And I know it's hard to wrap your head

22 around, when you read it, you say give me a break, but that is

23 what the courts have said.

24          THE COURT:  I'm not saying, oh, give me a break.

25 I'm reading the statute that says a person may not commit or

attempt to commit a robbery under Section 486 of this

subheading with a dangerous or deadly weapon.  That proscribes

conduct.  For instance, it does not read, if any person should

commit a robbery under 486 with a dangerous or deadly weapon,

the sentence is enhanced to X.  It proscribes conduct.  And

then it says a person who violates this section is guilty of a

felony.  Not a person who violates 486 using a deadly weapon,

it says a person who violates this section is guilty of a

felony.

MR. SCHORR:  That may be how Judge Bates and you are

interpreting it, but can you show me a Maryland case from a

Maryland court that interprets it that way?  I don't think you

can because I couldn't find one.  I have spent a lot of time

looking at this.  There is no Maryland authority for that

position.  Maryland courts are the final arbitrator of Maryland

law, not the District of Columbia, not here in the Western

District of Pennsylvania, it's Maryland, what Maryland says,

and Maryland has said this is not a separate crime.

THE COURT:  Ms. King, what do you say about that?

MS. KING:  I disagree with that.  This is a separate

crime.  As the Court was saying, as the Court said in its

tentative findings, a defendant could not be convicted of

robbery with a deadly or dangerous weapon if that particular

fact was not found beyond a reasonable doubt by a jury.

THE COURT:  Or conceded.

1            MS. KING:  Or conceded.

2            After Apprendi, it is clear, and also, that would

3  increase the maximum penalty by five years.  So, it's not just

4  a sentencing enhancement, it's not as though within a statutory

5  maximum of ten years your sentence can be enhanced up to ten

6  years if you have committed this crime with a deadly or

7  dangerous weapon, it enhances it beyond the statutory maximum

8  which, according to Apprendi, makes it, therefore, an element.

9  So this is something that would have to be found by a jury

10 beyond a reasonable doubt.  It makes it a separate crime.  So I

11 just don't see the defendant's point.

12            I have also done a survey of Maryland law and I

13 cannot find a case, I cannot find a case where someone was

14 charged with a crime of simple robbery and then at sentencing,

15 the court enhanced the penalty because the court found that a

16 dangerous or deadly weapon was used.  Because that's not how it

17 is, you're charged with either simple robbery or you're charged

18 with the crime of robbery with a deadly and dangerous weapon

19 and that's how the case proceeds.

20            THE COURT:  Certainly post-Apprendi, if a Maryland

21 state judge, without the consent of the defendant, added to the

22 maximum sentence based on a judicially found fact that a deadly

23 or dangerous weapon was used, that would be reversed on

24 constitutional grounds.

25            MS. KING:  Yes, Your Honor, but this case is

1   post-Apprendi.  Even pre-Apprendi, I couldn't find such a case.

2   It just didn't happen in Maryland.  The defendant was charged

3   with whatever the crime was that he committed and was charged

4   as such in the charging document and that was the case that was

5   presented to the court.  So I looked both pre, obviously,

6   post-Apprendi that would not usually happen in the usual

7   course, but this is not a pre-Apprendi case we're talking

8   about, it's post-Apprendi.  So, all the elements of robbery

9   with a deadly and dangerous weapon had to be either found by a

10  jury or conceded by the defendant in the court below.  Here, he

11  pleaded guilty to that crime.  So, I just don't see the point

12  that Mr. Schorr is making.

13          Here, in federal court --

14          THE COURT:  I think the point he's making -- let me

15  make sure I understand it.

16          You're saying, Mr. Schorr, that as a matter of law,

17  a matter of Maryland law, which is binding as a matter of

18  federal law, there is no crime in Maryland which has as an

19  element of the crime the use of a dangerous or deadly weapon in

20  the course of a robbery?

21          MR. SCHORR:  That's my position, yes.  That's what

22  Maryland courts have said.  I'm not quite sure what date

23  Apprendi was decided.

24          MS. KING:  It was decided in 2000, so at the time

25  this defendant was convicted, Apprendi applied to him.

1            MR. SCHORR:  Convicted.

2            MS. KING:  Yes, Apprendi would apply to him because

3  you wouldn't want it to not apply to him.

4            MR. SCHORR:  I disagree.  Why are we talking about

5  Apprendi if he was arrested in 2000?  When was Apprendi decided

6  in 2000, before --

7            MS. KING:  That doesn't matter because he was

8  convicted in 2002.  Apprendi is beneficial to the defendant, so

9  he's not going to waive his Apprendi rights, in my opinion.

10            THE COURT:  If he was charged prior to Apprendi, but

11  at the time of the trial and certainly at sentencing, I think

12  at least one portion, one consequence of Apprendi is that a

13  state or federal judge cannot apply -- cannot increase a

14  sentence based on anything other than a certified judgment of a

15  prior conviction.  That's the one exception as I understand it

16  to Apprendi.  A sentence cannot be increased, the statutory

17  maximum cannot be increased without proof of the necessary

18  requirements beyond a reasonable doubt.

19            MR. SCHORR:  Your Honor, my understanding when I

20  read the government's pleading on this one, I forget which one

21  it was in --

22            MS. KING:  I think it was in Document 190.

23            MR. SCHORR:  I think they're relying on Apprendi to

24  say that this creates an element.

25            Am I correct?

1           MS. KING:  Yes, and I believe --

2           MR. SCHORR:  How can Apprendi -- where is the

3  authority that says Apprendi can take an a enhancement and turn

4  it into an element?

5           MS. KING:  It's a constitutional right.  So the

6  defendant, even though he's convicted in state court, the

7  Constitution applies to him, the federal Constitution, that's

8  how, in my opinion.

9           MR. SCHORR:  I don't see how a federal court, under

10 Apprendi, can take a Maryland statute and say this is no longer

11 a sentencing enhancement, this is now an element of a crime.  I

12 don't think Apprendi reaches that far.  Apprendi is to the

13 defendant's benefit, but the government is using it to his

14 detriment.  They're saying, oh, no, now, this is an element, so

15 now he's an armed career criminal.  That is the government's --

16          THE COURT:  That was, in essence, Judge Bates'

17 analysis, which was when the government, whether it's the state

18 government or the federal government, is obligated to prove,

19 prove a matter beyond a reasonable doubt to bring it within a

20 statutory proscription, it has become an element of the

21 offense.

22          MR. SCHORR:  Again, we have Maryland saying no.  So

23 I think if there's any uncertainty --

24          THE COURT:  What federal case stands for the

25 proposition that if it is an enhancement, it is not an element

1  of the offense?

2          MR. SCHORR:  Well, we've talked about -- I think in

3  my supplemental objections, I talked about the Descamps case.

4  Descamps says that a sentencing court can only make a crime of

5  violence finding on the basis of the elements of the charged

6  offense.

7          What are the elements of robbery?

8          THE COURT:  The charged offense is Section 487.  If

9  one of the things that has to be proven to get a conviction

10 under 487 is that there was a dangerous -- it was, quote, with

11 a dangerous or deadly weapon, how is that not an element?

12 Doesn't that make charging under 487 superfluous?

13         MR. SCHORR:  It's not an element because Maryland

14 courts say it's not an element.

15         THE COURT:  No, has Maryland said it's not an

16 element of the offense of dangerous or deadly weapon?

17         MR. SCHORR:  Maryland courts have said that 487 is

18 not a separate offense, it's an enhancement.  That is what they

19 have said.

20         THE COURT:  Okay.  Which federal court stands for

21 the proposition that where a state court says that it is an

22 enhancement, it cannot and should not be considered an element

23 of the offense?

24         MR. SCHORR:  I haven't found -- well, how about

25 Johnson where they say we have to respect when the state courts

1  define one of the elements of an offense, we're bound by that.

2  Johnson said that.  I believe I cited --

3          THE COURT:  Johnson, 2015 Johnson?

4          MR. SCHORR:  No, 2010.

5          THE COURT:  2010 Johnson.

6          MR. SCHORR:  Also, I believe I provided you some

7  Third Circuit cases that say the same thing.  We have to follow

8  state court rulings on questions of state law.  This is a

9  question of state law.  You cannot in a federal court turn this

10 enhancement into an element.

11         I've laid it out as clearly as I can.  I don't see

12 where the government has provided you with any authority, and I

13 don't think Judge Bates really provides any valid authority

14 where he has -- a federal court has the authority to do that.

15         THE COURT:  The "that" is what?

16         MR. SCHORR:  To say, okay, well, Maryland treats

17 this as an enhancement, but for our purposes, we're treating it

18 as an element.  That is what we're talking about here.  You

19 have to respect what the state courts have said.

20         THE COURT:  Ms. King?

21         MS. KING:  I just disagree with that.  I think

22 Apprendi is clear that any factor that increases the penalty

23 beyond the statutory maximum is an element that needs to be

24 proven beyond a reasonable doubt.

25         THE COURT:  It plainly has to be proven beyond a

1  reasonable doubt, the question is is it an element?

2          MS. KING:  It is an element, Your Honor, because

3  what else would it be?  That's what we have been talking about

4  since Apprendi.  That's what all this Johnson, Mathis,

5  everything else that has been happening recently all has to do

6  with elements and what are the elements.  So, here, it is

7  charged as the commission of the crime of robbery with a deadly

8  and dangerous weapon.  They don't just charge it as a robbery

9  and then later prove that he used a deadly and dangerous

10 weapon.  It's charged as such.  So, I think -- while Maryland

11 law was adopted from the common law, which was robbery, there

12 was always an increased penalty beyond the maximum that you

13 could get for robbery, there was always an increased penalty

14 for committing armed robbery.  And so that was -- from what I

15 can see, it was always charged and always proved that way.  And

16 so, if what you're looking as to what Maryland courts do, that

17 is what they do, they treat it as an element.

18          MR. SCHORR:  No, they treat it as an enhancement.

19 They say that clearly.  I'd like to see the government provide

20 the Court with a case that clearly states that a federal court

21 can do what Judge Bates has done.  I don't see where they have

22 the authority to --

23          THE COURT:  Other than Judge Bates, that is a whole

24 big circular.

25          MR. SCHORR:  Well, I happen to disagree with him --

1          THE COURT:  I understand.

2          MR. SCHORR:  -- I am sure he's a fine man, but I

3 disagree with his reading.

4          THE COURT:  Count One charges a violation of Article

5 27, Section 488.

6          MR. SCHORR:  Is that the drug?

7          THE COURT:  No.  I'm looking at Document 151-1, Page

8 10 of 12.  It's the first of the three criminal informations --

9 excuse me, the first of the three criminal informations for

10 robbery is at 151-1, Page 2.  Criminal information and Count

11 One charges a violation of Section 488.

12          Count Two charges a violation of 486, which says

13 that Mr. Warren did unlawfully rob the aforesaid complainant

14 and violently did steal from the aforesaid complainant.

15          But Count One charges a violation of 488.  It

16 doesn't charge violation of 486 or 487, it charges 488, which

17 reads what?

18          Does anybody have that handy?

19          Matt, can you pull that up, Article 27 of the

20 Maryland Code, Section 488.

21          It doesn't charge a violation of robbery and then

22 some tag along sentencing enhancement.

23          MR. SCHORR:  That's how the courts have treated it,

24 Your Honor.  I'm not worried about indictments, I'm worried

25 about how the courts have defined the law in Maryland.

1        THE COURT:  So, Mr. Schorr, the consequence of your

2  argument, as I understand it, is the Maryland robbery matters

3  simply aren't a qualifying conviction and, therefore, the ACCA

4  doesn't apply?

5        MR. SCHORR:  Yes.  And it's beyond just because this

6  is an enhancement.  Robbery is a far broader definition.  Since

7  your tentative findings came out, I find cases which support my

8  position even more.  Robbery in Maryland is broadly defined

9  beyond the generic definition of robbery.  I argued that in my

10  supplemental objection.

11        I'd like to bring your attention -- there's a case

12  from Maryland's Court of Special Appeals, which is their

13  intermediate appellant court.

14        THE COURT:  It's equivalent to our Pennsylvania

15  Superior Court.

16        MR. SCHORR:  Fetrow, F-E-T-R-O-W, versus Maryland.

17  It is 847 A.2d, Page 1249.  The official reporter was 156 MDAPP

18  675.  It is a 2004 case.  In there they talk about robbery and

19  putting in fear.  They say constructive force is also a part of

20  the spectrum for robbery.  You have to have some kind of force.

21  But they say, actual violence is not required, constructive

22  violence, which is present through intimidation, is sufficient.

23        Then they also go on to talk about in that case a

24  Maryland appeals court, which is their Supreme Court case, West

25  versus State.  That cite is 539 A.2d 231, 312 Maryland 197.  It

1 is a 1988 case.

2          Now, they talk about -- they discuss force.  That's

3 what we're talking about here because they talk about physical

4 violence.  There has to be physical violence or the threat of

5 physical violence, of bodily injury under the second Johnson.

6 They say there, so long as it is sufficient to compel the

7 victim to part with his property.  In other words, sufficient

8 force must be used to overcome resistance.  The mere force that

9 is required to take possession when there is not resistance is

10 not enough.  They're citing a case called Cooper there.

11          Then they go on to say from two other courts -- from

12 the Maryland Court of Special Appeals, two other decisions talk

13 about a case called Williams v. State.  The victim testified

14 that she began screaming from fear when the appellant

15 approached her and that when the appellant grabbed her

16 pocketbook, her bag of money and the pocketbook dropped to the

17 ground, the court held that this was sufficient evidence for

18 the trier of fact to find that the victim resisted and that her

19 resistance had been overcome.

20          That's not violent force.  That's not physical

21 force.  He grabbed her purse and she screamed.  That's a

22 broader definition than the generic robbery.

23          THE COURT:  How is that not physical force?

24          MR. SCHORR:  It's not the kind that they talk about

25 in Johnson, the Supreme Court talked about in the second

1  Johnson decision.  They talk about violent physical force.  He

2  grabbed her purse.  She dropped it and screamed.

3           Another case they cite, a case called Ratford, where

4  the appellant grabbed the purse off her shoulder.

5           THE COURT:  Let me ask you this, Mr. Schorr.  That

6  line of reasoning only becomes relevant if I conclude you're

7  correct, that under no circumstances can the requirement for a

8  conviction under 487 for a dangerous or deadly weapon be viewed

9  as an element because if that is an element, then the use of

10 dangerous or deadly weapon categorically makes it a crime of

11 violence under Johnson.

12           MR. SCHORR:  If it is an element, but as I've said

13 all morning --

14           THE COURT:  I understand.  But if I find it is an

15 element for purposes of Alleyne and Descamps and Johnson,

16 Johnson II, 2015 Johnson, then the fact that there are these

17 other robbery issues doesn't matter.  But if I find that it's

18 not an element, you're saying it's not a necessary element for

19 the crime of robbery that there be violent force?

20           MR. SCHORR:  Right.  Nowhere in the Moore

21 decision --

22           THE COURT:  I'm not saying it's a perfect analogy,

23 but are you saying in Pennsylvania, aggravated assault is not a

24 separate offense, it is an enhancement to the crime of assault?

25           MR. SCHORR:  I don't know what Pennsylvania courts

1 have ruled on that, Your Honor, so I'm not going to shoot from
2 the lip there, I just don't know.

3 　　　　　THE COURT:  Okay.  So you're saying without getting
4 into the Giles special appeals dicta from 1970 that says that
5 burning down someone's barn or one threatening to say that you
6 engaged in sodomy would be enough for robbery, which were dicta
7 in both Giles and other cases.  You're saying there is a more
8 recent line of cases that say physical contact, short of
9 violence as defined by the Supreme Court, in Maryland would
10 suffice to fulfill the crime of robbery.

11 　　　　　MR. SCHORR:  Yes.  And I don't think that the Moore
12 case gives the Giles and the other cases enough respect.  Those
13 cases were defining -- Maryland courts defining the scope of
14 robbery.

15 　　　　　THE COURT:  No, because they weren't applied in
16 those cases.  Neither case involved threatening to burn
17 someone's house down or threatening to go around town saying
18 they committed sodomy.

19 　　　　　MR. SCHORR:  They are providing guidance on how far
20 that goes.

21 　　　　　THE COURT:  But it's not -- has either case ever
22 been cited for anything in Maryland law?

23 　　　　　MR. SCHORR:  I didn't see -- Your Honor, if they
24 were applicable in this case, I'm sure the government would be
25 saying we have to follow them.

1          THE COURT:  Well, yes.  Their point is they're not

2   applicable, just as --

3          MR. SCHORR:  I'm saying they are.  Under these

4   circumstances, it sounds like it's a gray area, you should be

5   really be ruling for Mr. Warren on this.

6          THE COURT:  What principle of law says that?

7          MR. SCHORR:  The rule of lenity.

8          THE COURT:  The rule of lenity is a lot more precise

9   than if it's a gray area, it goes in the favor of defendant.

10  Where there's an ambiguous statute as generally as to the

11  offense of conviction is when the rule of lenity comes in.

12         MR. SCHORR:  I haven't had to argue it for a long

13  time, but in this case, I mean we have a disagreement as to the

14  Maryland statute in question.  My position is based on Maryland

15  law.

16         THE COURT:  Let me ask you this, Mr. Schorr.  The

17  two cases that you just cited to and read excerpts into the

18  record -- and I'm asking this question, this is not a gotcha

19  question, I'm just trying to figure out the lay of the land

20  here -- those have not been previously cited by you or the

21  United States in any of the filings in this case?

22         MR. SCHORR:  Right.  I found these last night.

23         MS. KING:  Your Honor, I have cited to Fetrow in my

24  initial response to the defendant's motion.

25         MR. SCHORR:  I just can't keep track of everything.

1              THE COURT:  There are a lot here.

2              MS. KING:  That was before Mr. Schorr was on the

3    case, Your Honor.  I was responding to Mr. Sindler's

4    original --

5              THE COURT:  His first memo.

6              MS. KING:  Yes.

7              THE COURT:  Okay, Mr. Schorr, what else do you want

8    to bring to the Court's attention regarding the robbery issues?

9    Since I understand your argument, the Court is definitionally

10   incorrect in its tentative findings in relying and citing to

11   the Section 302, 304 provisions of the Maryland Code.  However,

12   the language of 487 appears to be functionally the same, but

13   you're saying whether I read 487 or the statutory provisions

14   cited in the tentative findings, they are not an element of the

15   offense of any crime in the State of Maryland because the

16   Maryland Court of Appeals, Court of Special Appeals, or Supreme

17   Court of Appeals has said it's not an element.  The fact that

18   it's a matter that has to be proven beyond a reasonable doubt

19   before it could be applied to any defendant in the courts of

20   Maryland based on Apprendi, is interesting, according to you,

21   but not relevant to the Johnson question that is present here?

22             MR. SCHORR:  Yes.

23             THE COURT:  And that my tentative findings did not

24   squarely address that.  And to the extent that Judge Bates did

25   in Moore, you've noted your due respect, he's wrong.

1          MR. SCHORR:  Yes.  I don't think Judge Bates even

2   discussed the whole Johnson question about what the Maryland

3   courts say.

4          THE COURT:  No, he did, but he came out differently

5   than your argument.

6          And then you say that, therefore, because it's not

7   an element, because federal law says I have to apply state law

8   in making that decision because it's not an element, we're left

9   with the elements of the crime of robbery as set forth in

10  Section 486 at the time Mr. Warren was charged in Maryland.

11  And that even putting Giles and its related case to the side,

12  there are other authoritative cases of decisional courts of

13  Maryland that say that to commit and be convicted of a robbery,

14  one need not either engage in or threaten the level of violence

15  that the Supreme Court in 2015 Johnson has said is necessary

16  for the ACCA to apply.

17          Is that, in essence, the outline of your argument?

18          MR. SCHORR:  Yes.

19          THE COURT:  Appreciate that, Mr. Schorr.  We'll come

20  back to you on other things you want to talk about relative to

21  the tentative findings.

22          Let me just say this to you, Mr. Schorr, and to you

23  Ms. King.  Even if I think and even if I thought after some

24  reflection this morning that I know the answer to this, even if

25  I believe I am legally and morally certain that I know the

answer to this sitting here, in fairness to the prosecution and
to Mr. Warren, I'm not just going to orally announce it.  We're
going to take a pause in the sentencing hearing and resume it
and I'll issue a definitive written ruling on this point.

So, Ms. King --

Mr. Schorr, I want to assure you of that, and
Mr. Warren, you of that.

And, Ms. King, you of that.

So, Ms. King, I'm happy to hear from you on this
segment of the matters, but I recognize that at least as to one
of the cases raised by Mr. Schorr, you, unless you have a
marvelous mental memory bank, you're not going to know it.  So,
I recognize you're doing the best you can at this point.  But
I'm happy to hear from whatever you'd like to tell me right now
while it's hot and in front of us.

MS. KING:  Your Honor, I believe I have addressed
this issue extensively in many of my pleadings.  I think that
Judge Bates' decision is correct.  I'm going to take a look at
those cases again cited by Mr. Schorr, but I just don't think
that his analysis is accurate.

THE COURT:  Okay.  Understood, Ms. King.

So, Mr. Schorr, next topic up.

Let's see what we don't maybe disagree with.

Do you disagree with the Court's conclusion that as
to Paragraph 25 of the presentence report, two criminal history

1  points should not be assessed?

2         MR. SCHORR:  That's one of the rare ones I have in

3  court, Your Honor, I'm not going to argue with you on that one.

4         THE COURT:  Ms. King, is the United States, without

5  waiving any appeal rights, for purposes of this hearing, are

6  you taking any contrary position as to Paragraph 25?

7         MS. KING:  I disagree with you, Your Honor.

8         THE COURT:  Understood.

9         So, Mr. Schorr, let's take the next one that is

10  perhaps less complicated.

11         The Court applied the upward four-level enhancement

12  or adjustment to the calculation of the advisory guideline

13  range for the weapon involved having an obliterated serial

14  number.  The reasoning I used was that I am obligated to

15  accurately do the mathematical calculation of the advisory

16  guidelines.  If that calculation results in an advisory

17  sentence that is greater than the statutory maximum sentence,

18  the guidelines themselves say that the guideline sentence

19  becomes the statutory maximum.

20         Let's take this in segments.

21         MR. SCHORR:  Did you reverse that, the guideline

22  sentence becomes the statutory maximum, or the statutory

23  maximum --

24         THE COURT:  The statutory maximum is the guideline

25  sentence, they match.  At that point, they match.

1          As a legal and factual matter, do you believe that
2   the enhanced, the four-level upward enhancement for the firearm
3   having an obliterated serial number should not be part of the
4   Court's mathematical calculation?

5          MR. SCHORR:  Could I have a moment to look at all my
6   papers, not all of them but the relevant papers?

7          THE COURT:  You may.

8          In short, the Court's ruling was I believe it has to
9   go into the math.  What the total math is could be affected if
10  it bumps up against a statutory maximum.

11         MR. SCHORR:  Yes, I think that's what I argued,
12  didn't I, in my second supplemental objections, yes.

13         THE COURT:  But you don't disagree that the evidence
14  here supports the Court's finding by a fair preponderance of
15  the evidence that the firearm in question had an obliterated
16  serial number and that it comes within that four-level
17  adjustment?

18         MR. SCHORR:  I can't argue with that.  That's the
19  language of the guidelines.

20         THE COURT:  Understood.

21         And then it was an issue raised by Mr. Sindler, and
22  I also ruled on it.  There was an objection to the inclusion in
23  the presentence report of the narrative paragraphs related to
24  Mr. Warren's mental and emotional health.  The objection filed
25  by Mr. Sindler was that that obviously or inherently came from

documentation at Cove Forge, which the defendant had not

consented to.  The addendum to the presentence report said that

it did not come from that because the defendant did not execute

an authorization and, in fact, was self-reported by the

defendant.

Do you have any objection to those paragraphs being

included in the PSR?

MR. SCHORR:  No, Your Honor.  I did not understand

that objection myself.

THE COURT:  And then that -- before we get to the

two departure motions, I have a feeling you have something to

say about the Maryland drug heroin distribution conviction.  Or

you may not.

MR. SCHORR:  Well, that's been pretty extensively

briefed, Your Honor.  It is Mr. Warren's position that if you

look at the certified copy of the document, he's not convicted

of that section that calls for the higher sentence.  I rest on

that.

THE COURT:  Understood.

MR. SCHORR:  I don't have anything else to say.

THE COURT:  Understood, sir.

So without waiving your position on that as set

forth in your sentencing memoranda, the guts of your argument

today is, Judge, as a facial matter, your tentative findings

are inaccurate because they relate to the section, the section

1  references to the Maryland Code that were not in force at the

2  time Mr. Warren committed the offenses charged in Maryland as

3  robbery, that even if I go to Article 27, Section 486, 87 and

4  88, that as a matter of federal law, applying Maryland law, it

5  is not an element of a crime of armed robbery, if you will,

6  robbery with a deadly or dangerous weapon, and therefore --

7  and, that robbery in itself under Maryland law can be committed

8  and a conviction could be obtained and sustained without proof

9  of the level of violence required by the Supreme Court in 2015

10 Johnson and, therefore, the robbery matters come off the table

11 as underlying convictions for ACCA purposes?

12          MR. SCHORR:  Yes, except I think, Your Honor, I

13 would say that there is no crime of armed robbery with a

14 dangerous or deadly weapon in Maryland.

15          THE COURT:  Or robbery with a dangerous or deadly

16 weapon.  You're saying that is simply not a statutory offense

17 in Maryland?

18          MR. SCHORR:  Correct, it's an enhancement.

19          THE COURT:  More properly stated, was not a

20 statutory offense in 2000 when Mr. Warren was charged with

21 those offenses.

22          MR. SCHORR:  Correct.  And I think also, Your Honor,

23 the version of the Maryland statute that you relied on in your

24 tentative findings I think was described as divisible, maybe

25 not by you, but I think under the previous version, it did not

1 have the disclaimer written instrument language in it, so I

2 don't think it was a divisible statute at the time.

3          THE COURT:  At the time.  It is certainly, in the

4 Court's estimation, is divisible now.

5          MR. SCHORR:  Right, because you have separate

6 elements.

7          THE COURT:  So the unsettled matter subject to the

8 application of the two departures relating to Mr. Warren's

9 vocational skills and his health situation, that, from your

10 client's perspective, is a game changer, is what you believe to

11 be the facial and reasoned inaccuracy of the Court's tentative

12 findings and rulings on the qualifying offenses related to

13 armed robbery?

14          MR. SCHORR:  Yes, sir.

15          THE COURT:  Ms. King, what, if anything, would you

16 like to say about any or all of that now?

17          MS. KING:  Nothing further, Your Honor.

18          THE COURT:  I just thought I would check.

19          MS. KING:  Thank you.

20          THE COURT:  Mr. Schorr, while we're here, let's talk

21 about the two departures that you've requested.

22          MR. SCHORR:  Your Honor, when you look at a

23 defendant who is going to eventually be released into society,

24 Mr. Warren can contribute.  Under 5H1.2, I recognize, I sort of

25 turned that guideline on its head when I made this argument,

but he should be able to get out in time that he can support
himself and he can work as a plumber, assuming he gets his hips
replaced and everything else is treated.  But he's 36 years old
now.  By the time he gets out of prison he'll be closer to 50.
Prison life is hard.  He'll be physically debilitated.  He has
diabetes.  So he would be at the mercy of the state and a ward
of the state, basically, in terms of need to be on Public
Assistance.  But he can support himself if he gets his health
issues taken care of, so for those reasons a variance, I ask
under 5H1.2, that he's able to take care of himself if he's
back out on the street and medically taken care of.

THE COURT:  Mr. Schorr, I'm not being picky when I
say this, I'm only -- I am being picky, but not in a
deprecating fashion, at least not intended.  You just used the
term "variance."  Are you asking me to consider the fact of
Mr. Warren's vocation and training as a plumber as I consider
the 3553(a) factors, or are you asking that I, in essence,
recalculate the advisory guideline range using a departure?

MR. SCHORR:  I think I'm asking for a variance, Your
Honor.

THE COURT:  I expressly related in the tentative
findings that we would hear and you were not limited in any
argument under the sentencing factors regarding his vocational
training and skills and its impact that it should have on
sentencing and re-entry into society.  So to the extent your

1  sentencing memo asked for, moved for a departure under that

2  provision, can I treat that as being withdrawn without

3  prejudice?

4             MR. SCHORR:  Yes.  Maybe call it a variance instead.

5             THE COURT:  I will treat as withdrawn, without

6  prejudice, any motion for a departure under Section 5H1.2 of

7  the guidelines without prejudice to the ability of the

8  defendant or the United States to reference those matters in

9  application of the sentencing factors.

10             That brings us to 5H1.4 where your sentencing memo

11  seemed to move for a downward departure, that is, a

12  recalculation of the advisory guidelines based on Mr. Warren's

13  physical condition.

14             MR. SCHORR:  Let's treat that as a request for a

15  variance also, Your Honor.

16             THE COURT:  So I can treat that motion as withdrawn

17  without prejudice on the same basis?

18             MR. SCHORR:  Yes, sir.  In both instances we just

19  discussed, I'm asking for a variance.

20             THE COURT:  Understood.

21             Ms. King, does the United States have any objection

22  to the Court treating those, to the extent they were motions

23  for departure, treat them as being withdrawn without prejudice

24  to the ability of either the United States or the defendant to

25  make reference to those matters relative to the sentencing

1 factors?

2          MS. KING:  No, Your Honor.

3          THE COURT:  Without objection, that's what we'll do.

4          We'll do that as a text order treating them in that

5 way.

6          So then that leaves essentially two items.

7          Mr. Schorr, are you resting on your papers and

8 arguments previously made regarding the Maryland heroin

9 distribution matter, at least that's how the Court referenced

10 it in its tentative findings, and the matters you raised

11 regarding the robbery?

12          MR. SCHORR:  Yes.  And on the robbery, what we

13 discussed today.

14          THE COURT:  Understood.

15          That's beyond the papers, it's the matters you

16 specifically raised today as objections to the Court's

17 tentative findings.

18          Ms. King, let me ask you this.

19          How do you believe, given the Court's prior

20 statement, which I'm not changing because it is something I do

21 think I'm right on, and that is, I'm not going to orally rule

22 because I want to go back and look at these things, among the

23 options, it appears to the Court of what we could do, are the

24 following.

25          I could recess the sentencing hearing, to be

1 reconvened as promptly as is possible on the calendars of

2 counsel, after the Court has specifically ruled on whether it

3 is going to amend or modify its tentative findings, and if so,

4 how.  And I think we would do that relatively promptly, I'm not

5 going to do it today, but we would do it relatively promptly.

6         I was going to say I'm hesitant to suggest this, but

7 I'm not because this is a vitally important matter, both for

8 the United States and for Mr. Warren.

9         I recognize there's been a lot of paper, Mr. Schorr

10 or Ms. King, do you want to file any supplemental document

11 relative to the issues that were raised in open court today?

12 There's no wrong answer to that from the Court's perspective.

13 I literally want to make sure the advocates have the

14 opportunity they think is the right way to go for the Court

15 to -- before the Court rules on whether it will modify its

16 tentative findings.

17         Ms. King, what would you like to do?

18         MS. KING:  I don't believe I need to file anything

19 further, Your Honor.

20         THE COURT:  Mr. Schorr, sir?

21         MR. SCHORR:  Well, Your Honor, I think what I'd

22 rather do is after you issue your tentative findings, maybe

23 file written objections to them.  To be quite honest, I was

24 flying by the seat of my pants when I found these two cases

25 last night.

1          THE COURT:  I understand that, Mr. Schorr.  Again,

2 my observation here isn't critical, but I do think one of the

3 directions regarding sentencing matters that I'm comfortable is

4 pretty clear from the Supreme Court and the Third Circuit,

5 particularly since Molina-Menendez came down from the Supreme

6 Court in June, April of this year, and then the decision of our

7 Court of Appeals a year and a half ago, and I apologize, I

8 don't recall the name of it, that said at the time that any

9 objection to the procedural reasonableness of the sentence not

10 made at the sentencing hearing is waived, or would be in the

11 ordinary course deemed waived.  And the reason the Court of

12 Appeals, one of the reasons they articulated was raise them

13 while you're in front of a judge so that she or he can fix it.

14          I think if there's something you want to say, it

15 doesn't mean that Ms. King may not have objections to what my

16 ultimate rulings are or you might not have objections, but to

17 the extent there are these objections, we ought to get them

18 front and center right now and address them.  So if that means

19 you believe you might like to file a supplemental memo, I'm

20 going to let you do it, just as I would let Ms. King do it.

21          MR. SCHORR:  I may do that, Your Honor, within the

22 next few days.

23          THE COURT:  When you say the "next few days," what

24 do you mean?

25          MR. SCHORR:  How about by Tuesday?

1           THE COURT:  Well --

2           MR. SCHORR:  You want it earlier?

3           THE COURT:  I'd like to, if I can.

4           MR. SCHORR:  I'll shoot for tomorrow.

5           THE COURT:  End of the day tomorrow?

6           MR. SCHORR:  Yes.

7           THE COURT:  Ms. King, if you change your mind and

8  there's something you'd like to file by the end of the day

9  tomorrow, you're welcome to.

10          MS. KING:  Thank you, Your Honor.

11          THE COURT:  If either of you see in what the other

12 team filed something that you just believe you are compelled to

13 put on the record, if you could file it by the end of the day

14 Monday.

15          Can you live with that, Mr. Schorr?

16          MR. SCHORR:  I can live with it, Your Honor.

17          THE COURT:  Ms. King, can you live with it?

18          MS. KING:  Yes, Your Honor.

19          THE COURT:  I know it's not perfect, I was a

20 practicing lawyer, but if you can live with that -- I know it's

21 a low bar -- and then I will either -- I will issue something.

22 It may say I've thought about all this, and I think I was right

23 in my tentative findings and here's why, or that I was right in

24 my conclusion, but I need to correct some statements in my

25 tentative findings, I might do that, or if I believe that

1 there's showing that is different, then I'll address that.

2 We'll go with that.

3            In terms of sentencing factors that would either

4 change the calculation of the now advisory guidelines or affect

5 whether or not Mr. Warren, for sentencing purposes, is

6 considered an armed career criminal, are there any other

7 matters that need to go on the record now, Mr. Schorr, or have

8 we now addressed them all, one way or the other?

9            MR. SCHORR:  I think we've addressed them all, Your

10 Honor.

11            THE COURT:  That was my thought, but I was checking.

12            Ms. King, same question of you.

13            MS. KING:  Your Honor, if the Court -- I do think

14 that the Court should apply the two points for the 2003 assault

15 conviction.

16            THE COURT:  Understood.

17            MS. KING:  I do think that that would change the

18 ultimate calculation.

19            THE COURT:  It does.  It changes the Criminal

20 History Category from V to VI, which results in a different

21 portion of the sentencing table applying, there's no question.

22            MS. KING:  I would just point out that the

23 government is fully aware and respects the need for counsel at

24 all points of a proceeding, however, the cases cited by the

25 Court in its tentative findings relative to the search and

inquiry that must be done is really with respect to when the
defendant is actually waiving his right to counsel and does he
understand what he or she is doing and moving forward pro se or
with standby counsel, is the defendant aware of all his rights
and everything else.  Here, we have a case where the defendant
was convicted 13 years ago, never challenged that conviction,
to the government's knowledge, and as a result, a presumption
of regularity attaches to that conviction.  As the Third
Circuit held in Jones, the defendant has to overcome the burden
of the presumption of regularity and I don't think he's done
that here.  It's not the government's burden to prove he didn't
have counsel, he has to overcome the burden that he has, which
is this is a regular conviction and we're going to assume you
had counsel.  The time that he was advised that he needed to
get counsel was at a preliminary stage of that case, it was not
at the time that he was convicted and sentenced in that case.
So, I agree that the record is not clear whether he eventually
received counsel or not, however, he was appointed a public
defender in each of his other cases, and there's no reason to
think that this 2003 conviction was anything else.

Frankly, he's never even alleged that he didn't have
counsel.  He's alleged that he doesn't remember.  I did cite
some cases in my response where other Courts in this building,
as well as the Third Circuit, have said that is not sufficient.
While I respect the Court's position, I just need to put my

1  position on the record because it does change the guidelines

2  dramatically.

3           THE COURT:  I understand, Ms. King.  And I'll assure

4  you, Ms. King, and you, Mr. Schorr, and I hope this applies for

5  as long as I still have this job and each of you have your

6  jobs, disagreeing with me when the law or facts require you to

7  disagree with me, from this Court's estimation, is you doing

8  your job.  And I do not take it as any lack of respect or

9  anything else.  In fact, it would be dismaying if either the

10 United States, through you, Ms. King, Mr. Schorr, or Mr.

11 Warren, or one of your other clients thought I was off base

12 legally or factually if you didn't disagree with me.

13           I will say, and this is not meant to be critical to

14 the courts or the State of Maryland, I did find the records on

15 this point murky, and that might be a bit charitable.  I will

16 say on the record, that influenced my ruling.  I recognize the

17 presumption of regularity, but under both Curtis and Napolitan,

18 our Court of Appeals and the Supreme Court have said the one

19 thing that can be fairly up on the table when this Court, a

20 federal trial court is considering the implications for

21 guideline purposes or sentencing purposes of a prior conviction

22 is whether or not the defendant was represented by counsel or

23 can be deemed to have fairly and appropriately waived it.  It

24 does seem to the Court that whether -- I know it's not the rule

25 of lenity, but when the records are as murky as they were here,

1  I believed it was appropriate to -- that that murkiness results

2  in the points not being assessed.  I just did not have the

3  requisite level of confidence in the regularity of the

4  proceedings, and there's nothing you can do about it, Ms. King,

5  or Mr. Schorr, given the passage of time and the distance and

6  everything else, that I knew that Mr. Warren either had a

7  lawyer or had knowingly and consciously foregone the right to

8  have a lawyer at a critical stage of the proceeding.

9          So I understand the position of the United States.

10  Ms. King, I'll think about it some more, in fairness to the

11  position, but that really was what was animating my ruling in

12  that regard, that the records were so murky, and this is such a

13  central and vital issue, so central and vital that the Supreme

14  Court and the circuits have said it can be fairly up on the

15  table for these purposes that I ruled on the way I did.  But I

16  will think about it further in light of the positions both you

17  and Mr. Schorr have taken.

18          MS. KING:  Thank you.

19          MR. SCHORR:  I'd like to point out, Your Honor, the

20  government has repeatedly said Mr. Warren has never said he

21  didn't have a lawyer.  He did say that in Document 191, Page 4:

22  Warren was not represented by counsel during his 2003 assault

23  conviction.

24          It's out there now.

25          THE COURT:  In fairness, I think what Ms. King was

1  saying, Mr. Warren did speak at the May 10, 2016 hearing and

2  she did not recall him affirmatively stating, I did not have a

3  lawyer.

4          MR. SCHORR:  Through his lawyer --

5          THE COURT:  Is that fair, Ms. King?

6          MS. KING:  Yes, Your Honor.

7          MR. SCHORR:  Through his lawyer, he's saying it now.

8          THE COURT:  I understand that.

9          MR. SCHORR:  I think that's all I have at this

10  point, Your Honor.

11          THE COURT:  Mr. Greer, we'll do a text order that

12  resolves the two motions for departures and confirms the

13  briefing schedule that we talked about in court today.

14          Mr. Warren, I'm confident based on our interactions

15  in court that you understand what is happening here, but just

16  to confirm it, since you're not a lawyer, what I've heard from

17  your lawyer and the lawyer from the United States are all the

18  matters that go into calculating what the statutory and

19  guideline ranges of sentences are in your case.  The United

20  States has taken the position that I should count the two

21  points for guideline calculation purposes for the assault

22  conviction that we have been referencing.  Your lawyer, in

23  writing, has reaffirmed today that the Court should not count

24  for armed career criminal purposes the drug conviction in

25  Maryland that I've referred to in my documents as the Maryland

1  heroin conviction.

2          We've had both the writings and the arguments today

3  that your robbery convictions based on your guilty pleas in

4  Maryland should not count for armed career criminal purposes.

5          Because all of those matters go to the calculation

6  of what your statutory sentence would be, and the impact of the

7  calculation of the advisory guidelines, we've addressed them

8  all today, I'm not ruling on them at this time, I'm going to

9  consider them.  I have given your lawyer and the lawyer for the

10 United States opportunities to file one more round of papers in

11 writing in those regards.  Once I review those, I will issue

12 the appropriate findings, and then we will promptly set your

13 sentencing hearing after that.  The intent here is not to

14 unduly delay things, but the intent of the Court is to make

15 sure the lawyer for the United States and your lawyer have had

16 the most complete opportunity to state their positions and then

17 that my determination is as accurate as I think I can make it.

18          Do you understand that, sir?

19          THE DEFENDANT:  Yes, I understand that.

20          THE COURT:  Do you have any questions you want to

21 ask me about the procedure of what we're doing here?

22          THE DEFENDANT:  I wanted to confer with my lawyer

23 for one second.

24          THE COURT:  You may.

25      (Pause in the proceedings.)

1           THE COURT:  Mr. Warren, anything you'd like to ask

2 me.

3           THE DEFENDANT:  Yes, on advice of my counsel, he

4 said I should address this myself.

5           THE COURT:  Okay.

6           THE DEFENDANT:  The 2002 robbery conviction, I was

7 represented by Marc Zayon out of Baltimore, Maryland, out of

8 the law offices of Walker and Zayon.  I took a plea on this in

9 the middle of trial under the advisement of my attorney.  The

10 plea's contention of ten years, seven years suspended, three

11 years probation, once I complete my probation, which was four

12 years, the robbery convictions would be wiped away.  Some kind

13 of clerical error occurred, and my lawyer takes full

14 responsibility for it.  I had letters and proof that he

15 contacted the judge and said it was on his behalf that these

16 convictions are still on my record.  I would have never be in

17 this position, at that time if my lawyer would have did what he

18 was supposed to do at the time.  I never pled to using a weapon

19 during the course of any robbery.  I think that's the point

20 that was made by Judge Bates in the case that -- out of the

21 circuit.  I would like to say that case is not a precedent

22 case, it's not binding.  And I think that's pretty much it,

23 Your Honor.

24           THE COURT:  Thank you, Mr. Warren.

25           Mr. Schorr, assuming for purposes of these matters

1  here I credit, and I'm not ruling one way or the other, but if

2  I would credit what Mr. Warren just told me, not about the

3  legal impact of Moore because that stands on its own, but what

4  he said happened in those robbery convictions, what, if

5  anything, do you believe that has to do with the sentencing

6  issues here?

7          MR. SCHORR:  Well, if he pled to simple robbery, he

8  didn't plead to the enhancement or didn't plead -- he would not

9  be an armed career criminal.

10          THE COURT:  I understand.  But I'm bound by the

11  certified records from the Maryland court, correct?

12          MR. SCHORR:  Yes.

13          THE COURT:  So, if what Mr. Warren just said is at

14  variance from those records that are in the docket here, what

15  impact, if any, does that have on the proceedings in

16  Mr. Warren's case here?

17          MR. SCHORR:  Offhand, I don't know.  I don't

18  think -- we're kind of locked in with what is certified from

19  the record.

20          THE COURT:  That was my understanding under both

21  Napolitan and Curtis, but I wanted to see if you had any

22  different thought.

23          MR. SCHORR:  He's stuck, basically, which is why

24  we're fighting so hard on this.

25          THE COURT:  Ms. King, same question of you.  If I

1   were to credit --

2           And Mr. Warren, when I phrase it that way, I'm not

3   making a ruling whether I believe you or not.

4           I'm asking if I assume that what you say is true,

5   what impact, if any, does that have on the sentencing

6   proceedings in this case?

7           MS. KING:  None.

8           THE COURT:  Because of Curtis and Napolitan, among

9   others?

10          MS. KING:  Yes, this is not the appropriate forum to

11  challenge that conviction.

12          THE COURT:  Understood.

13          Mr. Schorr, anything else you believe we should take

14  up today, sir?

15          MR. SCHORR:  No, sir.

16          THE COURT:  Ms. King, same question of you?

17          MS. KING:  No, unless we're going to schedule the

18  sentencing, Your Honor.

19          THE COURT:  Mr. Babik will be in touch with each of

20  you.  We'll make sure that it is a date that does three things;

21  it's available on the Court's calendar; it's as prompt as is

22  reasonably possible; and it is also when you, Mr. Schorr and

23  you Ms. King are available.

24          MS. KING:  Thank you.

25          THE COURT:  So it will fit all three of those

1  requirements.

2          MR. SCHORR:  Thank you, Your Honor.

3          THE COURT:  Mr. Babik, is there anything else that

4  you had notes that we wanted to take up here?

5          MR. BABIK:  Nothing else, Judge.

6          THE COURT:  Mr. Greer, same question of you?

7          MR. GREER:  Nothing, Judge.

8          THE COURT:  In a moment, I'll ask Mr. Babik to

9  adjourn the Court.  I'd ask those present in the courtroom to

10 remain seated and at ease while the marshals assist Mr. Warren.

11         Mr. Schorr, Ms. King, to the extent an error in my

12 tentative findings made these proceedings more complicated, I

13 apologize.  We'll fix it and get it right.  To the extent

14 they're more complicated for other reasons, I didn't have

15 anything to do with those, but we are where we are.

16         The marshals can assist Mr. Warren.

17     (Court adjourned.)

18                    -----

19                  CERTIFICATE

20

21         I, Juliann A. Kienzle, certify that the foregoing is
   a correct transcript from the record of proceedings in the
22 above-titled matter.

23
   s/Juliann A. Kienzle, RMR, CRR
24 _____
   Juliann A. Kienzle, RMR, CRR
25